

JARROD L. SCHAEFFER
646-970-7339 (direct dial)
jschaeffer@aellaw.com
aellaw.com

256 Fifth Avenue, 5th Floor
New York, New York 10001

September 24, 2024

**By ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Linda Sun, a/k/a "Wen Sun," "Ling Da Sun," and "Linda Hu," and Chris Hu*, 24 Cr. 346 (BMC) (TAM)

Your Honor:

      We represent Linda Sun in the above-referenced case and write respectfully in advance of the conference currently scheduled for September 25, 2024. On September 5, 2024, with the consent of the government, we requested a modification to our client's bail conditions to clarify a condition of her release. (*See* Dkt. 22.) On September 6, 2024, the Court deferred consideration on that request until the conference. (*See* Dkt. Order dated Sept. 6., 2024 ("Sept. 6 Order".) We respectfully submit this letter to provide the Court with additional information in advance of that proceeding, and look forward to addressing the Court's questions.

## RELEVANT BACKGROUND

      As outlined in the September 5 letter, our client was released pursuant to an agreed bail package containing conditions that included, among other things, a requirement that she have no contact with the consulate or mission of the People's Republic of China ("PRC"). (*See* Dkt. 13 at 1.) When imposing that condition, however, Magistrate Judge Kuo described its scope in an unexpectedly broad manner that unduly restricts Ms. Sun's association with her community on pain of inadvertent violations of her bail conditions. (*See* Dkt. 22 at 1.)

      The text of the condition at issue prohibits "contact with the following individual(s), location, or entity," and then lists as specific entities the "PRC consulate [and] mission." (Dkt. 13 at 1.) In describing this condition, the government summarized it consistent with the defense's understanding by saying, "[w]ith respect to Ms. Sun, there's also [a] travel limitation of no travel to the PRC Consulate or Mission here in New York City." (Dkt. 32-1 at 7:2–4.) When imposing the condition, however, Magistrate Judge Kuo described it differently, saying:

> For Ms. Sun, you have the additional condition that you may not have any contact with the People's Republic of China Consulate and Mission, and so you may not go there, you may not have contact with anybody affiliated with that entity, you

> may not have any contact by phone, by email, by social media, no contact at all.
> So please make sure that you understand that.

(Dkt. 32-1 at 13:23–14:4.)  Beyond forbidding contact with or travel to the PRC consulate or mission—a prohibition to which Ms. Sun readily agreed—that description went further in a manner that risks vastly expanding the scope of the condition.  In order to facilitate compliance with our client's conditions of release while avoiding any miscommunications or overly punitive restrictions, defense counsel requested—with the government's consent—a targeted modification that would except from this overall prohibition only unplanned and uncoordinated conversations in public settings regarding matters unrelated to this case.  (*See* Dkt. 22.)

On September 6, the Court deferred consideration of that request until the September 25 conference, stating that "it [wa]s not clear to the Court why defendant should be having any communications whatsoever with consulate, party, or any government representatives, directly or indirectly, coincidental, or not, outside the presence of her attorney, given the allegations in the indictment."  (Sept. 6 Order.)

## LEGAL STANDARD

As the Court is aware, under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, the Court may impose conditions that it deems necessary and appropriate to accomplish the purposes of the Act.  *See id.* § 3142(c).  The purpose of imposing such restrictions is to "reasonably assure the appearance of the person as required and the safety of any other person and the community," and any conditions imposed must be the "least restrictive" necessary.  *Id.* § 3142(c)(1)(B).  Bail conditions may not punish a defendant based on unproven allegations.  *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) ("Due process requires that a pretrial detainee not be punished."); *United States v. Polouizzi*, 697 F. Supp. 2d 381, 390 (E.D.N.Y. 2010) ("Bail conditions are unconstitutionally excessive if they impose restraints that are more than necessary to achieve the government's interest-in this case, preventing risk of flight and of danger . . . .").

## DISCUSSION

To be clear, Ms. Sun has no desire or intention to communicate with representatives of the PRC government, consulate, or mission.  The problem is that such individuals are common figures in the Chinese American community in New York, including as regular business patrons and frequent attendees at everything from community events to large cultural festivals.[1]  Ms. Sun thus

---

[1]  *See, e.g.*, "Consul General Huang Ping Attended the 2024 Hong Kong Dragon Boat Festival in New York," CONSUL. GEN. OF THE PEOPLE'S REP. OF CHINA IN N.Y. (Aug. 6, 2024), *available at* http://newyork.china-consulate.gov.cn/eng/lghd/202408/t20240809_11468498.htm (last accessed Sept. 23, 2024); "Chinese Consul General in New York Huang Ping Attends the 1st Annual Brooklyn Lantern Festival Parade," CONSUL. GEN. OF THE PEOPLE'S REP. OF CHINA IN N.Y. (Feb. 26, 2024), *available at* http://newyork.china-consulate.gov.cn/eng/lghd/202402/t20240226_11250312.htm (last accessed Sept. 23, 2024); "Chinese Consul General in New York Huang Ping Attends the 2nd Asian American Pacific Islander Heritage Cultural Parade in New York," CONSUL. GEN. OF THE PEOPLE'S REP. OF CHINA IN N.Y. (May 21, 2023), *available at* http://newyork.china-

runs the risk of encountering those individuals merely by patronizing establishments popular in that community, such as supermarkets, stores, or restaurants. Any attendance at community or cultural events likewise runs the risk that Ms. Sun could encounter representatives of the PRC consulate or mission. She takes very seriously her obligation to abide by all conditions of her release, but under Magistrate Judge Kuo's reading of the no-contact condition even politely demurring in such situations may be a potential violation. The unfortunate upshot is that Ms. Sun is effectively barred from businesses popular in the Chinese American community and excluded from attending many events associated with that community. That is an onerous restriction bearing no relation to the legitimate purposes of bail, which are to mitigate any risk of flight and danger to others or the community. *See* 18 U.S.C. § 3142(b).

*First*, any unplanned and uncoordinated public interactions permitted under the proposed consent modification do not increase any risk of flight. As defense counsel previously indicated in their letter to Magistrate Judge Kuo prior to Ms. Sun's presentment and arraignment, there simply is no such risk in this case.

Ms. Sun is a United States citizen and longtime resident of New York, having come to the United States as a young child and grown up in Queens before attending Columbia University. She has a nine-year-old son who has never known any home other than New York, has lived at her current home in Manhasset for the past three years, and resided in Queens before that. Her parents still live in Queens and visit Long Island often. In short, her home is here, her son was born here, her livelihood and that of her husband are here, and her closest family and friends all reside here.

Her actions upon learning of the government's investigation long before her arrest provide further assurances that remove any remaining concerns. On July 23, 2024, the government executed a search warrant at her family's home, as well as at the home of her elderly parents. During the searches, which began in the evening and lasted until at least 2:00 AM the following day, federal agents rifled through personal belongings and indiscriminately seized a wide range of items—some of which do not appear to have been within the limited scope of the warrants. The execution of those warrants was conspicuous, embarrassing, and traumatic for Ms. Sun. And those aggressive steps subsequently drew significant media attention that was highly prejudicial, with reporting informed by unnamed sources (at least one represented to be "familiar with the investigation").[2]

Despite that ordeal, however, Ms. Sun only reaffirmed her ties to New York. Months prior to the government's execution of the search warrants, she and her husband had purchased a week-long cruise to the Bahamas and nearby islands that was scheduled to leave on August 3, 2024. Endeavoring to avoid any misunderstandings, Ms. Sun and her husband voluntarily informed the

---

consulate.gov.cn/eng/lghd/202305/t20230522_11081031.htm (last accessed Sept. 23, 2024); "Empire State Building Kicks off Lunar New Year 2023 Celebrations" (Jan. 20, 2023), *available at* https://www.esbnyc.com/press/empire-state-building-kicks-lunar-new-year-2023-celebrations (last accessed Sept. 23, 2024).

[2] "F.B.I. Searches $3.5 Million Home of Former Aide to Gov. Hochul," N.Y. TIMES (July 23, 2024), *available at* https://www.nytimes.com/2024/07/23/nyregion/fbi-raid-linda-sun.html (last accessed Sept. 23, 2024).

government of the previously scheduled trip and ultimately were able to take their vacation. While aboard the cruise, Ms. Sun learned that the government had executed another search warrant on August 9, 2024—this time at her husband's store in Queens. Nevertheless, both returned to New York without incident. In other words, they traveled on an international cruise, stayed aboard the ship, and willingly returned to New York—all after being made painfully aware they were under federal investigation and learning of additional investigative actions while at sea.

Moreover, on the same night that federal agents executed the July search warrants, Ms. Sun's young son was to embark on a previously scheduled vacation to China with his grandparents. The government was well aware of that trip and raised no concerns; rather, for unknown reasons, agents followed Ms. Sun's parents and son to the airport and informed her husband that agents were making sure they boarded their departing flight. Ms. Sun's parents traveled to China with their grandson and subsequently returned on August 16, 2024, as previously planned. Notably, this means that for almost a week, Ms. Sun, her husband, her son, and her parents were all outside the United States with full knowledge of a looming federal investigation. Yet all returned without incident as previously scheduled. Nevertheless, when Ms. Sun's parents and young son returned to the United States, federal agents detained and questioned them for hours while ignoring repeated requests for counsel, keeping Ms. Sun from her minor child even though she was waiting at the airport to greet him.

Despite all of these heavy-handed actions, neither Ms. Sun nor her husband made any attempt to flee. Instead, they have stayed in consistent contact with their attorneys and, through them, with the government. Both repeatedly made clear their desire to voluntarily surrender in order to answer any charges filed against them, and they have promptly appeared in court as required. It would not change that calculus to clarify Ms. Sun's bail condition and temper her exclusion from the Chinese American community for fear of an unplanned and uncoordinated public interaction. And maintaining a condition that punishes Ms. Sun for even "coincidental" conversations is not the "least restrictive" measure that could be imposed. 18 U.S.C. § 3142(c)(1)(B); *cf. United States v. Arzberger*, 592 F. Supp. 2d 590, 605 (S.D.N.Y. 2008) ("[I]f the Excessive Bail Clause has any meaning, it must preclude bail conditions that are (1) more onerous than necessary to satisfy legitimate governmental purposes and (2) result in deprivation of the defendant's liberty.").

*Second*, the proposed consent modification does not pose any danger to another person or the community. Ms. Sun does not pose any such danger and the government has never argued as much, let alone sought to offer "clear and convincing evidence." 18 U.S.C. § 3142(f). Indeed, it is clear from the government's prior comments that it was focused on "*travel* to the PRC Consulate or Mission" (Dkt. 32-1 at 7:2–4 (emphasis added)), which related to a concern—however unfounded—about flight and not any risk to others. The lack of any danger is further demonstrated by the government's overt actions more than a month before seeking an indictment, the week-long delay in arresting Ms. Sun after the indictment had issued, and that this arrest comes more than four years after the indictment alleges federal agents first raised the Foreign Agents Registration Act with Ms. Sun. (*See* Dkt. 1 ¶ 112.) Nor is there any basis to suggest that the proposed modification might allow influencing witnesses, as discussing matters related to this case would remain prohibited. While "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest," *United States v. Salerno*, 481

U.S. 739, 748 (1987), there is no such concern in this case. There likewise is no reason to maintain a release condition with the punitive effect of excluding Ms. Sun from her community.

*Third*, the allegations in the indictment are unproven and cannot serve as an independent basis to further restrict Ms. Sun's liberty. She has pled not guilty to the charges in this case and is presumed to be innocent. To the extent the Court is focused on potential harm flowing from the allegations in the indictment, that alleged conduct concerns actions supposedly taken by Ms. Sun while serving as a state government employee. Putting aside Ms. Sun's strenuous disagreement with the truth and accuracy of the indictment's allegations, all parties agree that she has not worked in state government for over a year. And there is no reason to presume any other harm based on the indictment's unproven allegations.

## CONCLUSION

The proposed clarification is an effort to facilitate our client's compliance with her release conditions while avoiding the punitive application of one such condition. Defense counsel consulted with the government and proposed a tailored modification to which the government has consented. We respectfully submit that restricting public, unplanned, and uncoordinated conversations unrelated to this case is unnecessary and serves no legitimate purpose of bail.

We appreciate the Court's careful consideration of this matter and look forward to answering any questions at the upcoming proceeding.

Respectfully submitted,

By:   */s/ Jarrod L. Schaeffer*

ABELL ESKEW LANDAU LLP

Kenneth M. Abell
Jarrod L. Schaeffer
Scott Glicksman
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7341 / -7339 / -7338

kabell@aellaw.com
jschaeffer@aellaw.com
sglicksman@aellaw.com

*Counsel for Linda Sun*

cc: Counsel of Record