DMP:AAS/RMP
F. #2020R00600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    Cr. No. 24-346 (BMC)

        - against -

LINDA SUN,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT LINDA SUN'S PRETRIAL MOTION TO DISMISS


                        BREON PEACE
                        United States Attorney
                        Eastern District of New York


Alexander A. Solomon
Robert M. Pollack
Assistant U.S. Attorneys

Scott A. Claffee
Special Assistant U.S. Attorney

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 1

ARGUMENT .................................................................................................................... 4

I.    Counts One and Two State the Essential Elements of Offenses Under FARA ...... 4

II.   Counts One and Two Allege Sufficient Facts to State Offenses Under FARA ...... 7

    A.    Sun's Motion Should Be Denied as Premature ........................................... 7

    B.    The Factual Allegations of Counts One and Two Are Sufficient to State
    Offenses ................................................................................................... 10

        i.    The Indictment Properly Alleges an Agency Relationship .......... 11

        ii.    The Indictment Alleges Sufficient Efforts to Influence ............... 17

        iii.    The Indictment Properly Alleges Willfulness ............................. 19

    C.    The Indictment Alleges Conduct that Falls Squarely Within FARA's
    Prohibitions and Does Not Raise Constitutional Concerns ..................... 21

        i.    The Indictment Has No Bearing Whatsoever on the Permissibility
        of State Conduct or Any Political or Policy Decisions ................ 22

        ii.    The Rule of Lenity Has No Application Here ............................. 24

    D.    The Indictment Properly Alleges Conspiracy to Violate FARA ............. 25

III.   Counts Three Through Seven Allege Sufficient Facts to State the Charged
Immigration Crimes ........................................................................................ 28

IV.   Count Ten Alleges Sufficient Facts to State the Charged Money Laundering
Conspiracy Against Sun ................................................................................... 31

CONCLUSION ............................................................................................................... 34

TABLE OF AUTHORITIES

Page(s)

**Cases**

Att'y Gen. of the United States v. Wynn,
  104 F.4th 348 (D.C. Cir. 2024) ................................................................................ 17, 18

Att'y Gen. of United States v. Irish N. Aid Comm.,
  ("INAC"), 668 F.2d 159 (2d Cir. 1982) .................................................................. 12, 13, 15

Bryan v. United States,
  524 U.S. 184 (1998) .................................................................................................. 19

Hamling v. United States,
  418 U.S. 87 (1974) ................................................................................... 4, 28, 30, 31

Lambert v. People of the State of Cal.,
  355 U.S. 225 (1957) .................................................................................................. 20

Liparota v. United States,
  471 U.S. 419 (1985) .................................................................................................. 20

N.Y. Times Co. v. U.S. Dept. of Justice,
  390 F. Supp. 3d 499 (S.D.N.Y. 2019) ...................................................................... 18

Ocasio v. United States,
  578 U.S. 282 (2016) .................................................................................................. 24

Ratzlaf v. United States,
  510 U.S. 135 (1994) .................................................................................................. 19

Rehaif v. United States,
  588 U.S. 225 (2019) .................................................................................................. 20

United States ex rel. Longhi v. United States,
  575 F.3d 458 (5th Cir. 2009) .................................................................................... 18

United States v. Alfonso,
  143 F.3d 772 (2d Cir. 1998) .............................................................................. passim

United States v. Aliperti,
  867 F. Supp. 142 (E.D.N.Y. 1994) ............................................................................ 4

United States v. Alsahahhi,
  21-cr-371 (BMC), 2022 WL 2239624 (E.D.N.Y. June 22, 2022) .......................... passim

United States v. Amen,
  831 F.2d 373 (2d Cir. 1987) ...................................................................................... 27

United States v. Amirnazmi,
  No. 08-CR-429, 2009 WL 32481 (E.D. Pa. Jan. 5, 2009) ......................................... 9

United States v. Berlin,
  472 F.2d 1002 (2d Cir. 1973) .................................................................................... 20

United States v. Citron,
  783 F.2d 307 (2d Cir. 1986) ....................................................................................... 4

United States v. Craig,
  401 F. Supp. 3d 49 (D.D.C. 2019) .................................................................. 18, 25, 30

United States v. Dauray,
  215 F.3d 257 (2d Cir. 2000) ...................................................................................... 17

United States v. Duran,
  596 F.3d 1283 (11th Cir. 2010) .................................................................................. 9

United States v. Finkelstein,
   229 F.3d 90 (2d Cir. 2000) ..................................................................................... 33
United States v. Gotti,
   457 F. Supp. 2d 411 (S.D.N.Y. 2006) ..................................................................... 10
United States v. Hoskins,
   902 F.3d 69 (2d Cir. 2018) ............................................................................... 26, 27
United States v. Kelly,
   462 F. Supp. 3d 191 (E.D.N.Y. 2020) ..................................................................... 10
United States v. Laurent,
   861 F. Supp. 2d 71 (E.D.N.Y. 2011) ........................................................................ 8
United States v. Lin,
   15-cr-601(S-2)(DLI), 2018 WL 3416524 (E.D.N.Y. July 11, 2018) ........................ 8
United States v. Lira,
   22 Cr. 151 (LGS), 2022 WL 17417129 (S.D.N.Y. Dec. 5, 2022) ........................... 18
United States v. Maher,
   108 F.3d 1513 (2d Cir. 1997) ................................................................................. 33
United States v. Mancuso,
   420 F.2d 556 (2d Cir. 1970) ............................................................................. 20, 22
United States v. Mariani,
   725 F.2d 862 (2d Cir. 1984) ................................................................................... 10
United States v. McGoff,
   831 F.2d 1071 (D.C. Cir. 1987) .............................................................................. 18
United States v. Menendez,
   720 F. Supp. 3d 301 (S.D.N.Y. 2024) .................................................................... 23
United States v. Michel,
   Criminal No. 19-148-1 (CKK), 2023 WL 7140000 (D.D.C. Mar. 21, 2023) ......... 18
United States v. Michel,
   No. 19 Cr. 148, 2023 WL 2388501 n.6 (D.D.C. Mar. 6, 2023) .............................. 20
United States v. Michel,
   No. CR 19-148-1 (CKK), 2024 WL 1603362 (D.D.C. Apr. 12, 2024) ......... 19, 23, 27
United States v. Pirro,
   212 F.3d 86 (2d Cir. 2000) ..................................................................................... 20
United States v. Rafiekian,
   991 F.3d 529 (4th Cir. 2021) ............................................................................ passim
United States v. Reiss,
   186 F.3d 149 (2d Cir. 1999) ................................................................................... 33
United States v. Robins,
   673 F. App'x 13 (2d Cir. 2016) .............................................................................. 33
United States v. Sampson,
   898 F.3d 270 (2d Cir. 2018) ..................................................................................... 8
United States v. Stavroulakis,
   952 F.2d 686 (2d Cir. 1992) ................................................................................ 4, 31
United States v. Stringer,
   730 F.3d 120 (2d Cir. 2013) ..................................................................................... 5
United States v. Svoboda,
   347 F.3d 471 (2d Cir. 2003) ................................................................................... 33

United States v. Tabb,
    949 F.3d 81 (2d Cir. 2020)..................................................................... 24
United States v. Thomas,
    150 F.3d 743 (7th Cir. 1998).................................................................... 8
United States v. Tillman,
    419 F. App'x 110 (2d Cir. 2011)............................................................ 33
United States v. Ulbricht,
    31 F. Supp. 3d 540 (S.D.N.Y. 2014)..................................................... 26
United States v. Walsh,
    194 F.3d 37 (2d Cir. 1999)........................................................................ 5
United States v. Yakou,
    428 F.3d 241 (D.C. Cir. 2005)................................................................. 8
Whitfield v. United States,
    543 U.S. 209 (2005)............................................................................... 32

## Statutes

18 U.S.C. § 219 ..................................................................................... 19
18 U.S.C. § 371 ..................................................................................... 32
18 U.S.C. § 951 ............................................................................... 11, 12
18 U.S.C. § 1956(a)(2)(B) ................................................................... 33
18 U.S.C. § 1956(c)(7) ......................................................................... 32
18 U.S.C. § 1956(h) ............................................................................. 32
22 U.S.C. § 611(b)(1) ............................................................................. 6
22 U.S.C. § 611(c)(1)(i) ..................................................................... 6, 11
22 U.S.C. § 611(o) ............................................................................... 17
22 U.S.C. § 612(a) ................................................................................. 5
22 U.S.C. § 613(d)(2) ........................................................................... 16
22 U.S.C. § 613(d)(3) ........................................................................... 12
22 U.S.C. §§ 613(a) ............................................................................. 27

## Rules

Federal Rule of Criminal Procedure 7(c)................................................ 4
Federal Rule of Criminal Procedure 12(b)............................................. 8
Federal Rule of Criminal Procedure 12(b)(3)......................................... 7

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the defendant Linda Sun's pretrial motion to dismiss all charges against her in the Indictment.

Sun primarily argues that the government has failed to allege offenses within the meaning of the applicable criminal statutes. However, the Indictment tracks the relevant statutory language to allege all the required elements of each of the charges against Sun, including the times and places of the alleged violations. Such allegations are sufficient to state violations of federal law and to defeat a pretrial motion to dismiss.

Moreover, the government is not required at this stage of the case to present factual evidence in support of Sun's guilt, and therefore Sun's motion is premature to the extent it disputes the Indictment's factual allegations.

Further, although the government has not yet made a full pretrial proffer of its trial proof—and therefore judicial review of the sufficiency of the factual allegations would be procedurally improper—the Indictment adequately provides ample factual details to state the alleged offenses.

For these reasons and those set forth below, Sun's motion to dismiss all charges against her should be denied.

FACTUAL BACKGROUND

From in or about 2012 until 2023, Sun worked for the New York State ("NYS") government, in positions that included: (a) Director of Asian American Affairs and Queens Regional Representative for a then-executive head ("Politician-1"), from in or about August 2012 to February 2015; (b) Director of External Affairs of Global NY for Empire State Development, the economic development arm of the NYS government, from in or about April 2015 to February 2018; (c) Deputy Chief Diversity Officer for Politician-1 from in or about February 2018 to July

2020; (d) Superintendent for Intergovernmental Affairs and Chief Diversity Officer at the NYS Department of Financial Services from in or about July 2020 to September 2021; (e) Deputy Chief of Staff for the NYS Executive Chamber (the "Executive Chamber"), working as an advisor for a then-executive head ("Politician-2"), from in or about September 2021 until September 2022; and (f) Deputy Commissioner for Strategic Business Development for the NYS Department of Labor from in or about September 2022 until March 2023.  (Ind. ¶ 1).

While working for the NYS government, including in high-ranking posts for Politician-1 and Politician-2 and in multiple state agencies, Sun acted as an undisclosed agent of the Government of the People's Republic of China ("PRC") and the Chinese Communist Party ("CCP").  Acting at the request of PRC government officials and CCP representatives, Sun engaged in numerous political activities in the interests of the PRC and the CCP, including blocking representatives of the Taiwanese government from having access to the NYS governor's office; changing Politician-1's and Politician-2's messaging regarding issues of importance to the PRC and the CCP; obtaining official NYS governor proclamations for PRC government representatives without proper authorization; attempting to facilitate a trip to the PRC by Politician-2; and arranging meetings for visiting delegations from the PRC government with NYS government officials.  (Ind. ¶ 9).

Additionally, Sun repeatedly violated internal rules and protocols within the NYS governor's office to provide improper benefits to PRC and CCP representatives, including by providing unauthorized invitation letters from the office of the NYS governor that were used to facilitate travel by PRC government officials into the United States for meetings with NYS government officials.  Sun's unauthorized invitation letters for the PRC government delegation

constituted false statements made in connection with immigration documents and induced the foreign citizens into unlawfully entering the United States.  (Ind. ¶ 10).

In return for these and other actions, Sun received substantial economic and other benefits from representatives of the PRC government and the CCP, including the facilitation of millions of dollars in transactions for the PRC-based business activities of Sun's husband, codefendant Chris Hu; travel benefits; tickets to events; promotion of a close family friend's business; employment for Sun's cousin in the PRC; and Nanjing-style salted ducks prepared by the personal chef a high-ranking government official at the Consulate of the People's Republic of China in New York ("PRC Consulate") that were delivered to the residence of Sun's parents.  Sun and Hu laundered the monetary proceeds of this scheme to purchase, among other items, real estate property in Manhasset, New York for $3.6 million, a condominium in Honolulu, Hawaii for $1.9 million, and various luxury automobiles, including a 2024 Ferrari.  Sun never disclosed any benefits she received from representatives of the PRC government and the CCP to the NYS government, as she was required to do as a NYS government employee.  (Ind. ¶¶ 11-12).

Sun never registered as a foreign agent with the Attorney General, and in fact actively concealed that she took actions at the order, request, or direction of PRC government and CCP representatives.  Thus, neither the NYS government nor the greater New York and American public had the opportunity to evaluate her conduct, considering her long-standing relationships with the PRC government and the CCP and her status as their agent.  (Ind. ¶ 13).

In a voluntary interview with agents from the Federal Bureau of Investigation ("FBI") in July 2020, Sun misrepresented the purpose of one of her trips to the PRC, and concealed the fact that it was arranged and funded by co-conspirators representing the PRC government and the CCP.  (Ind. ¶ 14).

In a voluntary interview with the NYS Office of the Inspector General in February 2023, Sun claimed to attend Asian community events in her personal capacity and not in her new capacity at the Department of Labor. She falsely claimed that she had not requested any official gubernatorial proclamations since transferring to the Department of Labor. In fact, she had procured and presented an official gubernatorial proclamation for PRC Official-1. (Ind. ¶ 15).

<u>ARGUMENT</u>

I.    <u>Counts One and Two State the Essential Elements of Offenses Under FARA</u>

The Indictment adequately alleges the essential elements of the FARA charges in Counts One (FARA conspiracy) and Two (substantive FARA violation).

It is well-established that an indictment need not include all the government's factual evidence, and that an indictment that tracks the language of a statute and states the time and place of the alleged crime is sufficient to survive a motion to dismiss for failure to state an offense. Under Federal Rule of Criminal Procedure 7(c), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." <u>United States v. Alfonso</u>, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotation marks omitted); <u>see</u> <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>United States v. Stavroulakis</u>, 952 F.2d 686, 693 (2d Cir. 1992) ("We have often stated that an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (internal quotation marks omitted)). Where an indictment does so, it is sufficiently specific to withstand a motion to dismiss. <u>See</u> <u>United States v. Citron</u>, 783 F.2d 307, 314 (2d Cir. 1986); <u>United States v. Aliperti</u>, 867 F. Supp. 142, 144 (E.D.N.Y. 1994). Indeed, the Second Circuit has stated that "we have consistently upheld indictments that do little more than to track the language of the statute charged and state

the time and place (in approximate terms) of the alleged crime." United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999) (internal quotation marks omitted) (affirming conviction on appeal where defendant argued that the district court erred in failing to dismiss the indictment pretrial); see also United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) ("When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, this court has 'repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'" (internal citations omitted)).

Here, consistent with the requirements repeatedly endorsed by the Second Circuit, Counts One and Two of the Indictment track the language of the statute and provide the approximate time and place of the charged crime.

In relevant part, FARA provides:

> No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement . . . or unless he is exempt from registration . . . .

22 U.S.C. § 612(a). Count Two of the Indictment tracks the language of FARA and includes the approximate time and place of the charged crime. Specifically, Count Two alleges:

> In or about and between August 2019 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LINDA SUN, also known as "Wen Sun," "Ling Da Sun," and "Linda Hu," together with others, knowingly and willfully acted and caused others to act as an agent of a foreign principal, namely, the Government of the People's Republic of China and the Chinese Communist Party, without registering with the Attorney General, as required by law.

(Ind. ¶ 118). Count One similarly tracks the statutory language of FARA and sets forth several overt acts committed in furtherance of the FARA conspiracy. (Ind. ¶ 116).

In addition, FARA defines a "foreign principal" as "a government of a foreign country and a foreign political party," 22 U.S.C. § 611(b)(1), and "agent of a foreign principal," among other things, as:

> any person who acts as an agent, representative, employee, or servant of any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person engages within the United States in political activities for or in the interests of such foreign principal.

Id. § 611(c)(1)(i).  The Indictment, in turn, alleges that Sun acted "as an agent of a foreign principal, namely, the Government of the People's Republic of China and the Chinese Communist Party," (Ind. ¶ 118), and, as summarized above, offers numerous details about her political activities for or in the interests of her foreign principal.  Further, the Indictment alleges that Sun "took actions at the order, request, or direction of [the] PRC government and CCP representatives." (Id. ¶¶ 13); (see id. ¶¶ 20, 113).

Thus, Counts One and Two track the language of the FARA statute and set forth the elements of the alleged crimes:  they allege that Sun acted as an agent of one or more foreign principals, that she acted in the United States, that she acted knowingly and willfully, and that she failed to register with the Attorney General.  Moreover, Counts One and Two both identify the foreign principals at issue (the PRC government and the CCP), the dates in which Sun acted on behalf of the PRC government and the CCP (August 2019 through December 2023), and the place of Sun's acts (within the Eastern District of New York and elsewhere).

Of course, the allegations set forth in the Indictment do substantially more than merely track the language of the statute and set forth the approximate time and place of the charged crime.  Nevertheless, because Counts One and Two of the Indictment satisfy the Second Circuit's

requirement that an indictment "track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime," Alfonso, 143 F.3d at 776, Counts One and Two of the Indictment adequately state offenses.

## II.    Counts One and Two Allege Sufficient Facts to State Offenses Under FARA

The Court need go no further to reject Sun's motion to dismiss Counts One and Two.  Indeed, as the government explains below, it would be premature for the Court to reach the factual allegations of the Indictment.  Even if the Court were to do so, however, the government respectfully submits that the factual allegations set forth in the Indictment are more than sufficient to state offenses under FARA.

### A.    Sun's Motion Should Be Denied as Premature

In essence, Sun argues that the Indictment fails to include sufficient factual allegations to state an offense under FARA.  But the government is not required in an indictment to make a proffer of its trial evidence.  Here, the government need not set forth in an indictment all its factual allegations that the defendant has acted on behalf of a foreign principal, and the government has not made such a full proffer of its evidence here.  Therefore, Sun's motion is premature and should await the presentation of the government's evidence at trial, at which time the Court can revisit this question in the form of a Rule 29 motion at the close of the government's case.

Under Federal Rule of Criminal Procedure 12(b)(3), a defense that an indictment fails to state an offense may be raised by a pretrial motion only "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits" (emphasis added).  Where the motion cannot be determined without reference to the evidence that would be presented at trial, it must be denied as premature.  A technically sufficient indictment "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial."

United States v. Laurent, 861 F. Supp. 2d 71, 110 (E.D.N.Y. 2011); see United States v. Sampson, 898 F.3d 270, 279 (2d Cir. 2018) ("[T]he civil summary judgment mechanism does not exist in federal criminal procedure . . . ."); United States v. Yakou, 428 F.3d 241, 246 (D.C. Cir. 2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); United States v. Thomas, 150 F.3d 743, 747 (7th Cir. 1998) (Easterbrook, J., concurring) ("Summary judgment does not exist in criminal cases").  There is "a narrow exception to the rule that a court cannot test the sufficiency of the government's evidence on a Rule 12(b) motion"—where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial."  Sampson, 898 F.3d at 282 (citing Alfonso, 143 F.3d at 776–77)—but that is not the case here.

Courts in this district have declined to reach the factual sufficiency of an indictment on a pretrial motion to dismiss.  For example, in United States v. Alsahahhi, 21-cr-371 (BMC), 2022 WL 2239624 (E.D.N.Y. June 22, 2022), this Court rejected the defendants' pretrial motion to dismiss in which the defendants argued, as here, that the government had insufficiently alleged agency within the meaning of Title 18, United States Code, Section 951, an analogous statute to FARA, but one that contains a different definition of agency, among other things.  At the outset, this Court "note[d] that many of defendants' arguments here are inappropriately premised on the sufficiency of the Government's evidence, and not on statutory interpretation," and proceeded solely to consider legal arguments.  Id. at *4.  As to one defendant, this Court held that, "[e]ven if, as [the defendant] argues, the facts additional[ly] alleged in the superseding indictment do show that that he was an agent of Company A, and that he did not agree to act as an agent of the UAE, the Government is entitled to make its case at trial that he was an agent of the UAE and that he agreed to serve as such."  Id. at *6; see United States v. Lin, 15-cr-601(S-2)(DLI), 2018 WL

3416524, at \*4 (E.D.N.Y. July 11, 2018) (denying as premature pretrial motion to dismiss Section 951 charge, where "the registration requirement in § 951 reaches beyond spying and subversive activities 'to <u>any</u> affirmative conduct undertaken as an agent of a foreign government'" (quoting <u>United States v. Duran</u>, 596 F.3d 1283, 1293 (11th Cir. 2010))).

Similarly instructive is a Pennsylvania district court's opinion on a motion to dismiss a Section 951 charge in <u>United States v. Amirnazmi</u>, No. 08-CR-429, 2009 WL 32481 (E.D. Pa. Jan. 5, 2009). In that case, the defendant moved to dismiss two counts of an indictment that charged him with a conspiracy to violate Section 951 and a substantive violation of Section 951.[1] <u>Id.</u> at \*3. Raising a similar claim as Sun, the defendant in that case argued that those counts should be dismissed because the "factual allegations of the Superseding Indictment do not demonstrate that Defendant acted subject to the direction or control of a foreign government or official." <u>Id.</u> The court rejected the defendant's argument, holding, first, that whether the individuals at issue qualified as "foreign government or officials" was a factual determination that could not be made on a motion to dismiss and, second, that whether the defendant's actions were at the direction or control of foreign officials was a trial defense. <u>Id.</u>

So too here. Sun may offer her argument that she did not act on behalf of a foreign principal as a trial defense, but a jury will be entitled to hear the evidence of Sun's acts and determine for itself whether that evidence proves beyond a reasonable doubt that Sun acted on behalf of the PRC government and the CCP. Because the government has not made a full proffer of the evidence that it intends to prove at trial in support of FARA charges, Sun's motion is premature. For the Court to make a pretrial ruling on the sufficiency of the evidence on the issue

---

[1] The court in <u>Amirnazmi</u> incorrectly referred to these counts in its opinion as violations of FARA, but the indictment makes clear that these counts charged violations of Sections 371 and 951.

of agency would be to improperly supplant the jury's role as factfinder.  See Alsahahhi, 2022 WL 2239624, at *6.

   Once the government presents its case at trial, the Court can revisit—if appropriate—Sun's argument in the form of a Rule 29 motion at the close of the government's case.  See, e.g., Alfonso, 143 F.3d at 777 n.7 (discussing that, absent the government's consent to a pretrial motion to dismiss, the appropriate vehicle for addressing satisfaction of elements of the offense would be a Rule 29 motion); United States v. Kelly, 462 F. Supp. 3d 191, 197 (E.D.N.Y. 2020) ("The Government is entitled to marshal and present its evidence at trial, and the defendant is entitled to challenge the sufficiency of that evidence pursuant to Rule 29 of the Federal Criminal Rules of Procedure.").

   For these reasons, Sun's motion to dismiss Counts One and Two should be denied as premature.

  B.  <u>The Factual Allegations of Counts One and Two Are Sufficient to State Offenses</u>

   Should the Court nevertheless reach the merits of Sun's motion now, the government respectfully submits that the factual allegations set forth in the Indictment are sufficient to state offenses under FARA.

   On pretrial motions to dismiss, factual allegations are accepted as true and construed in the light most favorable to the government.  "On a motion to dismiss pursuant to Rule 12(b), a court must accept all factual allegations in the indictment as true."  United States v. Gotti, 457 F. Supp. 2d 411, 421 (S.D.N.Y. 2006).  In reviewing the sufficiency of the allegations, the court must "view all of the evidence in the light most favorable to the Government and determine if there is any evidence 'upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'"  Id. (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984)).

Viewing the Indictment's allegations in the light most favorable to the government, all of Sun's claims of purported weaknesses in the allegations under FARA fail.

i.    The Indictment Properly Alleges an Agency Relationship

In essence, Sun argues that unless the Indictment cites verbatim taskings from the PRC government or the CCP, pretrial dismissal of the FARA charges is appropriate.  Sun is mistaken.

As noted above, the FARA statute defines an "agent of a foreign principal" to include "any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal" and who performs certain activities.  22 U.S.C. § 611(c)(1)(i).

Case authority on a related foreign agent statute—18 U.S.C. § 951—offers the most helpful guidance as to the scope of agency under FARA, a statute whose own definition of agency sweeps even more broadly.

Most recently, the Fourth Circuit elaborated on the nature of agency in United States v. Rafiekian, 991 F.3d. 529 (4th Cir. 2021), holding that a person operating in a role akin to that of an "independent contractor"—"retaining significant discretion over the particulars of performance" and "agree[ing] to operate subject to a more hands-off form of 'direction'"—acts as an agent within Section 951 so long as the person "act[s] on account of the principal." Id. at 541-42 (holding that "a foreign principal's involvement does not need to mirror an employer's control over the workings of an employee; a lesser degree of 'direction' is sufficient, as it would be under the common law").  This Court has previously recognized that the definition of agency under FARA is even broader than that set forth for Section 951.  See Alsahahhi, 2022 WL 2239624, at *5 ("[A]gency is defined under the Foreign Agents Registration Act . . . in a 'more sweeping' way, to additionally include 'requests.'" (citations omitted)).

In <u>Att'y Gen. of United States v. Irish N. Aid Comm.</u> ("<u>INAC</u>"), 668 F.2d 159 (2d Cir. 1982), the Second Circuit held that the scope of a foreign principal's "request" to an agent "fall[s] somewhere between a command and a plea." <u>Id.</u> at 161.  Although the Second Circuit did express concern about construing a "request" so broadly that responses to pleas for contributions or generalized political support would "make all Americans who sent money, food, and clothing to the Italian earthquake victims 'agents' under the Act," <u>Id.</u>, the FARA statute exempts contributions solely for "medical aid and assistance" as covered conduct, 22 U.S.C. § 613(d)(3) ("Private and nonpolitical activities; solicitation of funds").

Under well-established law, an agency relationship may be proved through direct or circumstantial evidence.  As to the value of circumstantial evidence in proving agency, the Fourth Circuit wrote in <u>Rafiekian</u>:

> But in a § 951 case, [direct] evidence can be hard to come by.  Savvy operators cover their tracks.  So, if the prosecution is to prove that the defendant acted as an 'agent of a foreign government,' it may need to rely on circumstantial evidence and reasonable inferences to make its case—as it is entitled to do.  Here, the government has lassoed enough stars to reveal a distinct constellation.

<u>Id.</u> at 545.  Notably, the proof of coordination between the defendant in <u>Rafiekian</u> and Turkish authorities did not include emails or phone calls between the defendant and any Turkish official, bank records tracing the flow of funds to governmental accounts, or any direct evidence establishing that Turkish government officials specifically directed the defendant's conduct.  <u>Id.</u> Rather, the proof consisted primarily of evidence of a meeting with Turkish officials and subsequent correspondence referencing a possible "follow-on contract"—implying an agreement to work for Turkey—and suggesting an understanding and an agreement to disseminate Turkish narratives regarding a Turkish dissident residing in the United States, as well as evidence that the

intermediary told the defendant about his contact with Turkish government officials.  Id. at 546–47.

Similarly, the INAC court underscored that the factfinder may properly rely on circumstantial evidence to determine the existence of agency: "[T]he surrounding circumstances may show that those 'requested' are in some way authorized to act for or to represent the foreign principal."  668 F.2d at 161; see Rafiekian, 991 F.3d at 545 (discussing proof of agency through circumstantial evidence).

Here, the Indictment includes numerous allegations of the existence of an agency relationship between Sun, on one hand, and the PRC government and the CCP, on the other.  The taskings—whether through order, direction, or request—include, but are not limited to, the following:

- Repeated communications between Sun and PRC consular officials demonstrate that Sun acted, pursuant to order, direction, or request, to minimize contact between Taiwanese government officials and the NYS Executive Chamber.  The referenced communications include in-person meetings, telephone calls, and WeChat messages; in quoted electronic messages, Sun bragged about her actions, and the PRC consular officials expressed their gratitude (Ind. ¶ 23);

- Acting pursuant to order, direction, or request of a PRC consular official, Sun allowed the consular official to surreptitiously listen to a nonpublic New York State government call concerning the response to the COVID-19 pandemic, following advance coordination in phone calls and text messages (Ind. ¶ 27);

- Acting pursuant to order, direction, or request of one or more PRC consular officials, Sun provided the PRC Consulate with access to shape the content of Politician-2's public remarks, including by providing a PRC government official with an advance preview of content, and communicated with a consular official about this tasking through text message and in phone calls (Ind. ¶¶ 30-34);

- Acting pursuant to order, direction, or request of one or more PRC consular officials, Sun arranged for a framed gubernatorial proclamation for PRC

13

Official-1 outside ordinary channels and initially lied about what she had done when confronted by NYS investigators (Ind. ¶¶ 36-37);

- Acting pursuant to order, direction, or request of one or more intermediaries for the PRC government, Sun arranged for delegations from Henan Province to enter the United States through fraudulent invitation letters on the NYS Executive Chamber letterhead that Sun drafted without authorization (Ind. ¶¶ 42-50, 61-73);

- As evidence of the relationship of trust with principals of the PRC government and/or the CCP, Sun received tickets for events and shows, as well as Nanjing-style salted ducks prepared by PRC Official-1's personal chef, from the PRC Consulate.  In addition, PRC Official-1 agreed to promote a close family friend's business.  (Ind. ¶¶ 11, 25-26, 29). Additionally, Jiangsu provincial officials provided a government job to Sun's cousin.  (Ind. ¶ 87).

- As evidence of the relationship of trust with principals of the PRC government and/or the CCP, the coconspirators identified in the Indictment as CC-1 and CC-2 aided Hu's PRC-based business activities.  (Ind. ¶¶ 74-86).

Under Rafiekian and INAC, the Indictment's allegations regarding agency are more than sufficient to state offenses under FARA.  As with Rafiekian, while the government's proof does not include recorded telephone calls in which PRC Officials direct Sun's actions, "[s]avvy operators" such as the PRC consular officials here "cover their tracks" and would not transmit taskings over unsecured phone lines, emails, or texts.  Rafiekian, 991 F.3d at 545.  Accordingly, acts taken by Sun that benefit the PRC government and the CCP—including preventing Taiwanese government officials from developing a relationship with the NYS Executive Chamber and coordinating NYS messaging to conform with official CCP narratives—when coupled with evidence of meetings, phone calls, and text exchanges in which Sun reported on her activities, as well as the material benefits Sun and her family received, amply support the allegations that Sun engaged in those acts "at the order, direction, or request of principals of the PRC government." (Ind. ¶ 113).

Sun's arguments to the contrary are unavailing.

First, Sun misconstrues INAC to suggest that only direct evidence of a foreign principal's request bears sufficient probative value to establish agency: "Nor is it enough for the Indictment to gesture at surrounding circumstances to imply that some 'specific instruction' was made, because that would sweep in 'a general plea for political or financial support,' which cannot legally constitute a 'request' under the statute."  (Def. Br. 17) (quoting INAC, 668 F.2d at 161-62; (see Def. Br. 17) (suggesting Indictment's infirmity for "fail[ing] to allege any specific request at all").  The Court should not be persuaded by this distorted reading of INAC.  As noted above, Sun's references to broad political or financial activity are irrelevant to the extent that such conduct would fall under already existing humanitarian exemptions under the FARA statute.  Further, the INAC court was only addressing broad pleas to large groups ("all Americans" or "members of a large religious, racial, or ethnic group"), see 668 F.2d at 161, and not, as here, requests by a foreign principal directed at a specific individual.  Moreover, as also explained above, the INAC court indicated the importance of circumstantial evidence in determining the existence of agency: "[T]he surrounding circumstances may show that those 'requested' are in some way authorized to act for or to represent the foreign principal."  Id.  Here, where the Indictment includes 113 detailed paragraphs of speaking allegations, the Court should disregard Sun's unsupported claim that the Indictment simply "[p]arrot[s] statutory language" without providing particulars.  (Def. Br. 22).

Second, the Court should reject Sun's efforts to read into the FARA statute components of public corruption statutes, including the proposed requirements of a quid pro quo and specific timing and linkage of any bribe or gratuity.  (Def. Br. 17 n.17, 19-20).  The Supreme Court's recent statutory interpretations of the gratuity, bribery, and honest services statutes have no bearing on the scope of FARA—a foreign malign influence statute which shares none of the

elements of these public corruption statutes, none of which require proof of an agency relationship. Moreover, the Fourth Circuit in <u>Rafiekian</u> cited the contractual negotiations between the defendant and Turkish officials and the expectation of a follow-on contract as persuasive circumstantial evidence of the agency relationship. 991 F.3d. at 545. As alleged in the Indictment, Sun and her family's repeated receipt of economic benefits from the PRC government and the CCP constitutes admissible and compelling circumstantial evidence of the agency relationship.

<u>Third</u>, the Court should decline Sun's invitation to construe as a matter of law that each of the actions she took on behalf of the PRC government and the CCP constitute "other activities not serving predominantly a foreign interest." 22 U.S.C. § 613(d)(2). Sun's characterization of her actions is inconsistent with the requirement that, at the pretrial motion to dismiss stage, the Court is to construe the allegations of the Indictment in the light most favorable to the government, as noted above. Moreover, Sun may argue at trial that her actions on behalf of a foreign principal, including preventing meetings between Taiwanese government officials and the NYS Executive Chamber somehow predominantly furthered the interest of either the New York State officials or the residents of New York State, but resolution of such issues of material fact would be inappropriate at this procedural juncture. <u>See</u> <u>Alsahahhi</u>, 2022 WL 2239624, at *6.

<u>Fourth</u>, Sun's argument that the instant charges criminalize the actions of "anyone who agrees to <u>any</u> request from a foreign government" is entirely without merit. (Def. Br. 23). The Indictment does not charge that Sun violated FARA simply by virtue of "prevent[ing] meetings with representatives of Taiwan," as the defendant claims. (<u>Id.</u>). Rather, she is charged under FARA for engaging in such acts while receiving taskings pursuant to the direction, orders, and requests of the PRC government and the CCP—while also receiving significant economic

benefits from those foreign principals—and without having registered with the Attorney General as required by law.[2]

In sum, viewing all these factual allegations in the light most favorable to the government, a rational juror could find beyond a reasonable doubt that Sun acted to advance the interests of the PRC government and CCP and that her acts were taken at the behest of one or more foreign principals. Thus, the factual allegations of the Indictment are sufficient to support the government's charge that Sun acted on behalf of the PRC government or the CCP.

    ii.   The Indictment Alleges Sufficient Efforts to Influence

In cherry-picking definitions of "influence" that are not "ordinary, common-sense meaning[s]," United States v. Dauray, 215 F.3d 257, 260 (2d Cir. 2000), Sun argues that "political activities" under FARA require a showing of "use of pressure, authority, or power," (Def. Br. 25 (citation and alteration omitted)). Sun's argument defies common sense and should be rejected.

FARA defines "political activities" as "any activity that the person engaging in believes will, or that person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States . . . with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party." 22 U.S.C. § 611(o).

Neither the FARA statute nor case authority defines the meaning of the word "influence." However, numerous cases explain that FARA was designed to root out covert efforts by foreign actors to influence policy in the United States. See Att'y Gen. of the United States v. Wynn, 104 F.4th 348, 351 (D.C. Cir. 2024) ("FARA . . . requir[es] that foreign efforts to influence

---

[2]    The Court should also reject Sun's claim that she faces prosecution under FARA because of "alleged violations of state conflict-of-interest rules." (Def. Br. 20 n.19). Rather, her repeated violations of conflict-of-interest rules, as manifested in repeated false statements in her annual disclosures, constitutes evidence of her willful failure to register as a foreign agent.

United States be publicly disclosed and transparent, giving decision makers and the public context needed to apprise the statements and actions of those acting on a foreign principal's behalf") (quoting United States v. McGoff, 831 F.2d 1071, 1074 (D.C. Cir. 1987)) (alteration and quotation marks omitted); United States v. Michel, Criminal No. 19-148-1 (CKK), 2023 WL 7140000, at *3 (D.D.C. Mar. 21, 2023) ("FARA prosecutions often involve a foreign state's illicit, covert efforts to influence American policy that are concomitant with the foreign state's open diplomacy or other overt, licit means to accomplish the same ends."); United States v. Craig, 401 F. Supp. 3d 49, 54 (D.D.C. 2019) (FARA's purpose is to "prevent covert influence over U.S. policy by foreign principals"); N.Y. Times Co. v. U.S. Dept. of Justice, 390 F. Supp. 3d 499, 506-07 (S.D.N.Y. 2019) (collecting cases defining purpose of FARA).

"The usual dictionary meaning of 'influence' is, for example, 'to affect or alter by indirect or tangible means.'" United States v. Lira, 22 Cr. 151 (LGS), 2022 WL 17417129, at *5 (S.D.N.Y. Dec. 5, 2022) (quoting Merriam-Webster.com Dictionary). That dictionary definition of "influence" (which is also the word's common usage) is fully consistent with the purpose of FARA, as described in the above cases, to root out covert malign influence efforts by foreign actors to affect or alter U.S. policy. See Wynn, 104 F.4th at 351.

Consulting a law dictionary and inapplicable case authority, Sun claims that the common usage of "influence" implicates "use of pressure, authority, or power . . . falling short of coercion." (Def. Br. 25). Notably, the primary definitions from one of the sources upon which Sun relies does not connote coercive tactics such as "corrupt interference." (Id.); see United States ex rel. Longhi v. United States, 575 F.3d 458, 469-70 (5th Cir. 2009) (first definition of "influence" listed as "the act or power of producing an effect without apparent exertion of force or direct exercise of command").

The Court should decline Sun's invitation to construe "political activities" so narrowly as to require a showing of "pressure, authority, or power" and in a manner contrary to FARA's statutory purpose.  See, e.g., United States v. Michel, No. CR 19-148-1 (CKK), 2024 WL 1603362, at *13 (D.D.C. Apr. 12, 2024) (denying defendant's motion for acquittal for FARA charge where defendant had, among other items, directly lobbied the Trump administration and other government officials).  Further, absent a full proffer of the government's evidence, the Court should refuse to find that Sun's alleged political activities which targeted NYS officials and constituents are insufficient as a matter of law to sustain the FARA charges.  See Alsahahhi, 2022 WL 2239624, at *6.  Finally, the Court should reject Sun's claim that public officials cannot be charged under FARA based on political activities because public officials are supposed to influence and be influenced.  This claim is belied by 18 U.S.C. § 219, which criminalizes the actions of federal officials—including federal public officials—who act as agents under FARA, where Section 219 lacks any carveout for political activities.

     iii.    The Indictment Properly Alleges Willfulness

Sun incorrectly argues that FARA requires a showing that the defendant was aware of the statute at the time of the alleged criminal violation.

As noted above, a criminal violation of FARA requires that a defendant act "willfully."  A person acts "willfully" when they "act with knowledge that [his/her] conduct was unlawful."  Bryan v. United States, 524 U.S. 184, 191-92 (1998) (quoting Ratzlaf v. United States, 510 U.S. 135, 137 (1994)) (alteration omitted).  Accordingly, a defendant must be generally aware that the conduct violates the law, but not that it violates a particular law or how it does so.

Recently, a district court in the District of Columbia rejected the very argument raised by Sun.  Relying on the standard articulated in Bryan, the court declined to apply language

in Ratzlaf suggesting that a defendant must be specifically aware of a criminal statute at issue to establish willfulness:

> To be sure, the Court in Ratzlaf suggested that knowledge of a specific tax provision is necessary when the provision itself is fairly abstruse and a reporting omission is not inherently malign.  Not so for FARA.  FARA and similar statutes are 'not just about paperwork; their object is to ensure that no person acts to advance the interests of a foreign government or principal within the United States unless the public has been properly notified of his or her allegiance.

United States v. Michel, No. 19 Cr. 148, 2023 WL 2388501, at *7 n.6 (D.D.C. Mar. 6, 2023) (rejecting argument that defendant must have "had actual knowledge of [FARA] to show willfulness") (internal quotation marks omitted).

Rather than addressing or citing to Michel, Sun relies on language from a series of cases in which the defendants faced charges other than FARA in support of her narrow interpretation of willfulness.  See Rehaif v. United States, 588 U.S. 225 (2019) (possession of firearm and ammunition while being unlawfully in the United States); Liparota v. United States, 471 U.S. 419 (1985) (unlawful acquisition and possession of food stamps); Lambert v. People of the State of Cal., 355 U.S. 225 (1957) (Los Angeles felon registration ordinance); United States v. Pirro, 212 F.3d 86 (2d Cir. 2000) (tax charges); United States v. Berlin, 472 F.2d 1002 (2d Cir. 1973) (false mortgage applications); United States v. Mancuso, 420 F.2d 556 (2d Cir. 1970) (federal narcotics laws).  These cases have no applicability to the question of willfulness under FARA.

Applying the reasoning in Michel, the Court should find that willfulness is properly alleged.  Indeed, Sun repeatedly acted in a manner that reflected knowledge of acting unlawfully, whether it was the false statements in her annual financial disclosures, her violations of NYS conflict-of-interest rules, her false statements to FBI and NYS Office of Inspector General personnel, her failure to disclose economic benefits in her tax filings, and the surreptitious way

20

she and her husband repatriated funds from the PRC to the United States.  Further, after the FBI

warned her about the FARA statute in July 2020, Sun was on further notice of the illegality of her

actions, and she continued to act as an agent of the PRC government and the CCP, including by

continuing to prevent meetings between Taiwanese officials and principals of the NYS Executive

Chamber, (Ind. ¶¶ 23(n)-(q)); providing the PRC Consulate with access to shape Politician-2's

public remarks, (Ind. ¶¶ 30-34); and obtaining a gubernatorial proclamation for PRC Official-1

without authorization, (Ind. ¶¶ 35-38).  (See Def. Br. 29) (conceding that some of the alleged

criminal conduct occurred after the FBI's interview of Sun).[3]

C.    The Indictment Alleges Conduct that Falls Squarely Within FARA's Prohibitions
      and Does Not Raise Constitutional Concerns

Sun argues that "expanding," "stretching," or "broaden[ing]" the FARA statute to

prohibit the conduct alleged in the Indictment "raises grave constitutional questions."  (Def. Br.

30).  Specifically, Sun claims that the Indictment violates the separation of powers and infringes

on protected state activity by regulating relations between states and foreign nations and by

criminalizing "disfavored" (Def. Br. 30) political and policy determinations (disfavored,

apparently, by "[f]ederal prosecutors in Brooklyn") (Def. Br. 2).  As discussed below, these

arguments fail at the threshold: far from a purportedly novel "expansion" of FARA, the conduct

alleged in the Indictment is squarely at the core of the statute's prohibition, and the charges are not

---

[3]        There is no requirement in the FARA statute or elsewhere that the government must
first pursue administrative action against a person before bringing criminal charges under FARA.
(See Def. Br. 28-29) (arguing that DOJ "usually sends a letter" before "refer[ring] the matter to
the FBI" and that Sun continued to serve in NYS government roles "for years following the 2020
interview without the FBI or anyone else questioning whether she had filed a FARA registration").
FARA administrative inquiries are separate from criminal grand jury investigations, which of
course generally operate in secret without the target being questioned about her conduct
prematurely.

premised upon any state conduct or policy.  For essentially the same reasons, Sun's appeal to the rule of lenity is meritless.

    i.    <u>The Indictment Has No Bearing Whatsoever on the Permissibility of State Conduct or Any Political or Policy Decisions</u>

Sun argues, and of course the government does not dispute, that FARA does not regulate the permissible scope of relations between states and foreign governments or criminalize policy determinations by state officials.  (Def. Br. 30-38).  But that has nothing to do with this case.  The Indictment does not charge Sun with advancing improper policies (which is not what FARA prohibits), but with conspiring to act and acting as an unregistered agent of a foreign principal (which <u>is</u> what FARA prohibits).

Sun's constitutional arguments seemingly just posit that the government's theory of criminal culpability—notwithstanding the Indictment's detailed allegations of an agency relationship and willfulness, as discussed at length above—is premised upon value judgments about particular policy decisions.  The defendant's parade of horribles follows naturally from that false assumption: chilled relations between states and foreign nations (Def. Br. 31), the Executive Branch usurping powers granted to Congress (Def. Br. 32), chilled state political and policy discussions (Def. Br. 35), and even the exposure of "countless state officials to harsh criminal penalties" (<u>id.</u>) for merely choosing the wrong side of any international controversy, since any advocacy at all could be construed as actions on behalf of one nation or the other with no restraint on criminal charges other than "federal prosecutors' judgments about which countries are underserving of cooperation or support."  (Def. Br. 36).  All of this, of course, is wholly erroneous.  FARA does not criminalize making the "wrong" policy decisions.  It criminalizes shaping policy secretly at the direction of a foreign government.

Another district court in this circuit recently rejected a similar argument advanced by former U.S. Senator Robert Menendez, who sought dismissal of a FARA-related charge on the basis that it purportedly violated the separation of powers by criminalizing the "day-to-day activities" of ordinary public servants (in his case, legislators) who hear "many foreign 'requests' or 'directions' . . . all the time." United States v. Menendez, 720 F. Supp. 3d 301, 315 (S.D.N.Y. 2024) (addressing charge under 18 U.S.C. § 219).  U.S. District Judge Sidney H. Stein rightly denied that motion, reasoning that by passing the FARA statute, "Congress has empowered the executive and judicial branches to enforce [it]," and that by bringing charges, "DOJ is fulfilling its constitutional responsibilities, not encroaching on Congress's." Id. at 315-16 (internal quotation marks omitted).  To the extent that Sun's argument (or Menendez's) suggests that the conduct of public officials should be beyond the reach of FARA, it must be rejected, because that narrowing of the statute's scope has no basis in the text of the statute itself; and, on the contrary, the statute's "broad scope . . . aligns with [its] purpose, which is to prevent covert influence over U.S. policy by foreign principals, by ensuring that the public is informed of the true source or sponsor behind the information being disseminated for its consideration." Michel, 2024 WL 1603362, at *13 (internal quotation marks omitted).

Moreover, and for similar reasons as argued above that the motion should be denied as premature, Sun's constitutional arguments do not raise any serious challenge to the legal sufficiency of the Indictment itself, which is the only challenge that is procedurally proper on the present motion.  To the extent that Sun's arguments are, in essence, factual arguments—that she in fact always acted in good faith as a public servant and not, as the Indictment properly alleges, as an undisclosed agent of a foreign principal—they are jury arguments, or sufficiency-of-the-

evidence arguments for a Rule 29 motion after the evidence is in.  On a motion to dismiss, however, such arguments necessarily fail.

      ii.    <u>The Rule of Lenity Has No Application Here</u>

Sun also argues that the rule of lenity requires dismissal because she and "legions of state officials had no notice that simply doing their jobs could land them in federal prison." (Def. Br. 38).  The suggestion that Sun was "simply doing [her] job" is, again, a factual argument for the jury.  The Indictment properly alleges—and the government intends to prove at trial—that Sun was not simply doing her job, but rather was acting as an undisclosed agent of a foreign principal.  Here again, as discussed above, Sun discounts the Indictment's detailed factual allegations of an agency relationship and willfulness, posits instead that her conduct (never mind the properly charged factual allegations) can be construed as benign, and thus concludes that "it is at least ambiguous whether FARA covers the conduct alleged here."  (Def. Br. 40).  That argument fails and the rule of lenity has no application.

The rule of lenity is a "tool of last resort," <u>United States v. Tabb</u>, 949 F.3d 81, 89 n.8 (2d Cir. 2020), which "applies only when a criminal statute contains grievous ambiguity or uncertainty, and only if, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended," <u>Ocasio v. United States</u>, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted).  Sun identifies no ambiguity in the statute at all, let alone one so "grievous" that the Court "can make no more than a guess" about the statute's meaning.  Indeed, the statute unambiguously prohibits acting as an undisclosed agent of a foreign principal, which is what the Indictment properly alleges Sun did; and Sun does not appear to argue that there is some specific ambiguity in the statute that will leave the Court guessing about whether the alleged conduct is prohibited.  Rather, Sun appears to argue that she did not do, or did not know

she was doing, what the Indictment alleges.  That, again, is an argument for the jury, and not for a

motion to dismiss the Indictment.  The rule of lenity does not apply.

The one case Sun cites in which a FARA charge was dismissed based on the rule

of lenity is wholly inapposite.  In that case, the defendant was charged under a different provision

of FARA (not charged here) that prohibits making false statements in FARA registrations and

certain other documents.  United States v. Craig, 401 F. Supp. 3d 49, 77 (D.D.C. 2019).  The

district court dismissed the charge on the basis that false statement charges under FARA may only

be brought when a false statement is in an official FARA filing.  Id.  That provision of FARA is

not at issue in this case, nor has Sun identified any analogous statutory ambiguity.

D.    The Indictment Properly Alleges Conspiracy to Violate FARA

Sun argues that the FARA conspiracy count fails to allege a conspiracy because the

Indictment does not sufficiently identify co-conspirators.  (Def. Mot. 41-46).  Of course, the

Indictment clearly does identify co-conspirators, but Sun argues that (1) consular officials and their

staff do not count, because FARA expressly exempts consular officers and other foreign officials

from registration requirements, so they cannot conspire to violate FARA, and (2) the Indictment

lacks sufficient allegations of Sun's knowledge of the other expressly identified co-conspirators'

agency relationships with the PRC.

As a threshold point, Sun identifies no authority for the suggestion that indictments

must identify specific co-conspirators.  The Indictment in this case includes far more than the

typical level of detail, but the vast majority of conspiracy indictments do not identify specific co-

conspirators.  Indeed, identifying particular co-conspirators with a high degree of specificity is not

only unnecessary in a charging instrument, it is sometimes not even necessary (or possible) at trial,

since it is well established that, although at least two co-conspirators must exist to form a

conspiracy, co-conspirators need not even know all of the members of their conspiracy to be united

25

by a common scheme.  See generally, e.g., United States v. Ulbricht, 31 F. Supp. 3d 540, 557-58 (S.D.N.Y. 2014).  Juries routinely infer the existence of unidentified co-conspirators through indirect and circumstantial evidence.  Accordingly, any argument about the purported infirmity of the government's theory of conspiracy membership is an argument about the sufficiency of the evidence, which must come during or after trial.

Additionally, Sun's argument that consular officials cannot conspire to violate FARA is wrong as a matter of law.  That argument conflates the elements of conspiracy liability and the factors that trigger a FARA registration requirement.  That is, just because consular officials are not obligated by FARA to register as foreign agents themselves does not mean that they cannot conspire to have someone else act as a foreign agent without registering.  Indeed, Sun concedes that the law generally allows conspiracy liability for someone who is incapable of committing the substantive offense, (Def. Br. 43), but argues that a special exception applies here because "it is clear from the structure of [the] legislative scheme that the lawmaker must have intended that accomplice liability not extend to certain persons whose conduct might otherwise fall within the general common-law or statutory definition of complicity."  (Id. (quoting United States v. Hoskins, 902 F.3d 69, 78 (2d Cir. 2018))).  That narrow exception to the general rule does not apply here.

The Second Circuit in Hoskins explained that this "affirmative legislative policy" exception applies "when Congress demonstrates an affirmative legislative policy to leave some type of participant in a criminal transaction unpunished."  Id. at 80.  The "classic illustration" of such an affirmative policy "is statutory rape," because "the legislature, in criminalizing the conduct of the adult participant and not that of the juvenile, obviously conceptualized the under-age party as the victim of the crime, and not as a co-participant."  Id. at 78.  Another example discussed in

Hoskins, dramatically different from statutory rape but with similarly clear legislative purpose, is the continuing criminal enterprise statute, which was intended to attach far more severe penalties on a limited class of qualifying drug "kingpins" than imposed by other drug laws on lower-level drug traffickers. Id. at 80 (discussing United States v. Amen, 831 F.2d 373 (2d Cir. 1987)). Because that statutory purpose would be thwarted by attaching liability on lower-level traffickers who conspire with their kingpin bosses but who would otherwise not qualify under the statute, the Second Circuit held that the exception applies and those incapable of committing the substantive offense cannot conspire to commit it either. Hoskins, 902 F.3d at 80.

FARA is not analogous to those statutes. Foreign officials are exempt from registering as agents of foreign principals because their registration would be redundant, not because they are "participants" in criminal transactions whom Congress wished to leave "unpunished." Id. The agency relationship of a consular officer or other foreign official with his or her foreign principal is open and obvious and declared to the United States Department of State. See 22 U.S.C. §§ 613(a), (b), & (c). The harm FARA seeks to address is not officers of foreign governments openly advocating for the interests of their nations, with full transparency to the American people and government—but, rather, their surreptitious use of cutouts to engage in such activities without the American people's or the government's knowledge. Thus, treating consular officers (who are exempt from registering themselves) as capable of conspiring with others (who are not exempt) to violate FARA is fully consistent with the statute's purpose, which, again, "is to prevent covert influence over U.S. policy by foreign principals, by ensuring that the public is informed of the true source or sponsor behind the information being disseminated for its consideration." Michel, 2024 WL 1603362, at *13.

27

For all these reasons, Sun's argument for the dismissal of the FARA conspiracy count is meritless and should be rejected.

III.    Counts Three Through Seven Allege Sufficient Facts to State the Charged Immigration Crimes

The Indictment charges Sun with visa fraud (Count Three) and alien smuggling (Counts Four through Seven) for drafting and providing a fraudulent invitation letter to a delegation from Henan Province, PRC, for the purpose of securing U.S. visas.  Sun argues that the Indictment fails to adequately plead these offenses.  More specifically, Sun asserts (inaccurately) that Count Three fails to include allegations that she "'knowingly' did anything" to commit the fraud or that the letter was materially false (Def. Br. 48); and that Counts Four through Seven, because they are derivative of the same conduct, similarly fail (Def. Br. 51-52).  Sun is wrong, and this argument should be rejected.

As a threshold point, Sun seemingly presumes entitlement to a far greater degree of detail than the law requires in a charging instrument.  As discussed above with respect to the FARA counts, it is well settled that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [she] must defend, and, second, enables [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling, 418 U.S. at 117.  The Indictment clearly does that as to every count—in fact, the Indictment far exceeds this standard with detailed factual allegations—and as such, it satisfies basic pleading requirements.

The charged statute provides that "[a]ny person who . . . encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . . shall be punished," 8 U.S.C. § 1324(a)(1)(A)(iv); and the relevant penalty provision specifies an enhanced penalty that

applies when "the offense was done for the purpose of commercial advantage or private financial gain," 8 U.S.C. § 1324(a)(1)(B)(i). Counts Four through Seven of the Indictment are charged in a paragraph that tracks the language of this statute and includes the approximate time and places of the charged crime:

> In or about and between August 2019 and November 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LINDA SUN, also known as "Wen Sun," "Ling Da Sun," and "Linda Hu," together with others, encouraged and induced the aliens listed below to come to and enter the United States, knowing and in reckless disregard of the fact that such coming to and entry was and would be in violation of law, for the purpose of commercial advantage and private financial gain[.]

(Ind. ¶ 122). This charging language is followed by a table that specifies a separate alien as to each of Counts Four through Seven, identifying each of them in the same as way that they are identified in the far more detailed factual allegations of the speaking portion of the Indictment. Counts Four through Seven thus track the language of the statute and set forth the elements of alleged crime, clearly satisfying pleading requirements. The Court need go no further to reject Sun's argument.

Moreover, even if the Court were to take up Sun's invitation to examine the factual allegations of the Indictment beyond what is appropriate on a motion to dismiss, the argument fails on its own terms because it is premised on a bizarrely cramped reading of the Indictment that feigns confusion about the supposed absence of critical allegations that are not absent at all but are plainly alleged. Specifically, Sun argues that the charges arising from the fraudulent invitation letter are infirm because of a lack of particular allegations about the invitation letter. She says, "[t]he Indictment never alleges who signed the letter, the names of the delegates in the letter, or that it contained any false statements" (Def. Br. 48), and although she acknowledges that it is referred to as "the unauthorized invitation letter," she nevertheless insists that "there are no

allegations regarding any lack of authorization," (<u>id.</u> at 49). She regards it as "a revealing shift to the passive voice" when the Indictment alleges that "the handwritten signature <u>was falsified</u>" (Sun's emphasis) but faults it for "never alleg[ing] who supposedly falsified the signature" or "even reveal[ing] what it means by 'falsified.'" (<u>Id.</u>). Sun muses in a footnote that perhaps by "falsified" the Indictment just means the letter was "not signed by Politican-2 personally," noting that it "would hardly be surprising for the governor of New York to delegate ministerial tasks like signing letters to other staff members." (<u>Id.</u> at 49 n.41). The government respectfully submits that this is not a remotely plausible interpretation of the Indictment.

The relevant portion of the Indictment includes a section header that alleges "SUN Drafts Fraudulent Invitation Letter." (Ind. at 29). It alleges that "SUN facilitated the travel" of a delegation from Henan Province "through [a] fraudulent invitation letter," (<u>id.</u> ¶ 61), which the co-conspirator who is identified as CC-1 requested that Sun provide expressly for the purpose of securing travel visas, (<u>id</u> ¶¶ 62-63). The Indictment alleges that officials in Henan Province changed the date of the visit and the personnel several times (belying the false premise that Politican-2 was the originator of the invitation), which required Sun to generate multiple versions of the letter, one of which she directed CC-1 to pick up at her parents' house. (<u>Id.</u> ¶¶ 65-68). The Indictment alleges that the "unauthorized invitation letter" that Sun provided and that was subsequently submitted as part of multiple visa applications was "written on Politican-1's letterhead but was purportedly signed by Politican-2," although "the handwritten signature was falsified." (<u>Id.</u> ¶ 69). Moreover, the Indictment alleges that "[n]either Politican-1, Politican-2, nor their respective staffs authorized the defendant LINDA SUN to draft or issue an invitation letter in support of the Henan Province delegation's proposed visit to the United States," and "SUN lacked authorization to issue an invitation letter without necessary approvals." (<u>Id.</u>).

30

In sum, the Indictment clearly and plainly alleges that Sun generated a fraudulent invitation letter, without authorization, according to the Henan government's direction and specifications as expressly communicated by CC-1, and expressly for the purpose of use in visa applications. It strains credulity to suggest that these allegations fall short of the pleading standard by failing to "fairly inform[] [Sun] of the charge against which [she] must defend," <u>Hamling</u>, 418 U.S. at 117, because the Indictment uses the passive voice and does not specifically allege that Sun forged Politican-2's signature with her own hand. The fraudulence of the invitation letter, its materiality for visa applications, and Sun's knowledge and direct role in the commission of these offenses are all adequately alleged. Sun's arguments to the contrary should be rejected.

IV.    <u>Count Ten Alleges Sufficient Facts to State the Charged Money Laundering Conspiracy Against Sun</u>

Finally, Sun argues that the Indictment fails to plead sufficient allegations to support the money laundering conspiracy charged in Count Ten because the specific financial transactions and other factual allegations reflective of a money laundering conspiracy are alleged expressly as to her husband but not expressly as to her; because the specified unlawful activity ("SUA") identified in Count Ten, the proceeds of which were the charged object of the money laundering conspiracy, are the offenses charged against her husband (but not her) in Counts Eight and Nine; and because the FARA counts that are charged against her are not identified as an SUA. (Def. Br. 53-56). Sun's argument fails.

First, once again here as with the other counts already discussed, the Indictment "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime," <u>Stavroulakis</u>, 952 F.2d at 693, which "fairly informs [Sun] of the charge against which [she] must defend, and . . . enables [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense," <u>Hamling</u>, 418 U.S. at 117. The charged conspiracy

31

provision of the money laundering statute provides that conspiring to violate a substantive provision of the statute is punishable by the same penalties as prescribed for the substantive violation that is the object of the conspiracy.[4]  18 U.S.C. § 1956(h).  As relevant here, the object of the conspiracy is the violation of 18 U.S.C. § 1956(a)(2)(B)(i), which prescribes punishment for "[w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds . . . to a place in the United States from or through a place outside the United States . . . knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]"  Count Ten of the Indictment tracks this language exactly, and adds two "to wit" clauses to specify both the funds at issue (specifically, "wire transfers," which are discussed with greater specificity in the speaking portion of the indictment, see Ind. ¶¶ 88, 105) and the specifically identified SUA (the crimes charged in Counts Eight and Nine).  (Ind. ¶ 128).  The law requires no more of the charging instrument, and the analysis can end there.

Additionally, Sun's argument elides an important statutory distinction by conflating the "proceeds of some form of unlawful activity" and the proceeds of an SUA, as these terms are separately used in the money laundering statute.  That is, in order to prove a money laundering crime at trial, the government must prove that the money to be laundered was in fact the proceeds of some SUA—from the list of SUAs provided at 18 U.S.C. § 1956(c)(7)—and also that the

---

[4]    Notably, money laundering conspiracies (like Title 22 drug conspiracies but unlike conspiracies under 18 U.S.C. § 371) do not require an overt act.  Whitfield v. United States, 543 U.S. 209, 214 (2005) ("Because the text of § 1956(h) does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction.").

defendant knew the money was the proceeds of "some form of unlawful activity," 18 U.S.C. § 1956(a)(2)(B) (emphasis added), whether or not the defendant knew specifically what form of unlawful activity, or knew that the particular unlawful activity was an SUA.  It is well established that the money laundering statute "reach[es] a person who knows that he is dealing with the proceeds of some crime, even if he does not know precisely which crime." United States v. Maher, 108 F.3d 1513, 1526 (2d Cir. 1997); United States v. Reiss, 186 F.3d 149, 154 (2d Cir. 1999). Thus, if the government proves that the money to be laundered was proceeds of the charged SUA and that Sun knew it was proceeds of something unlawful (whether or not an SUA), the government is not required to prove, let alone allege, that Sun committed the charged SUA or had particularized knowledge of it.  See, e.g., United States v. Robins, 673 F. App'x 13 (2d Cir. 2016) (affirming sufficiency of evidence to convict on money laundering charges an automobile dealer who knowingly sold cars for cash derived from illegal sources without evidence of knowledge of the specific illegal source).  Indeed, the element of knowledge of unlawful source can also be satisfied by a conscious avoidance theory.  See, e.g., United States v. Tillman, 419 F. App'x 110, 112 (2d Cir. 2011) ("This behavior, done without question, at least supports the inference that Tillman consciously avoided learning the nature of the activity in which she was involved while being aware of a high probability that she was participating in an illegal scheme."); United States v. Svoboda, 347 F.3d 471, 480 (2d Cir. 2003); United States v. Finkelstein, 229 F.3d 90, 95 (2d Cir. 2000).

Accordingly, Count Ten is adequately alleged and satisfies basic pleading requirements.  The Court should decline Sun's improper invitation to "look[] beyond the face of the indictment" and draw "inferences as to the proof that would be introduced by the government at trial." Alfonso, 143 F.3d at 776–77.

33

<u>CONCLUSION</u>

For the reasons set forth above, Linda Sun's pretrial motion to dismiss all charges against her should be denied.

Dated: Brooklyn, New York
          December 4, 2024

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

                          By:     /s/ Alexander A. Solomon
                                        Alexander A. Solomon
                                        Robert M. Pollack
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

                                        Scott A. Claffee
                                        Special Assistant U.S. Attorney
                                        U.S. DOJ, National Security Division

34