**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      v.

LINDA SUN and CHRIS HU,

      Defendants.

Case No. S1 24 Cr.346 (BMC)

<u>ORAL ARGUMENT REQUESTED</u>

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRIS HU'S**
<u>**MOTION TO SUPPRESS OR, ALTERNATIVELY, FOR A *FRANKS* HEARING**</u>

BRACEWELL LLP

Seth D. DuCharme
Nicole Boeckmann
Kim Kirschenbaum
31 W. 52nd Street, Suite 1900
New York, NY 10019
(212) 508-6100

*Attorneys for Defendant Chris Hu*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................2

ARGUMENT ...........................................................................................................7

I.    LEGAL FRAMEWORK ..............................................................................7

II.   EVIDENCE SEIZED PURSUANT TO THE LEIVINE WARRANT SHOULD
      BE SUPPRESSED. ......................................................................................9

      A.    The Leivine Affidavit Did Not Establish Probable Cause to Seize
            Evidence from Leivine. ......................................................................9

      B.    The Leivine Warrant Was Overbroad and Substantially Lacked
            Particularity. ....................................................................................12

III.  EVIDENCE SEIZED UNDER THE HOME WARRANT ALSO MUST BE
      SUPPRESSED. ..........................................................................................15

      A.    The Home Warrant Was Overbroad ...................................................15

      B.    The Home Warrant Was Insufficiently Particularized.........................17

CONCLUSION......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coolidge v. New Hampshire*,
   403 U.S. 443 (1971)...................................................................................7

*Franks v. Delaware*,
   438 U.S. 154 (1978)...................................................................2, 8, 9, 10, 12, 18

*Herring v. United States*,
   555 U.S. 135 (2009)...................................................................................9

*Illinois v. Gates*,
   462 U.S. 213 (1983)...................................................................................7

*Riley v. California*,
   573 U.S. 373 (2014)...........................................................................8, 14, 18

*United States v. Abrams*,
   615 F.2d 541 (1st Cir. 1980)..........................................................................14

*United States v. Bertini*,
   No. 23 CR. 61 (PGG), 2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023).......................12, 13, 16

*United States v. Burgos*,
   No. 20 Cr. 182 (VEC), 2021 WL 3788962 (S.D.N.Y. Aug. 25, 2021)..........................10

*United States v. Canfield*,
   212 F.3d 713 (2d Cir. 2000)............................................................................8

*United States v. Castellanos*,
   820 F. Supp. 80 (S.D.N.Y. 1993) (Sotomayor, J.)...................................................8

*United States v. Cioffi*,
   668 F. Supp. 2d 385 (E.D.N.Y. 2009)..........................................................7, 12, 17, 18

*United States v. Drago*,
   No. 18 Cr. 394 (SJF) (AYS), 2019 WL 4675202 (E.D.N.Y. Sept. 10, 2019)..................14

*United States v. Galpin*,
   720 F.3d 436 (2d Cir. 2013).......................................................................8, 14, 18

*United States v. George*,
   975 F.2d 72 (2d Cir. 1992)..........................................................................12, 18

*United States v. Guzman*,
No. 97 Cr. 786 (SAS), 1998 WL 61850 (S.D.N.Y. Feb. 13, 1998) ........................................11

*United States v. Halsey*,
257 F. Supp. 1002 (S.D.N.Y. 1966)....................................................................................8

*United States v. Hernandez*,
2010 WL 26544 (S.D.N.Y. Jan. 6.2010) ............................................................................7

*United States v. Hickey*,
16 F. Supp. 2d 223 (E.D.N.Y. 1998) ..................................................................................17

*United States v. Howard*,
No. 21 Cr. 3006, 2023 WL 2980320 (2d Cir. Apr. 18, 2023) .............................................10

*United States v. Kow*,
58 F.3d 423 (9th Cir. 1995) ......................................................................................14, 17

*United States v. Lauria*,
70 F.4th 106 (2d Cir. 2023) .....................................................................................7, 16

*United States v. Purcell*,
967 F.3d 159 (2d Cir. 2020)..............................................................................................12

*United States v. Raymonda*,
780 F.3d 105 (2d Cir. 2015)..............................................................................................12

*United States v. Rios*,
881 F. Supp. 772 (D. Conn. 1995)....................................................................................10

*United States v. Rosa*,
626 F.3d 56 (2d Cir. 2010)...............................................................................................14

*United States v. Rutherford*,
71 F. Supp. 3d 386 (S.D.N.Y. 2014)..............................................................................7, 11

*United States v. Silva*,
No. 22 Cr 347 (PGG), 2024 WL 3488305 (S.D.N.Y. July 19, 2024).........................15, 16, 17

*United States. v. Smith*,
967 F.3d 198 (2d Cir. 2020)...............................................................................................14

*United States v. Tairod Nathan Webster Pugh*,
No. 15 Cr. 116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ...................................9

*United States v. Voustianiouk*,
685 F.3d 206 (2d Cir. 2012).................................................................................................8

*United States v. Wey*,
　256 F. Supp. 3d 355 (S.D.N.Y. 2017)........................................................................14, 17, 18

*United States v. Zemlyansky*,
　945 F. Supp. 2d 438 (S.D.N.Y. 2013)................................................................7, 12, 13, 14, 17

*Ybarra v. Illinois*,
　444 U.S. 85 (1979)......................................................................................................................9

**Statutes**

8 U.S.C. § 1324 .........................................................................................................................5

18 U.S.C. § 951 .........................................................................................................................5

18 U.S.C. § 1001 .......................................................................................................................5

18 U.S.C. § 1344 .......................................................................................................................5

18 U.S.C. § 1349 .......................................................................................................................5

18 U.S.C. § 1956 .......................................................................................................................5

26 U.S.C. § 7201 .......................................................................................................................5

**Constitution**

Fourth Amendment ........................................................................................... *passim*

## PRELIMINARY STATEMENT

What is most striking about the affidavits the government used to obtain warrants for Mr. Hu's place of business and home is not what the affidavits say—but what they do not.

In seeking a warrant from a United States Magistrate Judge in this district for Mr. Hu's business, the government omitted relevant information that would have undermined its theory of probable cause. Moreover, the affidavit did not identify a single crime, or a relevant timeframe, to properly cabin what turned out to be an indiscriminate search and seizure of devices and records from Mr. Hu's store. The government's affidavit did not explain how the items it sought to seize were used to carry out any criminal activity whatsoever. And, most importantly, it failed to say anything about the slew of records seized by federal agents weeks earlier from Mr. Hu's home, which would have plainly shown that the purportedly mysterious $200,000 deposited into his business account derived from pre-opening day cash sales at the store, *not* from criminal activity. In its attempts to concoct a money laundering narrative centered around Mr. Hu's store the affidavit did not draw any coherent connection between the supposedly suspicious cash previously seized from his and his parent-in-laws' homes and from a safe deposit box—comprising nothing more than modest earnings from his store and from his in-laws' hard-earned life savings—and the cash deposits in his business account. In fact, nearly 40 of the affidavit's 53 paragraphs—short on critical context, while long on speculation based on an FBI agent's unspecified experience—said nothing about Mr. Hu's business at all.

The affidavit in support of the warrant to seize electronic devices from Mr. Hu's home was also pervaded with gaping defects. Not a single one of the affidavit's 152 paragraphs addressed Mr. Hu's use of electronic devices—much less how any one of those devices was used to carry out the alleged crimes. Instead, the affidavit fixated on electronic communications carried out by numerous *other* individuals, none of which involved Mr. Hu. The warrant itself

was also flawed, failing to connect broad categories of items to any crimes, timeframe, or other appropriate parameters.

Put simply, the warrant affidavits, replete with reckless omissions and misrepresentations, resulted in the issuance of multiple fundamentally deficient warrants. The Fourth Amendment demands more, including a rigorous review of a fair and materially complete application by a detached and neutral magistrate judge. While deference is ordinarily afforded to that review, the defects in the affidavits and on the face of the warrants in this case call for a probing examination of the government's warrant applications, as well as of the warrants themselves. To that end, this Court should suppress all evidence derived from the government's unconstitutional searches and seizures and any fruits obtained from them, or in the alternative, order an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

## BACKGROUND

### A.    The Opening of Leivine

In 2022, Mr. Hu opened Leivine Wine & Spirits ("Leivine"), an upscale liquor store in Flushing, New York. The store's grand opening, which took place in November 2022, was preceded by a "soft launch" beginning in around early August 2022. During the soft launch, friends, family, and local residents had the opportunity to purchase a variety of products from the store in advance of its official opening. The soft launch proved to be a success: According to data from Leivine's sales management database at the time, Lightning Online Point of Sale ("Lightning"), Leivine generated approximately $200,000 in cash sales over a three-month period from early August to early November 2022. Following its November 2022 grand opening, the store has averaged total monthly sales of $253,538, with monthly cash sales averaging $69,343.

**B.**    **The Government's Warrant Affidavits in Connection with Mr. Hu's Home and the Leivine Business**

In or around 2020, the government began investigating, *inter alia*, an alleged "pay-to-play" scheme carried out by co-defendant Linda Sun, who is Mr. Hu's wife and a former long-serving public servant in the New York State government.  In connection with that investigation, on July 19, 2024 and on August 8, 2024, FBI Special Agent Devin Perry swore out affidavits in support of warrants to seize vast troves of records and electronic devices from Mr. Hu and Ms. Sun's home (the "Home Affidavit") and from Leivine (the "Leivine Affidavit"), respectively. *See* Ex. A (Home Aff.); Ex. B (Leivine Aff.).[1]

The Home Affidavit baldly posited that "[a] search of the subject residence[][2] . . . w[ould] contain fruits and instrumentalities of violations of the [alleged crimes]," including on electronic devices belonging to Mr. Hu.  *See* Ex. A ¶ 134.  In ostensible support of this claim, the Affidavit invoked the following: Special Agent Perry's "training and experience"; the conclusory allegation that Mr. Hu's email account "contain[ed] evidence of money laundering and bank fraud"; and "numerous WeChat communications between Linda Sun [and her parents] in which they discuss[ed] the pay-to-play scheme and the money laundering scheme."  *See id.* ¶¶ 5, 135, 137 (capitalization omitted).  As to the latter, not a single one of the "numerous" purported WeChat conversations cited in the Affidavit—22 in total, spanning nearly five detailed pages—involved Mr. Hu.  *See id.* ¶ 135.

---

[1] Citations to Ex. __ are to the Exhibits to the Declaration of Seth DuCharme, dated March 4, 2025, and submitted herewith.

[2] In connection with the Home Affidavit, the government sought (and ultimately obtained) authorization to search and seize items from not only Mr. Hu's home, but also from Ms. Sun's parents' home and several safety deposit boxes.  *See* Ex. A.  This motion seeks suppression only of the evidence (and the fruits thereof) seized from Mr. Hu's home.

The Leivine Affidavit, in similarly conclusory fashion, hypothesized that the "fruits of Linda Sun's pay-to-play scheme" were "being laundered through Leivine in the guise of cash deposits from revenue." *See* Ex. B ¶ 34 (capitalization omitted).  In support of this speculative claim, Special Agent Perry again cited his "training and experience," and the fact that "[a]pproximately $200,000 of cash was deposited to accounts held by Leivine before Leivine held its Grand Opening in or around November 5, 2022"; that "approximately $10,000 in cash was found in a safe in the house of Linda Sun and Chris Hu"; and that "hundreds of thousands of dollars of cash of unknown provenance" was found during a previously executed search warrant at the home of Ms. Sun's parents. *Id.* ¶¶ 34, 35, 39 (capitalization omitted).  The Affidavit did not address how any of that money tied into the purported money laundering scheme, much less how Leivine served as the scheme's alleged vehicle.  In actuality, as reflected by business records and other information—information that the government possessed at the time Special Agent Perry swore to the Affidavit, but entirely omitted—that money respectively represented the proceeds from Leivine's soft launch; a modest amount of Mr. Hu's business earnings that he intended to deposit at the bank; and Ms. Sun's parents' savings.[3]

### C.    The Home and Leivine Warrants

In reliance on the Home and Leivine Affidavits and the sworn factual assertions made therein, Magistrate Judges Lois Bloom and Lara K. Eshkenazi respectively signed warrants authorizing a far-reaching search of Mr. Hu's home (the "Home Warrant") and of Leivine (the "Leivine Warrant").  *See* Ex. C (Home Warrant); Ex. D (Leivine Warrant).  Both Warrants amounted to a general warrant, effectively authorizing blanket searches of the respective premises, including "all closed and locked containers found therein," as well as "all electronic

---

[3] Of note, the Superseding Indictment does not contain a forfeiture allegation with respect to the money at Ms. Sun's parents' home, nor has it charged either parent with a crime.

devices and digital media present . . . with the exception of those that can be readily identified as belonging exclusively to persons not involved in the Subject Crimes." *See* Ex. D Attach. A (capitalization omitted); *see also* Ex. C Attach. A (capitalization omitted).

Both Warrants, featuring substantially similar styling, contained two paragraphs respectively authorizing the seizure of two broad categories of items. Paragraph 1 of each Warrant authorized the government to seize various items "that relate[d] to" various purported "Subject Crimes," defined in the Home Warrant as "8 U.S.C. § 1324 (alien smuggling), 18 U.S.C. § 951 (agents of a foreign government), 18 U.S.C. § 1349 (visa fraud), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1956 (money laundering), and 18 U.S.C. § 1001 (false statements), and conspiracies to commit the same"; and in the Leivine Warrant as "18 U.S.C. §§ 1956 (money laundering) and 1001 (false statements), and 26 U.S.C. § 7201 (attempt to evade or defeat tax) and conspiracies to commit the same." *See* Ex. C Attach. B ¶ 1 (capitalization omitted); *see also* Ex. D Attach. B ¶ 1 (capitalization omitted). In regard to these alleged "Subject Crimes," both Warrants authorized the seizure of "[d]ocuments and records related to the Subject Crimes," "[a]ll communications with any coconspirators regarding the Subject Crimes," "[l]uxury goods" (in the case of the Home Warrant), and the "[s]torage of bulk cash" and "[s]urveillance video showing areas where cash may have been received, packaged, or stored" (in the case of the Leivine Warrant). *See* Ex. C Attach. B ¶ 1 (capitalization omitted); *see also* Ex. D Attach. B ¶ 1 (capitalization omitted).

Paragraph 2 of both Warrants, unlike Paragraph 1, was *not restricted* to items "that relate[d] to . . . the Subject Crimes," nor was it limited to any specified individuals, nor to any specified timeframe. Rather, it authorized the wholesale seizure of any "[r]ecords on the

Devices," including, *inter alia*, "[r]ecords of Internet Protocol addresses used," "[l]ocation information," and "[r]ecords of Internet activity."  *See* Ex. C Attach. B ¶ 2; Ex. D Attach. B ¶ 2.

The Home Warrant was executed on July 22, 2024.  The government seized, among other things, a slew of electronic devices, including multiple computers, cell phones, a tablet, and numerous memory and storage devices.  *See* Ex. E (Gov't Evidence Log of Home Search).  In addition, for all of the records and devices that federal agents seized, they declined to collect invoices, receipts, and other financial documents—documents that Mr. Hu offered the agents of his own accord, and which established the legitimacy of the purportedly mysterious funds that they subsequently used in part to obtain additional warrants, including the Levine Warrant.

The Leivine Warrant was executed on August 9, 2024.  The government likewise seized records and electronic devices from the store, including a computer tower and associated accessories, a laptop, a security camera's hard drive, and a USB Drive.  *See* Ex. F (Gov't Evidence Log of Leivine Search).  On the basis of the Home and Leivine Warrants, the government subsequently applied for and obtained warrants to search, among other things, Mr. Hu's cellphone, *see* Ex. G (Cellphone Search Warrant); Mr. Hu's laptop, *see* Ex. H (Laptop Search Warrant); and Leivine's sales records logged on Shopify, the retail management system which Leivine transitioned to from Lightning in January 2023, *see* Ex. I (Shopify Search Warrant).

While much if not all of these materials are of dubious relevance to the government's apparent theory of its case, absent a representation to the contrary, the defense must anticipate that the government plans to introduce at least some of this evidence at trial.

## ARGUMENT

### I.    LEGAL FRAMEWORK

The Fourth Amendment mandates that a warrant issue only "upon probable cause, supported by Oath."  U.S. Const. amend. IV.  To determine whether probable cause exists, the magistrate judge must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The probable cause requirement "was intended as a bulwark against 'the "general warrant" abhorred by the colonists' and protects against 'a general, exploratory rummaging in a person's belongings.'"  *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).  "Its overarching purpose is to ensure that 'those searches deemed necessary should be as limited as possible.'"  *Id.* (quoting *Coolidge*, 403 U.S. at 467).  While a flexible standard, probable cause must be grounded in "sufficient facts," not "hunch[es]."  *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023).  Nor may it be couched in "conclusory legal allegation[s]."  *United States v. Rutherford*, 71 F. Supp. 3d 386, 392 (S.D.N.Y. 2014).

The Fourth Amendment also "requires particularity and forbids overbreadth."  *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 450 (S.D.N.Y. 2013) (citation omitted).  That is to say, in evaluating an application for a warrant, the court must consider "(1) whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers.'"  *Id.* (quoting *United States v. Hernandez*, 09 Cr. 625 (HB), 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010)).

These requirements are not mere "formalities." *United States v. Voustianiouk*, 685 F.3d 206, 210 (2d Cir. 2012). And they "assume[] even greater importance" in the context of electronic devices, *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013), which "not only contain[] in digital form many sensitive records previously found in the home" but a "broad array of private information never found in a home in any form," *Riley v. California*, 573 U.S. 373, 396–97 (2014).

In addition to these requirements, it is paramount that the information in a warrant affidavit be rigorously accurate in the first instance. *See Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) ("When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." (emphasis in original) (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966))). Indeed, "[b]ecause it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Id.* at 164–65 ("The bulwark of Fourth Amendment protection, of course, is the Warrant Clause . . . which surely takes the affiant's good faith as its premise"). The Fourth Amendment protection would be "reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." *United States v. Castellanos*, 820 F. Supp. 80, 84 (S.D.N.Y. 1993) (Sotomayor, J.) (quoting *Franks*, 438 U.S. at 168). Accordingly, "[a] defendant is permitted to challenge the veracity of a search warrant . . . where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information." *United States v. Canfield*, 212 F.3d 713, 717 (2d

Cir. 2000).  Under those circumstances, a defendant is entitled to an evidentiary hearing pursuant

to *Franks v. Delaware*, 438 U.S. at 154.

When a search or seizure violates the Fourth Amendment, the proper remedy is to

exclude the evidence and its fruits to deter police misconduct.  *See Herring v. United States*, 555

U.S. 135, 143 (2009); *United States v. Tairod Nathan Webster Pugh*, No. 15 Cr. 116 (NGG),

2015 WL 9450598, at *20 (E.D.N.Y. Dec. 21, 2015) ("[s]uppression is the appropriate remedy

for the fruits of a warrant" in violation of the Fourth Amendment).

## II.    EVIDENCE SEIZED PURSUANT TO THE LEIVINE WARRANT SHOULD BE SUPPRESSED.

### A.    The Leivine Affidavit Did Not Establish Probable Cause to Seize Evidence from Leivine.

The Leivine Affidavit failed to establish probable cause to search Leivine and seize

any—much less all—of the items enumerated in the Leivine Warrant.[4]  At bottom, in its efforts

to trump up a theory that Leivine was the vehicle through which Mr. Hu and Ms. Sun perpetrated

a money laundering scheme—a theory which the government seems to have abandoned in its

Superseding Indictment—the Affidavit sought to cast suspicion on several discrete sources of

cash belonging to Mr. Hu and others, despite the fact that the government possessed information

that flatly undercut a theory tying those monies together, much less to Leivine.

To begin, the Affidavit relied upon the assertion that "[a]pproximately $200,000 of cash

[that] was deposited to accounts held by Leivine before Leivine held its Grand Opening in or

around November 5, 2022," *see* Ex. B ¶ 39, without so much as a passing explanation of where

---

[4] Notably, the vast majority of information offered in the Affidavit involved actors other than Mr. Hu.  Even assuming that the Affidavit established probable cause that those other actors had engaged in criminal conduct—which it does not—this still would be insufficient to establish probable cause as to Mr. Hu's business.  *Cf. Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

that figure came from. From there, the Affidavit made the inferential leap that "cash deposits into accounts held by Leivine may constitute an attempt to launder the proceeds of Linda Sun's pay-to-play scheme, which proceeds likely include the cash found during the execution of the search warrants." *Id.* (capitalization omitted).

In making this misleading claim, the Affidavit elided numerous Lightning sales records, Bank of America deposits, and other documentation which all pointed toward one irrefutable fact: The approximately $200,000 in cash constituted the sales of Leivine's soft launch prior to the grand opening of the store. Significantly, the government had obtained *all* of those sales records, through previously executed warrants and a host of subpoenas, well in advance of submitting the Leivine Affidavit. That is to say, in applying for the Leivine Warrant, the government knew—or should have known—that one of the key pillars of its theory had zero basis in fact.[5] *Cf. United States v. Rios*, 881 F. Supp. 772, 775 (D. Conn. 1995) ("[I]t is instructive to consider what [the] affidavit might have but did not include to establish a nexus.").

Other than the purportedly mysterious $200,000 the government used to support its dubious money laundering claim, the government's theory of probable cause rested on three other "unknown" sources of cash: $10,000 located in Mr. Hu's home; $265,000 located in his in-laws' home; and $130,000 located in a safe deposit box in Ms. Sun's and her mother's names. The Affidavit is completely silent on the connection between those monies and any purported

---

[5] For the reasons noted above and elsewhere herein, the Court should alternatively hold a *Franks* hearing on Special Agent Perry's materially misleading Affidavit. *See supra* at 8–9; *see, e.g.*, *United States v. Burgos*, No. 20 Cr. 182 (VEC), 2021 WL 3788962, at *5 (S.D.N.Y. Aug. 25, 2021) (granting *Franks* hearing because "warrant application contained a false statement and the false statement was material to a finding of probable cause"), *aff'd sub nom. United States v. Howard*, No. 21 Cr. 3006, 2023 WL 2980320 (2d Cir. Apr. 18, 2023). Indeed, in light of the government's possession of undisclosed material, at minimum, a *Franks* hearing is necessary to understand what steps, if any, the government took to review seized information or to decide whether to include it—inquiries that go directly to the (factual) determination of recklessness.

money laundering scheme, much less one involving Leivine—and that is because there is none. What the government's theory boiled down to was an ipse dixit argument that because it had uncovered money belonging to Mr. Hu and his family, that money must have been the fruits of money laundering. Such a "conclusory legal allegation is insufficient to establish the existence of probable cause sufficient to support the issuance of a search warrant." *Rutherford*, 71 F. Supp. 3d at 392.

With the misleading and unsupported statements stripped away, and especially with the relevant context included and considered, there simply was nothing in the Affidavit that established a factual basis for probable cause. Likely recognizing this deficiency, the Affidavit resorted to the bare assertion that probable cause existed because of Special Agent Perry's unspecified "training and experience" in investigating other matters. *See, e.g.*, Ex. B ¶ 39 (positing that the $200,000 was likely the fruits of a money-laundering scheme "[b]ased on [his] training and experience"). That paper-thin claim comes nowhere close to sustaining the government's burden to establish probable cause to search Mr. Hu's business and seize the records and electronic devices therein.

The law is well-settled that opaque references to a law enforcement officer's training and experience cannot establish probable cause. "Permitting 'a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.'" *United States v. Guzman*, No. 97 Cr. 786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) (citation omitted). "What is missing here is some case-specific evidence that nudges [Special Agent Perry's] training and experience across the line from sheer speculation to probable cause." *United States v. Bertini*, No. 23 CR. 61

(PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023) (cleaned up).  "Because [Special Agent Perry's] [A]ffidavit present[ed] no such facts, the Magistrate lacked a 'substantial basis' for concluding that the Affidavit established probable cause for the search of [Leivine]." *Guzman*, 1998 WL 61850, at *4.  Under these circumstances, "the search warrant must be voided and the fruits of the search excluded." *Franks*, 438 U.S. at 156; *see United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (a warrant should be invalidated where a magistrate judge's "probable-cause determination reflect[s] an improper analysis of the totality of circumstances," even under a deferential "substantial basis" standard of review).

### B. The Leivine Warrant Was Overbroad and Substantially Lacked Particularity.

Under the circumstances presented here, evidence seized pursuant to the Leivine Warrant should be suppressed for the additional reason that the Warrant was overbroad and insufficiently particularized.  "Although somewhat similar in focus," particularity and overbreadth "are two distinct legal issues." *Zemlyansky*, 945 F. Supp. 2d at 450.  "In determining whether a warrant is overbroad, courts must focus on 'whether there exists probable cause to support the breadth of the search that was authorized.'" *Id.* at 464 (citation omitted).  Conversely, "[p]articularity is the requirement that the warrant must clearly state what is sought" and is satisfied when it "enables the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *Cioffi*, 668 F. Supp. 2d at 390.  "The manifest purpose" of these dual concepts is "to prevent general searches." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020); *accord United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (noting that the concerns surrounding overbreadth and particularity are aimed at "curtailing the officers' discretion when executing [a] warrant").

While a defendant need not demonstrate both overbreadth and an absence of particularity for relief, *Zemlyansky*, 945 F. Supp. 2d at 453 (noting that "one or the other will typically render a warrant unconstitutional"), the Leivine Warrant was fatally defective on both fronts.

With respect to overbreadth, the Warrant was defective for effectively allowing the government to indiscriminately seize and search any and all records and devices in Leivine, without establishing probable cause to believe the seized materials would contain evidence of the offenses alleged in the Affidavit. As previously discussed, the Affidavit fell well short of establishing that Leivine had any role in—much less was the primary vehicle of—a money laundering scheme, or any other crime for that matter. *See* Section II *supra*. That is to say, "[t]he required nexus between the material to be searched—[the devices and records located in Leivine]—and the [alleged crimes] is not factually supported in [Special Agent Perry's] affidavit." *Bertini*, 2023 WL 8258334, at *10. "Accordingly, there was not probable cause to believe that a search of [Leivine] would yield evidence of" money laundering or other alleged offenses. *Id.*

Likewise, with respect to particularity, an entire category of items identified in the Leivine Warrant contained no reference to any crimes or timeframe at all. Specifically, under the list of "Seized Items" enumerated in Attachment B to the Warrant, Paragraph 2 authorized the seizure of any and all "[r]ecords on the Devices," defined as "all electronic devices and digital media present at [Leivine]." *See* Ex. B Attach. A; *id*. Attach. B ¶ 2. This rendered the Warrant fundamentally infirm. Consistent with this Circuit's holdings, "the Fourth Amendment was violated by the Warrant's failure to connect the broad list of the items to be seized with any crime at all." *United States v. Drago*, No. 18 Cr. 394 (SJF) (AYS), 2019 WL 4675202, at *2 (E.D.N.Y. Sept. 10, 2019); *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (warrant

invalidated for "failing to link the items to be searched and seized to the suspected criminal activity . . . and thereby lacked meaningful parameters on an otherwise limitless search").

Compounding these defects in Paragraph 2 of the Warrant was its failure to "limit the scope of the seizure to a time frame within which the suspected criminal activity took place." *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (courts "have criticized repeatedly the failure to describe in a warrant the specific criminal activity suspected"); *accord United States v. Wey*, 256 F. Supp. 3d 355, 388 (S.D.N.Y. 2017) ("'absence of [a time] limit reinforces the Court's conclusion' that the Warrants are insufficiently particularized"); *Zemlyansky*, 945 F. Supp. 2d at 459 ("[a] warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular"); *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980) (holding that "[t]he warrant at issue fail[ed] to meet the requirement of particularity" where "there [wa]s no limitation as to time," in violation of the Fourth Amendment).

The foregoing defects are all the more acute here, where the Leivine Warrant categorically authorized the search and seizure of any and all *electronic* devices.  As courts have repeatedly stated, there is a "heightened sensitivity" to the concerns surrounding overbreadth and particularity in the context of electronic devices, given the "serious risk" that a "warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant."  *Galpin*, 720 F.3d at 447; *see also Riley*, 573 U.S. at 393 (privacy concerns extend "far beyond those implicated by" other categories of personal property); *United States. v. Smith*, 967 F.3d 198, 207 (2d Cir. 2020) ("[S]pecial concerns [ ] apply when law enforcement seize and search people's personal electronic data and communication devices.").

-14-

### III.    EVIDENCE SEIZED UNDER THE HOME WARRANT ALSO MUST BE SUPPRESSED.

The Home Warrant likewise violated the Fourth Amendment, compelling suppression of

the evidence and all resulting evidentiary fruits for two independent reasons set forth below.

### A.    The Home Warrant Was Overbroad

*First*, suppression is warranted in light of the Home Warrant's overbreadth.  The Warrant

authorized the government to seize "[a]ll electronic devices and digital media" belonging to Mr.

Hu, including cellphones, computers, a tablet, and storage and memory devices.  Ex. C Attach.

A.  For this expansive list to pass constitutional muster, the government was required to set forth

"allegations demonstrating that [Mr. Hu] used the seized cellphone[s] [and other electronic

devices] in connection with his criminal activities."  *United States v. Silva*, No. 22 Cr. 347

(PGG), 2024 WL 3488305, at *6 (S.D.N.Y. July 19, 2024).  The Warrant came nowhere close to

doing so.

As an initial matter, the government failed to so much as specify a single device used by

Mr. Hu used to carry out any criminal activity.  And even setting that deficiency aside, there is

—under the most charitable reading of the Affidavit—but one allegation that could even be

remotely construed as intimating that Mr. Hu had used *an* electronic device in some capacity:

"As part of the investigation, the government has obtained judicial authorization to search Hu's

email account[, which] . . . contain evidence of money laundering and bank fraud, including

records pertaining to [a] Financial Institution[] account [] and a ledger in which Hu tracks cash

deposits into his family and his businesses' accounts."  *See* Ex. A ¶ 137 (capitalization omitted).

This "one conclusory sentence . . . does not provide a basis for this Court to make a probable

cause finding that . . . [Mr. Hu] used his [electronic devices] to engage in" the alleged crimes.

*Silva*, 2024 WL 3488305, at *7.  Indeed, the fact that the government, despite having had access

-15-

to the entirety of Mr. Hu's email account, could not muster more than a single conclusory allegation—much less adduce even a single concrete example from his emails to establish probable cause—underscores the tenuousness of its case.

The Affidavit's only other allegations pertaining to electronic devices had nothing to do with Mr. Hu at all.  Over the span of five pages, the government recounted twenty-two separate instances in which several individuals purportedly used a cell phone app to "discuss the pay-to-play scheme and the money laundering scheme"—with not a single one of those conversations involving Mr. Hu.  *See, e.g.*, Ex. A ¶ 135 (referring to a January 12, 2015 WeChat message from Ms. Sun to her parents); *id.* (referring to a March 8, 2017 WeChat message from Ms. Sun's father to Ms. Sun and her mother); *id.* (referring to a June 1, 2017 message from Ms. Sun's mother to Ms. Sun and her father).

At bottom, the facts in the Home Warrant "[we]re insufficient to demonstrate a 'reasonable probability' that . . . [Mr. Hu's] cell phone [or other electronic devices] would contain evidence pertaining to the" alleged money laundering or other criminal activity.  *Lauria*, 70 F.4th at 129.  "There w[e]re, for example, no factual allegations showing that [Mr. Hu] [] used his phone to transmit calls or text messages to" the other individuals referenced in the Affidavit.  *Silva*, 2024 WL 3488305, at *6.  "There [we]re no factual allegations that [Mr. Hu] [] used his phone to post [relevant content] on social media."  *Id.*  "There [we]re no witness accounts demonstrating that [Mr. Hu] used his phone in connection with his criminal activities."  *Id.*  "There [wa]s no reference to surveillance camera footage showing [Mr. Hu] using his cellphone [to carry out the alleged] criminal activity."  *Id.*; *see, e.g.*, *Bertini*, 2023 WL 8258334, at *8 (warrant invalid where "there [wa]s no suggestion in [the] Agent[s'] affidavit that [defendant] was communicating with anyone about committing the [alleged crimes]").

In sum, the Home Warrant flouted "the requirement that a search warrant must aver some fact that connects the . . . material to be searched to a suspect's alleged participation in criminal activity." *Silva*, 2024 WL 3488305, at *6 (cleaned up). It was patently overbroad, and on this basis alone, the seizure of "[a]ll" of Mr. Hu's electronic devices from his home cannot stand. *See Cioffi*, 668 F. Supp. 2d at 396 ("The remedy for an overbroad search and seizure is suppression of the resulting evidence.").

### B.        The Home Warrant Was Insufficiently Particularized

*Second*, the Home Warrant lacked particularity. As with the corresponding paragraph in Paragraph 2 of the Leivine Warrant, *see supra* at 13–14, Paragraph 2 of the Home Warrant contained no reference to any crimes, timeframe, or other information to appropriately limit the scope of the proposed seizure and search, *see* Ex. C Attach. B. Instead, the Home Warrant sought blanket authorization to seize "all records on the Devices" belonging to Mr. Hu. *See id.* In view of the Warrant's "failure to describe . . . the specific criminal activity suspected," *Kow*, 58 F.3d at 427, and its "failure to include a time limitation," *Zemlyansky*, 945 F. Supp. 2d at 459, it did "not appropriately specify the documents [or devices] to be seized," *United States v. Hickey*, 16 F. Supp. 2d 223, 239 (E.D.N.Y. 1998). The upshot is that the Warrant contained "so vague a description of the material to be sought as to impose no meaningful boundaries," and did not "enable[] the executing officer to ascertain and identify with reasonable certainty those items the magistrate has authorized him to seize." *Cioffi*, 668 F. Supp. 2d at 390.

"This deficiency, while concerning under any circumstances, is only exacerbated by the fact that the Warrants target, in significant measure, the contents of electronic devices, such as computers, internal and external hard drives, and smartphones." *Wey*, 256 F. Supp. 3d at 386; *see Galpin,* 720 F.3d at 446 ("[w]here . . . the property to be searched is a computer hard drive, the particularity requirement assumes even greater importance"); *Cioffi*, 668 F. Supp. 2d at 391

-17-

("The dawn of the Information Age has only heightened . . . [privacy] concerns.  The risk of exposing intimate (and innocent) correspondence to prying eyes is magnified because [c]omputers . . . often contain significant intermingling of relevant documents with documents the government has no probable cause to seize."); *see Riley*, 573 U.S. at 402 (finding seizure and search of a person's cell phone equivalent to "ransacking his house for everything which may incriminate him").

In sum, the Home Warrant "authorize[d] the seizure of sweeping categories of materials, regardless of their potential connection (or lack thereof) to any suspected criminal activities and limited only by the requirement that they relate in some generalized way to the owner/occupant of the very premises subject to search." *Wey*, 256 F. Supp. 3d at 387.  "The conferral of such unfettered discretion on the executing officers, particularly in light of the Warrants' independent failure to identify any crime under investigation, is inconsistent with the Fourth Amendment's particularity requirement." *Id.*

\* \* \*

Allowing such expansive warrants as the Warrants here would amount to authorizing the sort of "general warrants" prohibited by the Fourth Amendment, *see Galpin*, 720 F.3d at 445, in effect conferring on "executing officers[] 'virtually unfettered discretion to seize anything they see,'" *George*, 975 F.2d at 75.  The Home and Leivine Warrants are thus invalid, and any evidence seized pursuant to them, as well as any resulting evidentiary fruits, should be suppressed.

## CONCLUSION

For the foregoing reasons, Defendant Chris Hu respectfully requests that the Court enter an Order suppressing all evidence seized pursuant to the Home and Leivine Warrants and any fruits

-18-

obtained from them, or alternatively, order that a *Franks* hearing be held, on a date to be set by the

Court.

Dated: March 4, 2025                              Respectfully submitted,

Seth D. DuCharme
Nicole Boeckmann
Kim Kirschenbaum
BRACEWELL LLP
31 W. 52nd Street, Suite 1900
New York, NY 10019
Telephone: (212) 508-6100
Facsimile: (800) 404-3970
seth.ducharme@bracewell.com
nicole.boeckmann@bracewell.com
kim.kirschenbaum@bracewell.com

*Attorneys for Defendant Chris Hu*