UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
UNITED STATES OF AMERICA,      :
      :
      Plaintiff,      :    **MEMORANDUM DECISION AND**
      :    **ORDER**
      - against -      :
      :    24-cr-346 (BMC)
LINDA SUN,      :
    also known as "Wen Sun," "Ling Da      :
    Sun," and "Linda Hu," and      :
CHRIS HU,      :
      :
      Defendants.      :
------------------------------------------------------------ X

**COGAN**, District Judge.

In August 2024, a grand jury returned a ten-count indictment against Linda Sun and her husband, Chris Hu.  Sun was charged with acting as an agent of a foreign government without registering with the Attorney General in violation of the Foreign Agents Registration Act ("FARA"), 22 U.S.C. §§ 612(a) and 618(a)(1) and conspiracy to commit the same in violation of 18 U.S.C. § 371; visa fraud in violation of 18 U.S.C. §§ 1546(a); and four counts of illegally bringing aliens into the United States for commercial gain or advantage, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i).  Hu was charged with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and misuse of means of identification in violation of 18 U.S.C. § 1956(h).  Both Sun and Hu were charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  A grand jury then returned a first superseding indictment on February 4, 2025, charging Hu with three counts of money laundering under in violation of 18 U.S.C. § 1957.

This decision addresses defendants' motion challenging the Government's use of the grand jury.

**BACKGROUND**

Defendants filed a letter requesting a premotion conference on defendants' anticipated motion challenging the Government's use of the grand jury.  At the April 23, 2025 status conference, the parties agreed that defendants' letter, the Government's response, and defendants' reply in support of its letter would constitute the full briefing of this matter. Additionally, the Government has produced the grand jury minutes relevant to defendants' allegations for this Court's *in camera* review.

Defendants argue that the Government has misused the grand jury process by, first, using it to "lock in" testimony of potential witnesses, instead of to investigate new crimes.  They point to the Government's conduct with respect to Sun's mother, Mei Ping Sun: the Government issued a subpoena to compel her testimony before a grand jury returned the first indictment.  But then, "months after the indictment was unsealed, the government continued to demand compliance with that subpoena – even going so far as to immunize Ms. Sun's mother to compel her testimony."  Defendants assert that when the Government finally questioned Mei Ping Sun before the grand jury, it did so about charges that had already been included in the indictment, and the "modifications in the superseding indictment had nothing to do with the grand jury testimony it compelled from Ms. Sun's mother."

Next, defendants allege that there has been a "flurry of recently issued subpoenas by the government – including almost immediately after the superseding indictment was filed."  This includes the Government's service of a subpoena on an individual with a financial relationship with Hu, requesting records that "plainly pertain to the existing charges and forfeiture allegations."  Defendants assert the Government "has repeated that process a dozen times for other entities and individuals."

Furthermore, defendants point to at least one recent grand jury subpoena they say was served to prepare for a potential Monsanto hearing before this Court. See United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991) (criminal defendants seeking to use restrained funds to hire counsel of choice are entitled to a hearing on whether there is probable cause that the defendant committed the crimes providing for forfeiture and whether the contested funds are properly forfeitable). Before the Government would negotiate with defendants to reach a resolution that would permit defendants to pay their legal fees (in hopes of avoiding a Monsanto hearing), the Government insisted that defendants provide detailed financial disclosures, which defendants did. Six days after defendants provided these disclosures, the Government served a witness with a grand jury subpoena accompanied by an undated rider, which "conspicuously tracked the individuals and entities set forth in the financial disclosures provided by Defendants just days before the subpoena was served." Thus, defendants observe, "the government's issuance of the subpoena appears to be an attempt to gather potential evidence in advance of any Monsanto hearing, which is also a prohibited use of the grand jury."

Finally, defendants allege that the Government has been using the service of grand jury subpoenas on witnesses to impermissibly discourage them from speaking to defense counsel. The Government served at least one grand jury subpoena with a cover letter which included language that, according to defendants, "effectively prohibited the recipient from revealing anything regarding the subpoena."

## LEGAL STANDARD

"As a general rule, the grand jury process is afforded a 'presumption of regularity.' . . . And a grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." United States v. Calk, 87 F.4th 164, 186 (2d Cir. 2023) (internal quotation marks and quotations

3

omitted).  Accordingly, "post-indictment action is permitted to prepare superseding indictments against persons already charged."  Id. (quoting United States v. Jones, 129 F.3d 718, 723 (2d Cir. 1997)) (cleaned up).

Despite this presumption of regularity, "the grand jury is not meant to be the private tool of a prosecutor," and "courts may not ignore possible abuse of the grand jury process."  Id. (quoting United States v. Fisher, 455 F.2d 1101, 1105 (2d Cir. 1972)).  One such abuse of the grand jury process is using it "for the sole or dominant purpose of preparing for trial under a pending indictment."  United States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994) (citations omitted).  "But where the grand jury investigation is not *primarily* motivated by this improper purpose, evidence obtained pursuant to the investigation may be offered at the trial on the initial charges."  Id. (citation omitted) (emphasis added).

One form of trial preparation is "freez[ing] witness testimony for use at trial."  Ben Zvi v. United States, No. 93-cr-908, 2005 WL 8170038, at *2 (E.D.N.Y. Sept. 21, 2005).  The Government thus may not use the grand jury to "lock in" witnesses' testimony for trial, if that is its sole reason for issuing a grand jury subpoena.  United States v. Brito, 907 F.2d 392, 396 (2d Cir. 1990).  But, again, if the Government obtains information through the grand jury for both a proper purpose and an improper purpose, courts will not deem the Government's actions inappropriate.  Id. ("grand jury proceeding into related charges does not constitute improper use of grand jury, even if it also 'locks in' testimony" (citing United States v. Dardi, 330 F.2d 316, 336 (2d Cir. 1964)).

Grand jury witnesses are not sworn to secrecy.  See Fed. R. Crim. P. 6(e)(2).  Therefore, the Government may not command a grand jury witness to keep secret his receipt of a grand jury

4

subpoena or his testimony, from defense counsel or otherwise.  United States v. Gigliotti, No. 15-cr-204, 2015 WL 13691780 (E.D.N.Y. Dec. 23, 2015).

## DISCUSSION

### I.     Use of Grand Jury to "Lock In" Testimony

Having reviewed the grand jury minutes *in camera*, I conclude that the Government compelled testimony from Mei Ping Sun that related directly to crimes it had not yet charged, namely, the three money laundering charges against Hu the Government added in the superseding indictment two weeks after obtaining Mei Ping Sun's testimony.  "[T]he issuance of a superseding indictment charging [Hu] with [three counts of money laundering] at the conclusion of the grand jury proceedings . . . lends further plausibility to the Government's claim that the grand jury proceedings and the [Mei Ping Sun] subpoena were part of a proper ongoing investigation."  Calk, 87 F.4th at 188.  Because the Government questioned Mei Ping Sun about crimes it had not yet charged, and subsequently added charges based on Mei Ping Sun's testimony in the superseding indictment which the grand jury returned two weeks later, it cannot be said that the Government's use of the grand jury was "for the sole or dominant purpose of preparing for trial under a pending indictment."  Leung, 40 F.3d at 581 (citations omitted).

### II.     Use of Grand Jury to Scrounge Up Trial Evidence, Prepare for Hearing

Moreover, the grand jury minutes do not reveal other instances of the Government using the grand jury to scrounge up trial evidence or prepare for a Monsanto hearing.  All of the testimony adduced and evidence presented between the indictment and the superseding indictment that this Court reviewed related to ongoing investigation into charges not included in the indictment.

Nor are the recently issued subpoenas that defendants cite as evidence of the Government's improper use of the grand jury enough to overcome "the presumption of regularity

5

that attaches to the grand jury proceedings." Leung, 40 F.3d at 581.  Although "the timing of the subpoena casts significant light on its purposes," Calk, 87 F.4th at 186 (quoting In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels), 767 F.2d 26, 29 (2d Cir. 1985)) (cleaned up), the subpoenas defendants challenge were issued before a date for trial (or a Monsanto hearing) had been set.  See Leung, 40 F.3d at 581 (grand jury subpoenas issued five weeks post-indictment, before a trial date had been set, did "not undermine the presumption that the grand jury was in fact investigating possible money laundering charges that were not included in the original indictment").  The subpoenas were also issued while the Government continues to investigate additional charges, and they appear to be related to the Government's ongoing investigation.  The Court reaches this conclusion based on its *in camera* review of the grand jury minutes.

Considering the subpoenas' timing, the lack of impropriety in the grand jury minutes reviewed by this Court, and the Government's representation (as supported by the grand jury minutes) that it is continuing to investigate, the Court finds no evidence of improper use of the grand jury.

### III.    Use of Grand Jury Subpoena to Silence Potential Witnesses

The parties do not dispute that it is improper for the Government to order or direct grand jury subpoena recipients not to disclose the existence or contents of a grand jury subpoena.  See Gigliotti, 2015 WL 13691780, at *2.  However, defendants have not demonstrated that the Government took such improper action here.  The challenged cover letter to the grand jury subpoena reads as follows:

> Please find attached a grand jury subpoena for certain records related to certain individuals or entities.  As this subpoena relates to an ongoing federal investigation, *we ask* that you refrain from disclosing the existence or contents of this subpoena as such disclosure may impede the ongoing investigation.

> In view of the continuing nature of this investigation, *you are requested* not to disclose the existence of this letter or the accompanying subpoena, other than as necessary to comply with this letter or the subpoena. In order to avoid inadvertent disclosure, *please notify me* before sending out any disclosure notice so that I may renew the request for nondisclosure before such notice is sent, if necessary. Thank you for your cooperation.

(Italics added, underlining in the original.) This language is not sufficiently similar to the language used in Gigliotti ("YOU ARE HEREBY DIRECTED NOT TO DISCLOSE THE EXISTENCE OF THIS SUBPOENA, AS IT MAY IMPEDE AN ONGOING INVESTIGATION," id. at *1), to constitute the imposition of an improper obligation of secrecy. Instead, the language used here *requests* that the subpoena recipient not disclose the subpoena and that the recipient notify the Government before sending out any disclosure notice.

A case that defendants rely on confirms that the Government may request nondisclosure, as long as it does not impose an obligation of secrecy: "The government is free to express its beliefs about the impact of any disclosure, provided it makes clear that the law does not require nondisclosure." In re Grand Jury Proc. (Diamante), 814 F.2d 61, 70 (1st Cir. 1987). The Third Circuit has held that similar language to the language used here constitutes a request, not a requirement, that witnesses not disclose a subpoena. See United States v. Bryant, 655 F.3d 232, 237-38 (3d Cir. 2011) ("Disclosure of the nature and existence of this subpoena could obstruct and impede a criminal investigation into alleged violations of federal law. Therefore, the United States Attorney requests that you do not disclose the existence of this subpoena."). Even though the challenged language in Bryant was "emblazoned on the subpoena," the Third Circuit refused to "say what occurred here imposed an obligation of secrecy." Id. at 238-39 (citations omitted). Because the language included on the cover letter to the grand jury subpoena at issue here requested, but did not require, the nondisclosure of the existence and contents of this subpoena, the Government did not impose an improper obligation of secrecy.

7

Defendants asserted in their briefing and at a hearing before this Court that, in addition to the challenged cover letter language, the Government verbally told witnesses that they were not allowed to speak with defense counsel.  The Court granted defense counsel leave to submit affidavits in support of this argument from witnesses who had received these instructions.  Defendants have not submitted any such affidavits.  On the bare assertion that the Government told witnesses not to speak with defense counsel, without any support or corroboration from a witness who was so instructed, this Court cannot conclude that the Government improperly imposed an obligation of secrecy on any grand jury witnesses, or that an evidentiary hearing is warranted to determine this issue.  See Calk, 87 F.4th at 186 ("to overcome the presumption of regularity that attaches to a grand jury proceeding, the defendant, who bears the burden of persuasion, must present particularized proof of an improper purpose" (internal quotation marks and quotation omitted)).

## CONCLUSION

For the foregoing reasons, defendants' motion challenging the Government's use of the grand jury is denied.

**SO ORDERED.**

*Brian M. Cogan*

_____
U.S.D.J.

Dated: Brooklyn, New York
       May 8, 2025

8