BGK:LDM
F. #2021R00600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

       - against -                      Docket No. 24-CR-346 (S-2) (BMC)

LINDA SUN,
       also known as "Wen Sun," "Ling Da Sun,"
       and "Linda Hu," and
CHRIS HU,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANTS' MOTION FOR A *MONSANTO* HEARING

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Alexander A. Solomon
Robert M. Pollack
Amanda Shami
Laura D. Mantell
Assistant U.S. Attorneys

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

    A.   The Indictment And Restraint Of Assets ..................................................................... 2

    B.   Financial Disclosures By Hu ........................................................................................ 4

    C.   The Motion........................................................................................................................ 4

LEGAL STANDARD ................................................................................................................. 5

    A.   The Mandatory Nature Of Forfeiture And Statutes Authorizing Pre-Trial Restraint And Seizure To Preserve The Availability Of Forfeitable Property .................................................. 5

    B.   The Sixth Amendment Right To Counsel Of Choice........................................................ 7

    C.   The Threshold Requirement To Show Need ..................................................................... 8

ARGUMENT .............................................................................................................................11

    I.   The Defendants Fail To Make The Threshold Showing Of Need To Use The Restrained Assets To Pay Their Attorneys.......................................................................................................11

        A.   The Defendants' Disclosures Are Inadequate. .................................................................11

        B.   The Defendants Have Access To Unrestrained Assets To Pay Attorney's Fees. .......... 12

        C.   The Defendants' Fail To Demonstrate That Their Necessary Expenses Cannot Be Covered By Unrestrained Assets. ....................................................................................................... 15

           1.   The Defendants Fail To Substantiate Their Claimed Need For An Additional $3 Million To Cover Attorney's Fees........................................................................................... 15

           2.   The Defendants Fail To Provide Any Details As To The $20,000 Per Month Spent on Living Expenses And How They Have Been Paid. ........................................................ 16

    II.   The Government Can Meet Its Burden Of Showing That The Restrained Assets Are Forfeitable. ............................................................................................................................. 17

    III.   None Of The Defendants' Other Arguments Advance Their Request For A *Monsanto* Hearing................................................................................................................................ 18

CONCLUSION...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

18 U.S.C. § 981(a)(1)(C) ............................................................................................ 5
18 U.S.C. § 981(f) ................................................................................................... 6, 8
18 U.S.C. § 982(a)(1) ............................................................................................ 5, 18
18 U.S.C. § 982(a)(2) ................................................................................................. 5
21 U.S.C. § 853(c) ................................................................................................. 6, 8
28 U.S.C. § 2461(c) .................................................................................................. 5


**Treatises**

*Caplin & Drysdale, Chartered v. United States*,
    491 U.S. 617 (1989) .......................................................................................... 6, 7

*Fed. Trade Comm'n v. 4 Star Resolution, LLC*,
    No. 15-CV-112S, 2016 WL 768656 (W.D.N.Y. Feb. 29, 2016) .............................. 10

*In re McDonald*,
    No. 14-11740, 2015 WL 1524096 (Bankr. W.D. La. Mar. 27, 2015) ...................... 16

*In re Sandercock*,
    No. 03-36260F, 2005 WL 6522759 (Bankr. E.D. Pa. Jan. 20, 2005) ...................... 17

*Kaley v. United States*,
    571 U.S. 320 (2014) ................................................................................ 6, 7, 8, 17

*Luis v. United States*,
    578 U.S. 5 (2016) ................................................................................................ 7

*Romero v. H.B. Auto. Grp., Inc.*,
    No. 11 CIV. 386 CM, 2012 WL 1514810 (S.D.N.Y. May 1, 2012).......................... 11

*Sam Jin World Trading, Inc. v. M/V Cap San Nicolas*,
    No. 09 CIV. 3997 (LMM), 2010 WL 2670847 (S.D.N.Y. July 2, 2010) .................. 12

*SEC v. Ahmed*,
    No. 3:15cv675 (JBA), 2016 WL 10568257 (D. Conn. Feb. 18, 2016)..................... 10

*Star Ins. Co. v. A&J Constr. of New York, Inc.*,
    No. 15-CV-8798 (CS), 2017 WL 6568061 (S.D.N.Y. Dec. 22, 2017)...................... 11

*United States v. Aventura Techs., Inc.*,
    607 F. Supp. 3d 278 (E.D.N.Y. 2022) ............................................................. 8, 11

*United States v. Bonventre,*
   720 F.3d 126 (2d Cir. 2013) ........................................................................... *passim*

*United States v. Chierchio,*
   No. 20-CR-306 (NGG), 2022 WL 624523 (E.D.N.Y. Mar. 3, 2022)................................... 8, 10

*United States v. Cosme,*
   796 F. 3d 226 (2d Cir. 2015) ........................................................................... 10

*United States v. Daugerdas,*
   No. S3 09 Cr. 581 (WHP), 2012 WL 5835203, (S.D.N.Y. Nov. 7, 2012) ....................7, 8, 9, 11

*United States v. Dupree,*
   781 F. Supp. 2d 115 (E.D.N.Y. 2011) ............................................................... 6, 18

*United States v. Egan,*
   No. 10-CR-191(JFK), 2010 WL 3000000 (S.D.N.Y. July 29, 2010)................................... 10

*United States v. Farmer,*
   274 F.3d 800 (4th Cir. 2001) ............................................................................ 8

*United States v. Fishenko,*
   No. 12 CV 626 SJ, 2014 WL 4804041 (E.D.N.Y. Sept. 25, 2014) ...................................... 9

*United States v. Kolfage,*
   537 F. Supp. 3d 559 (S.D.N.Y. 2021) .................................................................... 8

*United States v. Martinez,*
   No. 11 CR 445 NRB, 2011 WL 4949873 (S.D.N.Y. Oct. 18, 2011)................................... 10

*United States v. Monsanto,*
   491 U.S. 600 (1989)..................................................................................... 6, 7

*United States v. Monsanto,*
   924 F.2d 1186 (2d Cir. 1991) ..................................................................... 4, 7, 17

*United States v. Silver,*
   No. 15 Cr. 093 (VEC), 2015 WL 1501619 (S.D.N.Y. March 31, 2015)................................... 6

*Venkataram v. United States,*
   No. 06 CR 102 RPP, 2013 WL 6508819 (S.D.N.Y. Dec. 12, 2013) ................................ 9, 10

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the Motion for a *Monsanto* Hearing (the "Motion") filed by defendants Chris Hu ("Hu") and Linda Sun ("Sun"). ECF No. 115.  In the Motion, the defendants, invoking their Sixth Amendment right to counsel of choice, seek to challenge the restraint of forfeitable assets at a hearing before the upcoming November 2025 trial. Given the strong governmental interest in preserving forfeitable assets, it is well established that before criminal defendants may seek such a hearing, they must make a threshold showing of a genuine need for the funds and lack of access to any unrestrained assets to pay their attorneys.  This is something that the defendants have not attempted to—and indeed, cannot—do.

Sun submitted no evidence. The only evidence filed in support of the Motion is Hu's barely three-page declaration, which falls far short of providing the type of detailed information that courts in the Second Circuit require defendants to submit before granting a hearing, including information about the defendants' income, an accounting of assets and an explanation as to how they are currently financing their living expenses, which the defendants here claim to exceed $20,000 per month. Hu's declaration is also devoid of any meaningful information as to the central issue before the Court: the defendants' access to unrestrained assets. Further, unsigned disclosures previously provided by Hu (but not Sun) indicate that the defendants in fact have millions in unrestrained assets available to them to use to pay defense counsel, thereby precluding any need for a hearing to release "roughly $3 million" in forfeitable assets.

The defendants' other arguments in support of a hearing—including those relating to personal property that was seized pursuant to a search warrant and already returned, unsupported claims that the government cannot establish probable cause even though it previously met this

burden when it obtained search and seizure warrants, and arguments about the use of the grand

jury that the Court has already rejected—are without merit and do nothing to advance their

request for a pre-trial hearing to which they are not entitled. Accordingly, and for reasons

discussed more fully below, the Motion should be denied.

FACTUAL BACKGROUND

A.    <u>The Indictment And Restraint Of Assets</u>

On or about July 22, 2024, the court (then-Magistrate Judge Bulsara), upon the

government's showing of probable cause based upon a sworn affidavit, issued warrants

authorizing the seizure of: (1) funds, in the total amount of approximately $83,000, held in the

following accounts (the "Seized Accounts"): $2,615.34 on deposit in Bank of America account

number ending in 3645, held in the name of ███████████; $13,972.36 on deposit in

Bank of America account number ending in 6999, held in the name of ████████████

███; $5,639.40 on deposit in Bank of America account number ending in 4999, held in the name

of ████████████; $46,269.00 on deposit in Merrill Lynch account number ending

in 68X72, held in the name of Chris Hu; $1,001.30 on deposit in Citibank N.A. account number

ending in 6888, held in the name of Chris Hu and Linda Hu; and $13,420.36 on deposit in

Citibank N.A. account number ending in 1165, held in the name of Chris Hu ITF Linda Hu; and

(2) the following three vehicles (collectively, the "Seized Vehicles"): one 2024 Ferrari Roma, one

2024 Range Rover/L460, and one 2022 Mercedes GLB250W4.

The Second Superseding Indictment ("S-2" or the "Indictment"), filed on June 25, 2025,

charged the defendants with various offenses (the "Charged Offenses"), including conspiracy to

violate the Foreign Agents Registration Act ("FARA"), failure to register under FARA, visa

fraud, bringing in aliens, honest services wire fraud, honest services wire fraud conspiracy,

conspiracy to commit bank fraud, federal program bribery, conspiracy to defraud the United

2

States, misuse of means of identification, money laundering, money laundering conspiracy and tax evasion. The Charged Offenses stem from various schemes related to Sun's actions as an undisclosed agent of the People's Republic of China and the Chinese Community Party while she worked for New York State government. These actions include Sun's efforts to steer contracts with New York State government to businesses of a family member and Hu's close business associate in return for a share of the profits, Sun and Hu's laundering of millions of dollars in proceeds that they obtained as a result of these schemes and tax evasion. During the time period charged in the Indictment, Sun and Hu generated, and laundered, millions of dollars in ill-gotten gains.

S-2 includes six sets of criminal forfeiture allegations, seeking forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(6)(A); 8 U.S.C. § 1324(b), 18 U.S.C. § 982(a)(6)(A), and 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(2)(A); 18 U.S.C. §§ 982(a)(2)(B) and 1028(b)(5); and 18 U.S.C. § 982(a)(1). *See* S-2 at ¶¶ 159-170. S-2 also includes a list of 14 assets restrained (collectively, the "Restrained Assets") by the government, including:

(i) the following three pieces of real property: a residence in Manhasset, New York (the "Manhasset Property"); a residence in Forest Hills, New York (the "Forest Hills Property"); and a condo in Honolulu, Hawaii (the "Hawaii Property");

(ii) approximately $10,015.00 in cash, seized by law enforcement on or about July 22, 2024, from Manhasset, New York;

(iii) approximately $130,100.00 in cash, seized by law enforcement on or about July 22, 2024, from safe deposit box number 8786, maintained at a TD Bank located in Flushing, New York;

(iv) the Seized Accounts; and

(v) the Seized Vehicles.

3

B.    Financial Disclosures By Hu

In connection with the parties' prior efforts to resolve the defendants' request to release the Restrained Assets, in February 2025, Hu provided the government with a personal financial statement, as well as nine separate financial statements (collectively, the "Unsigned Disclosures") for the following investments and/or business that he owns in whole or in part:

(i)
(ii)
(iii)
(iv)
(v)
(vi)
(vii)
(viii)          and
(ix)        .



Notably, none of the financial statements was signed and sworn to by Hu. Meanwhile, Sun did not provide any financial disclosures.

Included within the Unsigned Disclosures were credit card statements, balance sheets, invoices for children's golf lessons, and other financial records.  According to the credit card statements, between July 2024 and December 2024, Sun paid at least $40,000 to her defense team and Hu paid $400,000 to his defense team. Such payments were charged to credit cards for                    and                    , both of which are owned by Hu.

C.  The Motion

On June 19, 2025—and following an agreement whereby the government temporarily lifted the *lis pendens* on the Forest Hills Property to allow the defendants to sell or mortgage the property provided the first $300,000 was set aside for forfeiture—the defendants filed the Motion. In the Motion, the defendants seek access to "roughly" $3 million of the Restrained Assets to fund their criminal defense and request a hearing to challenge the probable cause to restrain those assets pursuant to *United States v. Monsanto.* 924 F.2d 1186 (2d Cir. 1991).  To

4

support the Motion, Hu submitted a signed declaration ("Hu Decl.") barely three pages in length. *See* Hu Decl. The Hu Declaration contains no accounting of assets and liabilities, does not incorporate or attach the Unsigned Disclosures, and does not address what alternative unrestrained assets are available to the defendants. Rather, the declaration discusses the recent sale of half of Hu's interest in an unnamed commercial real estate investment for $1 million and states that he is unable to liquidate any other investments. Hu Decl., ¶ 9. He states that he is seeking to sell the Forest Hills Property, which he claims is valued at approximately $1.3 million, that his and Sun's current legal fees exceed $2 million, and that their monthly expenses exceed $20,000. Hu Decl., ¶¶ 11, 15-16. Hu further states that "[his] businesses are not generating sufficient profits to allow [him] to draw a salary, and [Sun] is not working." Hu Decl., ¶ 17.

## LEGAL STANDARD

A. The Mandatory Nature Of Forfeiture And Statutes Authorizing
Pre-Trial Restraint And Seizure To Preserve The Availability Of Forfeitable Property

Each of the forfeiture statutes cited in S-2, and in the prior indictments, require the Court to impose forfeiture in the event the defendants are convicted of the Charged Offenses. *See e.g.*, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) ("the court *shall* order the forfeiture of the property as part of the sentence in the criminal case," namely, "any property, real or personal, which constitutes or is derived from proceeds traceable to [a specified unlawful activity]") (emphasis added); 18 U.S.C. § 982(a)(1) (the court "*shall* order that the [defendant convicted of money laundering under Section 1956] forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property") (emphasis added); 18 U.S.C. § 982(a)(2) (the court "*shall* order that the [defendant convicted of bank fraud] forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation"). As numerous courts have

5

explained, the forfeiture statutes serve to "ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises." *Kaley v. United States*, 571 U.S. 320, 323 (2014) (*quoting Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 630 (1989)); *United States v. Monsanto,* 491 U.S. 600, 606-14 (1989). Consistent with the mandatory nature of forfeiture liability, the government's interest in forfeitable property vests at the time the crime was committed, because a defendant has no ownership entitlement to the fruits of his crime. *See* 18 U.S.C. § 981(f), 21 U.S.C. § 853(c).

As "there is a strong governmental interest in obtaining full recovery of all forfeitable assets," the forfeiture laws also authorize the pre-trial restraint of forfeitable assets. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 631 (1989); *see also Kaley,* 571 U.S. at 323 ("21 U.S.C. § 853(e)(1) empowers courts to enter pre-trial restraining orders or injunctions to 'preserve the availability of [forfeitable] property' while criminal proceedings are pending") (quoting *Caplin & Drysdale*, 491 U.S. at 631). Accordingly, in order to preserve the availability of property subject to forfeiture, 21 U.S.C. § 853(f) provides for the issuance of warrants authorizing the seizure of property based upon a showing of probable cause to believe that the seized assets would, in the event of conviction, be subject to forfeiture. *See United States v. Dupree*, 781 F. Supp. 2d 115, 130-131 (E.D.N.Y. 2011) (Matsumoto, J.) (holding that government may seize property prior to conviction); *United States v. Silver*, No. 15 Cr. 093 (VEC), 2015 WL 1501619 (S.D.N.Y. March 31, 2015). Such pretrial restraint of assets is "constitutionally permissible whenever there is probable cause to believe that the property is forfeitable," meaning "probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley*, 571 U.S. at 323-24 (citing *Monsanto*, 491 U.S. at 615 n.10).

B.  <u>The Sixth Amendment Right To Counsel Of Choice</u>

The Sixth Amendment right to retain counsel of choice is limited to the use of defendants' "own 'innocent' property to pay a reasonable [attorney's] fee." *Luis v. United States*, 578 U.S. 5, 23 (2016); *see also Monsant*o, 924 F.2d 1186, *abrogated in part by Kaley*, 571 U.S. 320. Accordingly, it is black letter law that a defendant "has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Caplin & Drysdale*, 491 U.S. at 626; *see also United States v. Daugerdas*, No. S3 09 Cr. 581 (WHP), 2012 WL 5835203, at *1 (S.D.N.Y. Nov. 7, 2012) ("The Constitution does not guarantee a defendant the right to use forfeitable assets to pay legal fees"). As the Supreme Court explained in *Monsanto*, "there is no exemption from § 853's [or § 981 or § 982's] forfeiture or pretrial restraining order provisions for assets which a defendant wishes to use to retain an attorney," because "[w]e find no evidence that Congress intended to modify that nostrum to read, 'crime does not pay, except for attorney's fees.'" 491 U.S. at 614. "Put another way: if the Government may, post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, after probable cause is adequately established, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial." *Id.* at 616.

Where defendants challenge the pre-trial restraint of assets on Sixth Amendment grounds, the court may hold a hearing "to litigate . . . whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment." *Kaley*, 571 U.S. at 324. The grant of such a hearing is not automatic, however, because "the defendant's constitutional right to use his or her own funds to retain counsel of choice . . . is not implicated unless the restraint actually affects the defendant's right to choose counsel and present a defense." *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013)

7

(affirming denial of hearing where defendant failed to demonstrate that he had insufficient unrestrained assets to fund his defense); *Kaley*, 574 U.S. at 353 (Roberts, C.J., dissenting) ("To even be entitled to the hearing, defendants must first show a genuine need to use the assets to retain counsel of choice"). This threshold showing of a genuine financial need is thus necessary to balance the defendant's interest and the government's interest in the seized assets, which, as noted above, vests in the government upon commission of the offense. 18 U.S.C. § 981(f); 21 U.S.C. § 853(c). If the defendant "possessed the means to hire an attorney independently of assets that were seized," the defendant's interest in a *Monsanto* hearing "would be absent." *United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001).

   C. <u>The Threshold Requirement To Show Need</u>

   In *Bonventre*, the Second Circuit explained the threshold requirement to show need that defendants must meet before any hearing challenging the restraint of assets. 720 F. 3d at 131; s*ee also Daugerdas*, 2012 WL 5835203, at *1-2; *United States v. Aventura Techs., Inc.*, 607 F. Supp. 3d 278, 284-85 (E.D.N.Y. 2022) (denying hearing and discussing financial need requirement under *Bonventre*); *United States v. Chierchio*, No. 20-CR-306 (NGG), 2022 WL 624523, at *4-5 (E.D.N.Y. Mar. 3, 2022) (requiring defendant to provide government and court with financial disclosures to demonstrate need). In recognition of the government's interest in preserving forfeitable assets, a defendant's showing of need "requires more than a mere recitation; the defendant must make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets" to retain counsel. *Bonventre*, 720 F. 3d at 131. The defendant's burden is "analogous to a defendant's burden under the Criminal Justice Act [] to show that he is unable to afford representation." *United States v. Kolfage,* 537 F. Supp. 3d 559, 566 (S.D.N.Y. 2021) (internal quotation marks omitted).

In applying this standard, courts frequently reject applications for a *Monsanto* hearing where, as here, the defendants fail to provide a full accounting of the unrestrained assets available to them to pay defense counsel. For example, in *Bonventre*, the defendant submitted affidavits listing his assets and liabilities, as well as the anticipated cost of legal representation. 720 F.3d at 132-33. The Second Circuit nonetheless upheld the district court's denial of the request for a hearing, noting that the defendant "did not disclose his net worth, provide a comprehensive list of his assets, or explain how he has been paying his significant living expenses." *Id.* at 133. The Second Circuit reasoned that "[w]hile the affidavits describe the aggregate balances of bank accounts enumerated in the government's submissions, they do not clarify whether [the defendant had] access to other accounts and, if so, their value." *Id.*

Similarly, in *United States v. Fishenko*, the court declined to order a *Monsanto* hearing where the corporate defendant "provided a conclusory affidavit from [its president] claiming that [the corporation] has no additional assets." No. 12 CV 626 SJ, 2014 WL 4804041, at *1 (E.D.N.Y. Sept. 25, 2014). The *Fishenko* court observed that the defendant's affidavits were "insufficient in that they do not allow the court to evaluate the extent of its unrestrained funds . . . [and failed] to disclose the Corporation's net worth or provide a comprehensive list of its assets." *Id.* (internal quotation marks and alterations omitted) (citing *Bonventre*, 720 F.3d at 133).

The court in *Daugerdas* also denied a motion for a *Monsanto* hearing that was "bereft of any sworn declaration that [the defendant] lacks the financial resources to hire counsel." 2012 WL 5835203, at *2; s*ee also Venkataram v. United States*, No. 06 CR 102 RPP, 2013 WL 6508819, at *2-3 (S.D.N.Y. Dec. 12, 2013) (declining to reconsider denial of *Monsanto* hearing where defendant asserted, without further detail, that he "needed $1 million to retain [his] counsel of choice to try the case (naming firms)" but nonetheless "was able to afford and

retained a number of attorneys"); *Chierchio*, 2022 WL 624523, at *4 n.6[1] ("what matters is the court's ability to 'evaluate the extent of [a defendant's] unstrained funds'") (citation omitted); *United States v. Cosme*, 796 F. 3d 226, 233 (2d Cir. 2015) (hearing denied where defendant confirmed his sufficient access to funds to pay counsel); *United States v. Martinez*, No. 11 CR 445 NRB, 2011 WL 4949873, at *1-2 (S.D.N.Y. Oct. 18, 2011) (denying request for *Monsanto* hearing because defendant failed to "produce[] evidence that he will not be able to pay for private counsel without access to the funds"); *Fed. Trade Comm'n v. 4 Star Resolution, LL*C, No. 15-CV-112S, 2016 WL 768656, at *1 (W.D.N.Y. Feb. 29, 2016) (denying motion for release of funds for use in parallel criminal action; holding that threshold showing "requires a full accounting, and not simply general assertions that [defendant] does not have adequate assets with which to fund his criminal defense apart from the frozen assets" (internal quotation marks omitted)); *United States v. Egan*, No. 10-CR-191(JFK), 2010 WL 3000000, at *6 (S.D.N.Y. July 29, 2010) (denying request for *Monsanto* hearing; "Because Defendant has not submitted any evidence that suggests that the restrained assets are necessary to retain his counsel of choice, his request for a *Monsanto* hearing is denied. The absence of such evidence perhaps is explained by its nonexistence"); *SEC v. Ahmed*, No. 3:15cv675 (JBA), 2016 WL 10568257, at *2 (D. Conn. Feb. 18, 2016) (declining to order hearing to unfreeze assets for use in criminal case until defendant provides "a sworn financial accounting confirming that he has no other available assets with which to pay defense counsel").

---

[1]    A review of the docket in *Chierchio,* upon which the defendants rely in the Motion, reveals that the defendant in that case abandoned his request for a *Monsanto* hearing after being required to provide financial affidavits to the court and the government. *See* 20-CR-306 (NGG).

ARGUMENT

I.    The Defendants Fail To Make The Threshold
      Showing Of Need To Use The Restrained Assets To Pay Their Attorneys.

In support of the Motion, the defendants rely on unsworn and incomplete disclosures that, if anything, reveal that they do not lack sufficient assets to fund their defense. As discussed below, the disclosures in fact raise more questions than they answer in terms of the defendants' ability to meet the preliminary requirement of establishing need before holding a *Monsanto* hearing.

      A.    The Defendants' Disclosures Are Inadequate.

Sun failed to submit any of the evidence required to make her threshold showing of need. Instead, the defendants rely upon: (1) Hu's Unsigned Disclosures, which are referred to in the Motion but not filed with the Court; and (2) the Hu Declaration.  Neither meets the threshold requirement to demonstrate need.

First, without being sworn to by the defendant under penalty of perjury to affirm their accuracy and completeness and without being submitted to the Court, the Unsigned Disclosures have no evidentiary value. *See, e.g.*, *Daugerdas*, 2012 WL 5835203, at *2 (rejecting defendant's "unsworn, conclusory assertion that he is unable to continue to pay legal fees"); *Aventura*, 607 F. Supp. 3d 284-85 (defense counsel's affirmation failed to establish need); *Star Ins. Co. v. A&J Constr. of New York, Inc*., No. 15-CV-8798 (CS), 2017 WL 6568061, at *6 (S.D.N.Y. Dec. 22, 2017) (granting plaintiff's summary judgment motion where, *inter alia*, defendants supported one of their arguments "only with an unsigned affidavit . . . which is inadmissible"); *Romero v. H.B. Auto. Grp., Inc.*, No. 11 CIV. 386 CM, 2012 WL 1514810, at *2 (S.D.N.Y. May 1, 2012) (unsigned affidavit "is inadmissible" and court "will not consider it"); *Sam Jin World Trading, Inc. v. M/V Cap San Nicolas,* No. 09 CIV. 3997 (LMM), 2010 WL 2670847, at *3 (S.D.N.Y. July

11

2, 2010) (unsworn affirmations "are inadmissible"). The Hu Declaration—which is the only statement signed by Hu and put before the Court—does not even approach the "sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets." *See Bonventre*, 720 F.3d at 131. In its two and a half pages, the declaration contains only general assertions and does not even attempt to provide an accounting of the defendants' assets. But what is most conspicuously absent from the Hu Declaration is any confirmation that the defendants have no access to alternative, unrestrained assets. Instead, the declaration merely discusses the seizure of the Restrained Assets, the potential sale of the Forest Hills and Hawaii Properties, and the parties' efforts to avoid litigation. The declaration contains only unsubstantiated and vague claims about whether any revenue is earned from Hu's businesses (other than in the form of salary).[2]

Even the defendant in *Bonventre*—who was denied a *Monsanto* hearing—submitted two declarations, two and "barely" three pages in length, listing his assets, income and expenses, along with other information. *Id.* at 132-33. As the Second Circuit explained in affirming the district court's denial, a defendant seeking a hearing must "disclose his net worth, provide a comprehensive list of his assets, or explain how he has been paying his significant living expenses" and his affidavit must "clarify whether the [defendant] has access to other accounts and, if so, their value." *Id.* at 133. The Hu Declaration fails to provide these required details.

B.    The Defendants Have Access To Unrestrained Assets To Pay Attorney's Fees.

While they are lacking any signature to attest to their accuracy and completeness, the Unsigned Disclosures are notable in what they do reveal about the millions of dollars in other

---

[2]    The fact that, according to the Unsigned Disclosures, Hu charged at least $440,000 in attorney's fees to his business and investment entities shows that he receives substantial funds from them, even if not in the form of salary.

12

assets available to the defendants, thus undermining their claim that "nearly every avenue to resources [has been] effectively extinguished by the government." Motion at 1. According to those disclosure—which the defendants opted to not put before the Court—Hu owns the following **nine** businesses and/or investments, none of which have been restrained by the government (or which are discussed in any meaningful way in the Hu Declaration): ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

According to balance sheets included in the Unsigned Disclosures, Hu's unrestrained interest in ███████████ and ███████████ alone exceed $3 million.[3] In support of the Motion, Hu confirmed that he "sold 50 percent of [his] interest in [an unnamed] commercial real estate investment for $1 million." Hu Decl. ¶ 9. Yet the Motion is silent as to why the other half of this investment, or any of his other investments, cannot also be sold or what efforts, if any, have been made in that regard.  Further, the fact that Hu was able to liquidate part of his interest in an investment belies the defendants' claims that they have been cut off from "nearly every avenue to resources." Motion at 1.

With respect to ███████████, financial records show that the business earned approximately $1.5 and $1.9 million in revenue a year between from 2020 through 2023. Hu's other business, ███████████, has more than $1.2 million in inventory, according to the Unsigned Disclosures. While Hu may not be drawing a salary from this business, Hu Decl. ¶ 17, credit card statements for ███████████ show that he charged substantial travel expenses to the business,

---

[3]    Notably, financial records show that Hu's interest in ███████████ was funded in part from the bank account at JPMorgan Chase that the government subsequently seized, as it received proceeds of the Charged Offenses. The fact that his interest in ███████████ is thus potentially forfeitable, but unrestrained, further undermines Hu's request for a *Monsanto* hearing.

including airfare tickets for family members to travel to Italy and Portugal. This is in addition to the thousands charged to ███████ credit card for other travel expenses, including tickets to China and a more than $7,000 charge to Princess Cruises. Despite their claimed lack of resources, the defendants have rebuffed the government's suggestions that they seek a loan that could be secured by any number of their other unrestrained assets. This would have been the more practical option, given that the trial in this matter is only a few months away.

The Unsigned Disclosures and information gathered during the investigation further reveal that the defendants have another unrestrained vehicle, a 2021 Jeep Gladiator; more than $90,000 in unrestrained stocks; tens of thousands in saving bonds; and life insurance. Even the Motion makes vague references to other unrestrained assets, about which no details are provided. Motion at 1 (noting the government "froze *most* of their bank accounts" without explaining what additional funds the defendants have access to) (emphasis added); Motion at 4 (explaining that "following the filing of the Indictment, their banks closed all of the accounts that they had at the time" suggesting other accounts were not seized without disclosing their balances); Hu Decl. ¶ 5 (mentioning unidentified "remaining accounts").

Even with respect to the Forest Hills Property, the defendants have failed to show that they have no access to alternative assets, despite the parties' agreement to temporarily lift the government's *lis pendens*.[4] The Hu Declaration states that the property is being offered for sale, but is silent as to any efforts to obtain a mortgage—an option that was expressly addressed in the parties' agreement and which would have obviated the need for the defendants to terminate the lease and lose the rental income they were earning on the property. Further, according to Zillow,

---

[4]    While the Forest Hills Property was purchased prior to the Charged Offenses, the government filed its *lis pendens* based upon its ability to trace proceeds of the Charged Offenses to substantial mortgage payments on the property.

the property's initial listing price of $1.3 million, appears substantially more than the asking price of nearby similar homes and the assessed value. As such, the defendants' complaints about "market headwinds" and the need for a modest $20,000 reduction of an inflated listing price, coupled with their failure to address efforts to obtain a mortgage, fall far short of demonstrating need to have the forfeitable assets released.

Similarly, the defendants' position with respect to the Hawaii Property, a vacation property which the defendants purchased with proceeds traceable to the Charged Offenses, further demonstrates an unwillingness to preserve assets in an efficient matter. While the defendants complain that the government's lien has interfered with their efforts to the sell this property, they fail to mention that the government, at the defendants' request, provided the defendants with a letter, dated November 6, 2024[5], confirming that the government was amenable to an interlocutory sale and that, to facilitate such a sale, it would lift its lien.  As the defendants insist that the proceeds of such a sale should go towards their own expenses, instead of being held for forfeiture (and in complete disregard of the government's vested interest), they continue to incur "significant monthly expenses including taxes and association fees." Hu Decl. ¶ 12.  Further, no attempt is made to explain why this property is not rented.

      C.    The Defendants' Fail To Demonstrate That Their Necessary Expenses Cannot Be Covered By Unrestrained Assets.

      1.    The Defendants Fail To Substantiate Their Claimed Need For An Additional $3 Million To Cover Attorney's Fees.

The defendants fail to disclose how much they have paid in total to their attorneys to date, even though such information is critical to assessing the need for a hearing, especially when

---

[5]    While the defendants claim that "multiple buyers have been deterred by the government's lien" on the Hawaii Property, Hu Decl. ¶ 13, it is unclear if any prospective buyers or agents were shown the government's letter.

they are now requesting an additional $3 million. It appears, however, that the amount the defendants have paid to date likely exceeds $1.44 million.[6] The defendants should disclose whether these funds were already spent on the pre-trial litigation to date—including their (unsuccessful) motions to dismiss and challenging the government's use of the grand jury—or whether any of it still remains available to cover future expenses.

   2. **The Defendants Fail To Provide Any Details As To The $20,000 Per Month Spent on Living Expenses And How They Have Been Paid.**

In a mere summary fashion, the Hu Declaration states that his living expenses "consist of day-to-day necessities including, taxes, mortgage payments, and association fees on our properties, family health insurance, childcare, life insurance, groceries, electricity, gas, and phone and Internet service." Hu Decl., ¶ 16. The defendants, however, make no effort to provide any accounting as to how these expenses add up to $20,000 a month. As such, it is not clear whether other substantial expenses included in the Unsigned Disclosures, such as the cruises, airfare and children's golf lessons, are folded into the defendants' estimate. And no explanation is provided for how the defendants are "struggling" but nonetheless able pay such substantial monthly expenses, particularly given *Bonventre's* requirement that affidavits "explain how [the defendant] has been paying his significant living expenses." *Bonventre*, 720 F. 3d at 133. Nor is it clear how such expenses might be deemed reasonable." *See In re McDonald*, No. 14-11740, 2015 WL 1524096, *3 (Bankr. W.D. La. Mar. 27, 2015) (discussing how bankruptcy courts have developed the general rule that "reasonably necessary" living expenses means those that are "adequate, but not first-class"); *In re Sandercock,* No. 03-36260F, 2005 WL 6522759, *3-4

---

[6] This figure is based upon at least $400,000 paid by Hu's businesses to attorneys in July and August 2024, according to the records included in the Unsigned Disclosures, plus the $1 million from the recent sale of a portion of one of Hu's real estate investments.

(Bankr. E.D. Pa. Jan. 20, 2005) (same). Accordingly, the defendants' claimed need for access to $20,000 each month for living expenses—where there is no showing that they lack access to alternate assets—weighs against granting a *Monsanto* hearing.

II.    **The Government Can Meet Its Burden Of Showing That The** <u>**Restrained Assets Are Forfeitable.**</u>

Assuming *arguendo* that the defendants were to qualify for an evidentiary hearing— which for all the reasons set forth above they do not—the government need only establish probable cause as to the nexus between the Restrained Assets and the Charged Offenses. *Monsanto*, 924 F.2d at 1195, *abrogated in part by Kaley*, 571 U.S. 320.  As the Supreme Court ruled in *Kaley*, defendants in a *Monsanto* hearing are not permitted to "second-guess[]" the grand jury's finding of probable cause as to the commission of the underlying offenses, as the "grand jury gets the final word." *Kaley*, 571 U.S. at 328, 340-41 ("If the question in a pre-trial forfeiture case is whether there is probable cause to think the defendant committed the crime alleged, then the answer is: whatever the grand jury decides."). Accordingly, the defendants cannot challenge the grand jury's findings as to the commission of the Charged Offenses that give rise to forfeiture under the broadly worded forfeiture statutes cited in S-2.

Contrary to the defendants' claims, the government can satisfy "the relatively modest burden of demonstrating probable cause" to believe the Restrained Assets are traceable to the Charged Offenses. *Bonventre*, 720 F.3d at 131. First, with respect to all the Restrained Assets other than the real property, these assets were seized pursuant to warrants issued by the court based upon the government's prior showing of probable cause. With respect to the three restrained pieces of real property, the government filed *lis pendens* against them based upon its ability to trace proceeds of the Charged Offenses towards their purchase and/or mortgage

payments.[7]  Indeed, S-2 details tracing towards the purchase of millions of dollars in real property. S-2, ¶ 109.

The defendants offer no basis to question the probable cause as to the Restrained Assets. Instead, they point to jewelry that was seized but later returned, property allegedly owned by Sun's mother, and property that may have been seized for evidentiary, as opposed to forfeiture, purposes.[8] While the defendants cite to the initial indictment, S-2 provides information about numerous transactions involving millions of dollars traceable to the Charged Offenses, including the more than eight-years long money laundering conspiracy for which "any property, real or personal, involved in such offense" is subject to forfeiture. 18 U.S.C. § 982(a)(1). The defendants misapprehend the scope of potential forfeiture in their limited reading of select portions of the initial indictment's allegation about $1.5 million in payments, gift tickets and "salted ducks." Given the breadth of the defendants' prospective forfeiture liability for money laundering and the other Charged Offenses, preserving the Restrained Assets, all of which are traceable, for a few months before the upcoming trial is not excessive; in fact, their value represents only a fraction of the amount involved in the Charged Offenses.

III.    None Of The Defendants' Other Arguments Advance Their
        Request For A *Monsanto* Hearing.

The Motion raises an assortment of other arguments, none of which have merit much less any bearing on their right to a *Monsanto* hearing. First, the defendants attempt to assign blame to

---

[7]    Despite the defendants' claims, the government never "seized" the real properties, such that the defendants were denied access to live in or rent them. Motion at 10. The government merely filed liens to preserve its interest in recovering them for forfeiture.

[8]    To the extent the defendants raise arguments concerning assets belonging to their parents or other third parties, such arguments have no bearing on their right to a *Monsanto* hearing. *Dupree*, 781 F. Supp. 2d at 139-40 (concluding that, for purposes of Sixth Amendment, defendant lacked property interest in seized funds belonging to his employer).

the government for purported delay and alleged "lagging and error-riddled productions," but the facts are that the government has made over 30 productions, the majority of which were made prior to the February 11, 2025 status conference during which the government indicated it was "essentially complete." As the Court and the defendants' counsel know well, the government's investigation remains ongoing—evidenced by the S-2, which the grand jury returned on June 25, 2025—as does the government's obligation to turn over discovery, such that the government's productions since February have been made as new material is received by the government. To the extent the defendants' argument appears to be a complaint that the government did not go pencils down in February, that argument is divorced from reality and the Federal Rules of Criminal Procedure.

The defendants' complaints about "error-riddled discovery productions" fare no better—a complaint regarding inadvertently duplicative Bates numbers that was corrected, the mismarking of one document with SECRET stamps that was quickly explained, and the inadvertent deletion and recreation of a Gmail search warrant responsive report that Sun then successfully suppressed. The three discrete complaints, across a production volume of over 30 productions and over 140,000 stamped pages, have no bearing on the issue of a *Monsanto* hearing. In fact, the defendants' decision to seek Court intervention regarding the inadvertent and erroneous SECRET stamp, which the government was able to quickly explain, demonstrates the defendants' decision to belabor an inadvertent stamp on one document rather than seek expedient resolution by asking the government directly.

Finally, the Court has already addressed, and rejected, the defendants' arguments relating to the alleged misuse of grand jury process, which the defendants appear to press again in the Motion. Motion at 13-15; ECF No. 104. Nothing has changed since the Court's decision

rejecting the defendants' accusation of misuse, apart from yesterday's S-2, which only further supports the government's entirely proper use of the grand jury to investigate newly identified crimes by the defendants—all of which were committed as part of their sprawling scheme to financially and illegally benefit from Sun's access to the New York State government.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendants' request for a *Monsanto* hearing.

Dated:  Brooklyn, New York
      June 26, 2025

                    Respectfully submitted,

                    JOSEPH NOCELLA, JR.
                    United States Attorney

By:    **/s/**_____

                    Alexander A. Solomon
                    Robert M. Pollack
                    Amanda Shami
                    Laura D. Mantell
                    Assistant U.S. Attorneys

                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
                    (718) 254-7000

20