UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  UNITED STATES OF AMERICA,                  :

                                               Plaintiff,                 :
                                                              :    **MEMORANDUM DECISION AND**
                    - against -                      :    **ORDER**
                                                              :
  LINDA SUN,                                  :    24-cr-346 (BMC)
      also known as "Wen Sun," "Ling Da
      Sun," and "Linda Hu," and            :
  CHRIS HU,                                      :
                                                              :
                                         Defendants.       :
----------------------------------------------------------- X

**COGAN**, District Judge.

       This case is before the Court on defendants' motion for an order pursuant to Local Criminal Rule 23.1(h) directing the Government to retract and delete its June 26, 2025 press release and to refrain from making further statements to the public about this case.[1] Familiarity with the facts of this case is presumed. In brief, the Government alleges that defendant Linda Sun acted as an undisclosed agent for China, that both defendants defrauded the New York State government by facilitating contracts between the New York State government and two companies with which they had connections and from which they received profits and kickbacks, and that defendant Chris Hu laundered these proceeds and did not report them to the IRS.

       When the Government brought a second superseding indictment against defendants, adding the theories that defendants facilitated and received profits and kickbacks from contracts between the New York State government and two companies and that Hu laundered the proceeds

---

[1] Defendants also state in their motion that they intend to seek leave to file a motion to dismiss the second superseding indictment. The Court has recently updated its Individual Practices to no longer require letters requesting premotion conferences before filing motions in criminal cases. Accordingly, defendants need not seek leave before filing their motion to dismiss.

and committed tax evasion, the U.S. Attorney's Office issued a press release. The U.S. Attorney's Office published the press release on its website, sent the press release to an email distribution list for news updates, and posted the press release on the social media platform X, including select quotes from the press release in additional posts. Moreover, FBI Director Kash Patel and Deputy Director Dan Bongino reposted coverage of the press release by the New York Post and included their own additional comments about the case in their posts.

      Pursuant to Local Criminal Rule 23.1(a), lawyers and government agents have a duty, in pending or imminent criminal litigation they are involved in, "not to release or authorize the release of . . . opinion [reasonably likely to be disseminated to the public] . . . if there is a substantial likelihood that the dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." The Local Criminal Rules identify certain statements that "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice," including statements about "the character or reputation of the accused," "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case," and "[i]nformation the lawyer . . . knows is likely to be inadmissible at trial and would if disclosed create a substantial likelihood of prejudicing an impartial trial." Local Crim. R. 23.1(d).

      A district court, "on motion of either party or on its own motion, may issue a special order governing matters such as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury," as well as "any other matters that the court may deem appropriate." Local Crim. R. 23.1(h). The Court "must consider whether the order will be necessary to ensure an impartial jury and must find that other,

less extreme available remedies, singly or collectively, are not feasible or would not effectively mitigate the pretrial publicity and bring about a fair trial." Id.

Defendants identify several statements as violating Local Criminal Rule 23.1(a), such that an order pursuant to Rule 23.1(h) is necessary, including:

- The subheading of the press release, in bold font, which states without qualification that "Linda Sun Falsified Information to Cause Approval of NYS Contracts Awarded to Businesses Operated by her Family Member and her Husband."

- The second sentence of the first paragraph of the press release, which states (again, without any qualification as to Sun's innocence until proven guilty) that "As part of the scheme, Sun steered contracts and vendors with whom she had undisclosed personal connections, and she and Hu received millions of dollars from the vendors, including some in the form of kickbacks, which Sun did not disclose to the NYS government."

- The United States Attorney for the Eastern District of New York Joseph Nocella, Jr.'s quote, included in the press release, that "We demand better from our public servants, and this Office will continue to hold accountable public officials who enrich themselves at the expense of New York taxpayers."

- The FBI New York Field Office Assistant Director in Charge Christopher G. Raia's quote, included in the press release, that "This alleged scheme not only created an unearned and undisclosed benefit for the defendants and their relatives, but it also exploited the state's critical need for resources in a health crisis.  The FBI will never tolerate any public official who abuses their position to profit at the expense of others, especially when their objectives align with foreign agendas."

- The IRS Criminal Investigation New York Special Agent in Charge Harry T. Chavis, Jr.'s quote, included in the press release, that "With this investigation, this husband-and-wife team with supposed ties to corruption has been rooted out, and they will soon understand that in legitimate government spending, there is no friends and family discount."

- Several statements throughout the press release that present allegations included in the second superseding indictment as facts instead of allegations, for example: "To conceal her relationship with the Cousin Company from procurement authorities at the NYS government, Sun falsified a document to suggest that the Jiangsu Department of Commerce had recommended the Cousin Company."

- A quote from U.S. Attorney Nocella, which was included in the press release and which the U.S. Attorney's Office posted as its own post on X: "When masks, gloves, and other protective supplies were hard to find, Sun abused her position of trust to steer contracts to her associates so that she and her husband could share in the profits."

3

- FBI Director Patel's post on X, including the New York Post coverage of the press release and stating: "While Americans were locked down and desperate for PPE, Linda Sun and Chris Hu cashed in – allegedly lining their pockets while serving CCP interests. This is corruption that endangered lives. The FBI will not tolerate public officials who sell out their country."

The Government asserts that the press release did not violate Local Criminal Rule 23.1(a) because it included that defendants were "*charged* with accepting kickbacks in PPE fraud scheme" in the title of the press release, and it stated in the first sentence that "A federal grand jury . . . returned a second superseding indictment that added charges." Additionally, U.S. Attorney Nocella's quote included the words "as alleged" and the rest of his quote "focus[ed] on the defendants' actions – not an opinion as to guilt or innocence or a comment on character." The other officials' statements also used the word "alleged."

For many of the statements about which defendants raise concerns, "it is hard to find that they had any compelling law-enforcement purpose[, so] there is room to question whether [they] are the type of 'subjective observations' that the regulations eschew . . . or whether they reflect the degree of 'prudence and caution' that is to be exercised by prosecutors." United States v. Smith, 985 F. Supp. 2d 506, 539 (S.D.N.Y. 2013) (citations omitted). Read as a whole, "it would not be irrational for some to interpret" the statements about holding accountable public officials who "sell out their country" and "abuse[ ] their position to profit at the expense of others, especially when their objectives align with foreign agendas" as "holding Defendants out as the latest examples of" such public officials "and, therefore, to be a comment on the guilt of Defendants." Id. at 540 (citing United States v. Corbin, 620 F. Supp. 2d 400, 411 (E.D.N.Y. 2009)).

Defendants have legitimate concerns. It is not at all clear why the Government felt compelled to include unqualified statements of guilt from the Chief United States Attorney and agents. Throwing in the word "as alleged" in some but not all places does not completely solve

4

the problem, because we (including, most certainly, the Government) know that the media seizes particularly on the unqualified portions of the statements. And when the U.S. Attorney states that "this Office will continue to hold accountable public officials who enrich themselves at the expense of New York taxpayers," that's a misstatement. The Office hasn't held anyone accountable in this case – yet. As we instruct juries in every case, the indictment is nothing more than an accusation. Only if and when there is a conviction and sentence will the Office have held anyone accountable for the crimes charged. A more accurate statement would have been, "the Office will continue to bring charges against public officials when it believes the evidence at trial will show proof beyond a reasonable doubt that a crime has been committed." But that wouldn't have made for nearly as effective press snippets, and the Office knows it.

However, despite defendants' legitimate concerns about the press release and its dissemination, they have "not shown that the press release has so permeated the public as to have hindered the ability of the Court, probably some . . . months . . . from now, to impanel a fair and impartial jury in this case, especially in light of the size of the jury pool in this huge district and the searching and mitigating tools available to ensure a fair and impartial jury." Corbin, 620 F. Supp. 2d at 411. They provide no explanation for why "searching *voir dire* and emphatic jury instructions," which the Court agrees will be necessary, will not also be sufficient, other than the conclusory statement that these measures "are insufficient to remedy the damage already done by the government's smear campaign or to prevent further prejudice from whatever press statements the government or its agents may make next." No one who is going to be approved to sit on this jury is going to know of this press release or the details of any media report on it. Because I cannot find "a substantial likelihood that the dissemination [of the press release or future potential releases] will interfere with a fair trial or otherwise prejudice the due administration of

justice," Local Crim R. 23.1(a), defendants' request for an order pursuant to Rule 23.1(h) is denied.

The Court notes that, just because the public comments at issue here do not warrant an order curtailing the Government's statements to the press, more or different statements may yield a different result. "[I] it is essential that prosecutors respect both the power of their words and their office, and ensure that their public comments are carefully tailored solely to further valid law enforcement interests and to steer far clear of violating a defendant's fundamental right to a fair trial." Smith, 985 F. Supp. 2d at 541 (citation omitted). Moreover, "it is well within the courts' authority to adopt appropriate measures to ensure that the entire process, from arrest to disposition, is fair and is perceived to be fair." Id. (citation). The Court will not hesitate to exercise this authority if it becomes necessary.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      July 9, 2025