# Exhibit A

# JOHN PAUL OSBORN

### FORENSIC DOCUMENT EXAMINATION

-

## 1273 BOUND BROOK ROAD, SUITE 15
## MIDDLESEX, NEW JERSEY 08846
TELEPHONE 732-667-5888 FAX 732-200-3354

-

### A FIVE GENERATION FAMILY PRACTICE



KELSEY L. OSBORN, ASSOCIATE
ALBERT S OSBORN (1858-1946)
ALBERT D OSBORN (1896-1972)
RUSSELL D OSBORN (1936-1994)
PAUL A OSBORN (1931-2007)

MEMBER
AMERICAN ACADEMY OF FORENSIC SCIENCES
AMERICAN SOCIETY OF QUESTIONED DOCUMENT EXAMINERS

CERTIFICATION
AMERICAN BOARD OF FORENSIC DOCUMENT EXAMINERS



August 25, 2025

**RE:**  **United States v. Linda Sun and Chris Hu**
*Our File:  J-3162*

## <u>REPORT OF FINDINGS</u>

Amanda Shami, AUSA
United States Attorney's Office (EDNY), National Security and Cybercrime
271 Cadman Plaza East
Brooklyn, NY   11201

Dear Ms. Shami:

Examinations and comparisons of writing appearing on material submitted to the undersigned in connection with the above noted matter have been completed. The subject material is described as follows:

### MATERIAL SUBMITTED

*Reproductions of submitted items are attached to this report in Appendix 1 and 2*

**Appendix 1**

| Q1 | Original (writing media on paper) check drawn on the Bank of America Account of W&J Evergreen Inc., numbered 1083, and dated 05/28/2020. |
|---|---|

**Appendix 2**

| K1a – K1uuu | Material bearing what was submitted as the known genuine writing of Chris Hu, including hand printing and signatures (items reproduced in Appendix 2 are captioned at the bottom right of each item; items examined bearing original relevant writing are noted on the caption of each) |
|---|---|

JOHN PAUL OSBORN
FORENSIC DOCUMENT EXAMINATION

Amanda Shami, AUSA
August 25, 2025, Page 2

**REPORT OF FINDINGS**
Our File:  J-3162

## PURPOSE OF EXAMINATIONS

These studies were performed in order to determine, if possible, whether or not the hand printed payee name ("Golden Capital LLC"), the check amount in words ("Thirty four thousand five hundred fifty two 90/xx"), the memo ("Investment"), as well as the endorsement signature on the reverse of item Q1 were prepared by the K1 writer.

## LIMITING FACTORS

Limiting Factors are materials and/or circumstances that constrain the examination process to the extent that it should be clearly reported and influence an examiner's decision regarding the use of a specific conclusion term(s). It is the obligation of the undersigned to acknowledge factors which limit complete and thorough examination of a submitted problem.  The following factors (and recommended cures) are noted:

- The questioned endorsement signature on the reverse of item Q1 is non-complex and simplistic (no recommended cure)

Standardized conclusion terminology utilized may be tempered as a result of limiting factors.  Curing limiting factors may be accomplished by following the recommendation provided.  The result may be a change in the conclusion terminology employed to report findings.

## FINDINGS

Based on the material bearing hand printed known specimen writing submitted and reflected in the reproductions appearing in Appendix 2, it is the opinion of the undersigned that the K1 writer can be *identified* as having prepared the noted hand printed portions of the Q1 check.  Furthermore, based on the numerous signatures appearing on material reflected in the reproductions appearing in Appendix 2, it is *highly probable* in the opinion of the undersigned that the noted questioned endorsement signature appearing on the reverse of item Q1 is the genuine signature of the K1 writer.

With respect to the conclusion noted above, please refer to the Scientific Working Group for Document Examination[1] "SWGDOC Standard Terminology for Expressing Conclusions of

---

1 The undersigned adheres to standards published by the Scientific Working Group for Forensic Document Examination (SWGDOC), as well as standards published by the AAFS Standard Board (ASB).  Initially supported by the Federal Bureau of Investigation and the National Institute of Justice, SWGDOC standards are the product of numerous forensic document examiners and other professionals from the private sector, from state laboratories and from federal laboratories.  Similarly, the AAFS Standards Board is the product of diverse laboratories and practitioners through the US Department of Commerce National Institute of Standards and Technology (NIST) and its Organization of Area Scientific Committees (OSAC). These standards are publicly available at no cost and can be obtained at www.swgdoc.org and www.aafs.org/academy-standards-board.

JOHN PAUL OSBORN
FORENSIC DOCUMENT EXAMINATION

Amanda Shami, AUSA
August 25, 2025, Page 3

**REPORT OF FINDINGS**
Our File:  J-3162

Forensic Document Examiners" found in Appendix 3. This standard includes definitions for the standardized conclusion terms.

## STANDARDS FOR EXAMINATION AND TESTING METHODOLOGY

The following standards were employed for examinations performed in this matter (also appearing in Appendix 3):

*"ANSI/ASB Standard 080 Standard for Examination of Handwritten Items"*

## COMMENTS

Examinations were performed on the questioned hand printing appearing on the check described in Q1. These examinations considered formations, general writing characteristics, line quality and other writing features.

Secondary and separate examinations were performed among and between the hand printing appearing on the material noted in item K1. These examples of writing were found to be sufficient in quality and quantity for purposes of these examinations. They included writing dated both before and after that date appearing on item Q1, included numerous original (writing ink on paper) specimens, and examples appearing on a similar form (checks). Like the examinations performed on the questioned hand printed check entries, these examinations considered the individual and general writing characteristics of submitted known specimen hand printing, but also focused on the range of variation present between and among this group of known specimens.

A comparative analysis was performed between the questioned hand printed check entries appearing on the document described in Q1 and the group of submitted known hand printing appearing on the material noted in item K1 to identify similarities and differences between the questioned and the known hand printing, as well as to gauge their significance towards possible problem resolution.

Consistent with the process employed to examine the questioned and known hand printing, the same process was employed to analyze the questioned and known signatures. Due to the simplistic nature of the questioned and known signatures, the undersigned acknowledges that such a signature might be simulated with more ease than a more complex body of writing, however the lack of any observable evidence of simulation and the remarkable consistency with the known specimens, the undersigned employed the *highly probable* (genuine) conclusion term, reporting to a virtual degree of certainty.

The undersigned has prepared five illustrations which may be found in Appendix 4 of this report and are numbered in the lower right corner of each. Illustration 1 is simply a composite of t

JOHN PAUL OSBORN
FORENSIC DOCUMENT EXAMINATION

Amanda Shami, AUSA
August 25, 2025, Page 4

**REPORT OF FINDINGS**
Our File:  J-3162

item Q1 (enlarged) and the questioned hand printed entries appearing on that item. Illustrations 2 and 3 are composites of the questioned hand printed entries and comparable hand printed examples taken from the K1 material. The questioned hand printed entries on each of these two illustrations include captioned and encircled character forms. The examinations performed by the undersigned identified no significant differences in form or other writing characteristics and a number of significant similarities. Those significant similarities include, but are not limited to:

A. The loose formation of the letter "y" with a bowl separated from the descending stroke, which curves gently.
B. The formation of the letter "u" with a very narrow loop before a slightly extended terminal stroke.
C. The loose formation of the letter "h" with a v like separation between the staff and the right portion of the letter.
D. The angled loop of the letter "e".
E. The gentle curve of the "d" staff, angled directional change at the base of the letter to form the bulb and a slightly extended terminal stroke.
F. The high extension of the ascending right portion of the "r".
G. The formatting of the fraction indicating cents, as well as the initial stroke of the numerical figure "9" which begins at about the 8 0'clock position of the bulb.
H. The formation of the letter "G" with a narrowly written curve and continuously written chin with an extended termination.
I. The flat formation of the "d" bulb.
J. The slightly extended start of the "p" and small hook at the termination of the descender.
K. The blunt change in direction at the bottom left of the "L" and the narrow curve of the "C".
L. The top horizontal of the "I" made slight lower than the top of the vertical staff and with a downward curve.

It is the opinion of the undersigned that the noted significant similarities, as well as others, in combination with the lack of significant differences and no evidence suggestive of attempted simulation represent sufficient evidence to justify the reported conclusion regarding the questioned hand printed entries on item Q1.

Illustration 4 is an enlarged composite of the reverse of item Q1 and the questioned endorsement signature. Illustration 5 is a composite of the questioned endorsement signature (top) with numerous examples of known specimen signatures from the K1 checks seen within Appendix 2. Please note the questioned signature bears smooth line quality affected only by the writing instrument utilized (black ball point). In particular, the two boxed specimens from K1 bear striking consistency with the questioned endorsement signature. While the signature is quite simplistic, the questioned signature is pictorially consistent with the known specimens (including others within K1) and its pictorial consistency would allow one to conclude that, if non-genuine, it was the product of simulation, however there is no evidence of the drawn qualities of an attempted

JOHN PAUL OSBORN
FORENSIC DOCUMENT EXAMINATION

Amanda Shami, AUSA
August 25, 2025, Page 5

**REPORT OF FINDINGS**
Our File:  J-3162

simulation (such as tremulous line quality, lifts of the writing instrument, retouching, etc.).

     In addition to reproductions of the relevant material examined (Appendix 1 and 2) copies of relevant standards (Appendix 3), and the illustrations (Appendix 4), please also find information (both narrative and detailed) regarding the professional qualifications of the undersigned and a list of expert witness appearances during the last several years, all appearing in Appendix 5. The undersigned reserves the right to append to or add to illustrations should testimony be required or requested in this matter.

     Respectfully submitted,

JPO/ms

# Appendix 1
# Reproduction of Documents Bearing
# Questioned Writing

# Appendix Intentionally Omitted

# (To Be Provided in Full to Defense Counsel & Filed with the Court Via the Sealing Portal)

**Appendix 2**
**Reproductions of Documents Bearing**
**Known Writing of**
**Chris Hu**

# Appendix Intentionally Omitted

# (To Be Provided in Full to Defense Counsel & Filed with the Court Via the Sealing Portal)

# Appendix 3
# Standards

Case 1:24-cr-00346-BMC    Document 156-2    Filed 09/02/25    Page 12 of 54 PageID #:
2104
SWGDOC Standard Terminology for Expressing Conclusions of Forensic Document Examiners

**SWGDOC Standard Terminology for Expressing Conclusions of Forensic Document Examiners**

**1. Scope**
1.1 This terminology is intended to assist forensic document examiners in expressing conclusions or opinions based on their examinations.
1.2 The terms in this terminology are based on the report of a committee of the Questioned Document Section of the American Academy of Forensic Science that was adopted as the recommended guidelines in reports and testimony by the Questioned Document Section of the American Academy of Forensic Science and the American Board of Forensic Document Examiners.[1]

**2. Referenced Documents**
2.1 *Standards*
SWGDOC Standard for Scope of Work of Forensic Document Examiners

**3. Significance and Use**
3.1 Document examiners begin examinations from a point of neutrality. There are an infinite number of gradations of opinion toward an identification or toward an elimination. It is in those cases wherein the opinion is less than definite that careful attention is especially needed in the choice of language used to convey the weight of the evidence.
3.2 Common sense dictates that we must limit the terminology we use in expressing our degrees of confidence in the evidence to terms that are readily understandable to those who use our services (including investigators, attorneys, judges, and jury members), as well as to other document examiners. The expressions used to differentiate the gradations of opinions should not be considered as strongly defined "categories". These expressions should be guidelines without sharply defined boundaries.
3.3 When a forensic document examiner chooses to use one of the terms defined below, the listener or reader can assume that this is what the examiner intended the term to mean. To avoid the possibility of misinterpretation of a term where the expert is not present to explain the guidelines in this standard, the appropriate definition(s) could be quoted in or appended to reports.
3.4 The examples are given both in the first person and in third person since both methods of reporting are used by document examiners and since both forms meet the main purpose of the standard, that is, to suggest terminology that is readily understandable. These examples should not be regarded as the only ways to utilize probability statements in reports and testimony. In following any guidelines, the examiner should always bear in mind that sometimes the examination will lead into paths that cannot be anticipated and that no guidelines can cover exactly.
3.5 Although the material that follows deals with handwriting, forensic document examiners may apply this terminology to other examinations within the scope of their work, as described in SWGDOC Standard for Scope of Work of Forensic Document Examiners, and it may be used by forensic examiners in other areas, as appropriate.
3.6 *This standard does not purport to address all of the safety concerns, if any, associated with its use. It is the responsibility of the user of this standard to establish appropriate safety and health practices and determine the applicability of regulatory limitations prior to use.*

**4. Terminology**
4.1 *Recommended Terms:*
**identification (definite conclusion of identity)**—this is the highest degree of confidence expressed by document examiners in handwriting comparisons. The examiner has no reservations whatever, and although prohibited from using the word "fact," the examiner is certain, based on evidence contained in the handwriting, that the writer of the known material actually wrote the writing in question.
*Examples*—It has been concluded that John Doe wrote the questioned material, or it is my opinion [or conclusion] that John Doe of the known material wrote the questioned material.
**strong probability (highly probable, very probable)**—the evidence is very persuasive, yet some critical feature or quality is missing so that an *identification* is not in order; however, the examiner is virtually certain that the questioned and known writings were written by the same individual.
*Examples*—There is *strong probability* that the John Doe of the known material wrote the questioned material, or it is my opinion (or conclusion or determination) that the John Doe of the known material *very probably* wrote the questioned material.
DISCUSSION—Some examiners doubt the desirability of differentiating between strong probability and probable, and certainly they may eliminate this terminology. But those examiners who are trying to encompass the entire "gray scale" of degrees of confidence may wish to use this or a similar term.
**probable**—the evidence contained in the handwriting points rather strongly toward the questioned and known writings having been written by the same individual; however, it falls short of the" virtually certain" degree of confidence.

---

[1] McAlexander T.V., Beck, J., and Dick, R., "The Standardization of Handwriting Opinion Terminology," *Journal of Forensic Science*, Vol 36, No. 2, March 1991, pp. 311–319.

*Examples*—It has been concluded that the John Doe of the known material probably wrote the questioned material, or it is my opinion (or conclusion or determination) that the John Doe of the known material *probably* wrote the questioned material.

**indications (evidence to suggest)**—a body of writing has few features which are of significance for handwriting comparison purposes, but those features are in agreement with another body of writing.

*Examples*—There is evidence which *indicates* (or *suggests*) that the John Doe of the known material may have written the questioned material but the evidence falls far short of that necessary to support a definite conclusion.

DISCUSSION—This is a very weak opinion, and a report may be misinterpreted to be an identification by some readers if the report simply states, "The evidence *indicates* that the John Doe of the known material wrote the questioned material." There should always be additional limiting words or phrases (such as "may have" or "but the evidence is far from conclusive") when this opinion is reported, to ensure that the reader understands that the opinion is weak. Some examiners doubt the desirability of reporting an opinion this vague, and certainly they cannot be criticized if they eliminate this terminology. But those examiners who are trying to encompass the entire "gray scale" of degrees of confidence may wish to use this or a similar term.

**no conclusion (totally inconclusive, indeterminable)**—This is the zero point of the confidence scale. It is used when there are significantly limiting factors, such as disguise in the questioned and/or known writing or a lack of comparable writing, and the examiner does not have even a leaning one way or another. *Examples*—*No conclusion* could be reached as to whether or not the John Doe of the known material wrote the questioned material, or I could not determine whether or not the John Doe of the known material wrote the questioned material.

**indications did not**—this carries the same weight as the indications term that is, it is a very weak opinion.

*Examples*—There is very little significant evidence present in the comparable portions of the questioned and known writings, but that evidence suggest*s* that the John Doe of the known material did not write the questioned material, or I found indication*s* that the John Doe of the known material did no*t* write the questioned material but the evidence is far from conclusive.

See Discussion after indications.

**probably did not**—the evidence points rather strongly against the questioned and known writings having been written by the same individual, but, as in the probable range above, the evidence is not quite up to the "virtually certain" range.

*Examples*—It has been concluded that the John Doe of the known material probably did not write the questioned material, or it is my opinion (or conclusion or determination) that the John Doe of the known material probably did not write the questioned material.

DISCUSSION—Some examiners prefer to state this opinion: "It is unlikely that the John Doe of the known material wrote the questioned material." There is no strong objection to this, as "unlikely" is merely the Anglo-Saxon equivalent of "improbable".

**strong probability did not**—this carries the same weight as strong probability on the identification side of the scale; that is, the examiner is virtually certain that the questioned and known writings were not written by the same individual.

*Examples*—There is strong probability that the John Doe of the known material did not write the questioned material, or in my opinion (or conclusion or determination) it is highly probable that the John Doe of the known material did not write the questioned material.

DISCUSSION—Certainly those examiners who choose to use "unlikely" in place of "probably did not" may wish to use "highly unlikely" here.

**elimination**—this, like the *definite conclusion of identity*, is the highest degree of confidence expressed by the document examiner in handwriting comparisons. By using this expression the examiner denotes no doubt in his opinion that the questioned and known writings were not written by the same individual.

*Examples*—It has been concluded that the John Doe of the known material did not write the questioned material, or it is my opinion (or conclusion or determination) that the John Doe of the known material did not write the questioned material.

DISCUSSION—This is often a very difficult determination to make in handwriting examinations, especially when only requested exemplars are available, and extreme care should be used in arriving at this conclusion.

4.1.1 When the opinion is less than definite, there is usually a necessity for additional comments, consisting of such things as reasons for qualification (if the available evidence allows that determination), suggestions for remedies (if any are known), and any other comments that will shed more light on the report. The report should stand alone with no extra explanations necessary.

4.2 *Deprecated and Discouraged Expressions*:

4.2.1 Several expressions occasionally used by document examiners are troublesome because they may be misinterpreted to imply bias, lack of clarity, or fallaciousness and their use is deprecated. Some of the terms are so blatantly inane (such as "make/no make") that they will not be discussed. The use of others is discouraged because they are incomplete or misused. These expressions include:

**possible/could have**—these terms have no place in expert opinions on handwriting because the examiner's task is to decide to what degree of certainty it can be said that a handwriting sample is by a specific person. If the evidence is so

SWGDOC Standard Terminology for Expressing Conclusions of Forensic Document Examiners

limited or unclear that no definite or qualified opinion can be expressed, then the proper answer is *no conclusion*. To say that the suspect "could have written the material in question" says nothing about probability and is therefore meaningless to the reader or to the court. The examiner should be clear on the different meanings of "possible" and "probable," although they are often used interchangeably in everyday speech.

**consistent with**—there are times when this expression is perfectly appropriate, such as when "evidence consistent with disguise is present" or "evidence consistent with a simulation or tracing is present, but "the known writing is consistent with the questioned writing" has no intelligible meaning.

**could not be identified/cannot identify**—these terms are objectionable not only because they are ambiguous but also because they are biased; they imply that the examiner's task is only to identify the suspect, not to decide whether or not the suspect is the writer. If one of these terms is used, it should always be followed by "or eliminate[d]".

**similarities were noted/differences as well as similarities**— these expressions are meaningless without an explanation as to the extent and significance of the similarities or differences between the known and questioned material. These terms should never be substituted for gradations of opinions.

**cannot be associated/cannot be connected**—these terms are too vague and may be interpreted as reflecting bias as they have no counterpart suggesting that the writer cannot be eliminated either.

**no identification**—this expression could be understood to mean anything from a strong probability that the suspect wrote the questioned writing; to a complete elimination. It is not only confusing but also grammatically incorrect when used informally in sentences such as. "I no identified the writer" or "I made a no ident in this case."

**inconclusive**—this is commonly used synonymously with no conclusion when the examiner is at the zero point on the scale of confidence. A potential problem is that some people understand this term to mean something short of definite (or conclusive), that is, any degree of probability, and the examiner should be aware of this ambiguity.

**positive identification**—This phrase is inappropriate because it seems to suggest that some identifications are more positive than others.

**[strong] reason to believe**—there are too many definitions of *believe* and *belief* that lack certitude. It is more appropriate to testify to our conclusion (or determination or expert opinion) than to our belief, so why use that term in a report?

**qualified identification**—An *identification* is not qualified. However, opinions may be qualified when the evidence falls short of an *identification* or *elimination*.

ANSI/ASB Standard 070, First Edition
2022

# Standard for Examination of Handwritten Items




*This document is copyrighted© by the AAFS Standards Board, LLC. 2022 All rights are reserved.*
*410 North 21st Street, Colorado Springs, CO 80904, www.aafs.org/academy-standards-board.*

ANSI/ASB Standard 070, 1st Ed. 2022

# Standard for Examination of Handwritten Items

ASB Approved April 2022

ANSI Approved October 2022



410 North 21st Street
Colorado Springs, CO 80904

This document may be downloaded from: www.aafs.org/academy-standards-board

*This document is provided by the AAFS Academy Standards Board. Users are permitted to print and download the document and extracts from the document for personal use, however the following actions are prohibited under copyright:*

—— *modifying this document or its related graphics in any way;*

—— *using any illustrations or any graphics separately from any accompanying text; and,*

—— *failing to include an acknowledgment alongside the copied material noting the AAFS Academy Standards Board as the copyright holder and publisher.*

*Users may not reproduce, duplicate, copy, sell, resell, or exploit for any commercial purposes this document or any portion of it. Users may create a hyperlink to www.aafs.org/academy-standards-board to allow persons to download their individual free copy of this document. The hyperlink must not portray AAFS, the AAFS Standards Board, this document, our agents, associates and affiliates in an offensive manner, or be misleading or false. ASB trademarks may not be used as part of a link without written permission from ASB.*

*The AAFS Standards Board retains the sole right to submit this document to any other forum for any purpose.*

*Certain commercial entities, equipment or materials may be identified in this document to describe a procedure or concept adequately. Such identification is not intended to imply recommendations or endorsement by the AAFS or the AAFS Standards Board, nor is it intended to imply that the entities, materials, or equipment are necessarily the best available for the purpose.*

*Proper citation of ASB documents includes the designation, title, edition, and year of publication. (See Annex I, ASB Guide 001)*

*This document is copyrighted© by the AAFS Standards Board, LLC. 2022 All rights are reserved.*
*410 North 21st Street, Colorado Springs, CO 80904, www.aafs.org/academy-standards-board*

ANSI/ASB Standard 070, 1st Ed. 2022

## Foreword

The procedures outlined here are grounded in the generally used body of knowledge and experience in the field of forensic document examination.

The American Academy of Forensic Sciences established the Academy Standards Board (ASB) in 2015 with a vision of safeguarding Justice, Integrity and Fairness through Consensus Based American National Standards. To that end, the ASB develops consensus based forensic standards within a framework accredited by the American National Standards Institute (ANSI), and provides training to support those standards. ASB values integrity, scientific rigor, openness, due process, collaboration, excellence, diversity and inclusion. ASB is dedicated to developing and making freely accessible the highest quality documentary forensic science consensus Standards, Guidelines, Best Practices, and Technical Reports in a wide range of forensic science disciplines as a service to forensic practitioners and the legal system.

This document was revised, prepared, and finalized as a standard by the Forensic Document Examination Consensus Body of the AAFS Standards Board (ASB). It was originally developed by the Scientific Working Group on Forensic Document Examination (SWGDOC). That document was updated by the Forensic Document Examination Committee under the Organization of Scientific Area Committees (OSAC) for Forensic Science, who in turn updated and approved the draft document.

Questions, comments, and suggestions for the improvement of this document can be sent to AAFS-ASB Secretariat, asb@aafs.org or 401 N 21st Street, Colorado Springs, CO 80904.

All hyperlinks and web addresses shown in this document are current as of the publication date of this standard.

ASB procedures are publicly available, free of cost, at www.aafs.org/academy-standards-board.

**Keywords:** *handwriting, forensic document examination.*

ANSI/ASB Standard 070, 1st Ed. 2022

## Table of Contents

1    Scope ........................................................................................................................................ 1

2    Normative References ............................................................................................................ 1

3    Terms and Definitions ............................................................................................................ 1

4    Technical Discussion ............................................................................................................... 1

4.1    Significance and Use ............................................................................................................ 1

4.2    Interferences ........................................................................................................................ 1

5    Equipment and Requirements .............................................................................................. 2

6    Procedure ................................................................................................................................. 2

6.1    General .................................................................................................................................. 2

6.2    Scope of Examination .......................................................................................................... 3

6.3    Examination of the Questioned Writing .............................................................................. 4

6.4    Examination of the Known Writing ..................................................................................... 6

6.5    Comparison of the Bodies of Writing (questioned writing to known writing or exclusively questioned writing) ........................................................................................... 7

6.6    Evaluation of Observations .................................................................................................. 9

6.7    Review of Work .................................................................................................................... 9

6.8    Results ................................................................................................................................... 9

Annex A (informative) Bibliography ............................................................................................ 10

ANSI/ASB Standard 070, 1st Ed. 2022

# Standard for Examination of Handwritten Items

## 1   Scope

This standard provides procedures used by forensic document examiners for examinations and comparisons involving handwritten items. These procedures apply to the examination and comparison of questioned and known items or of exclusively questioned items. The procedures in this standard include evaluation of the sufficiency of the material (questioned, or known, or both) available for examination.

The particular methods employed in a given case depend upon the nature of the material available for examination. This standard might not cover all aspects of unusual or uncommon examinations of handwritten items.

This standard cannot replace the requisite knowledge, skills, or abilities acquired through task-specific education, training, research, and experience.

## 2   Normative References

There are no normative reference documents. Annex A, Bibliography, contains informative references.

## 3   Terms and Definitions

Refer to Section 3 of the *SWGDOC Standard for Examination of Handwritten Items*[a] and Section 3 of the *SWGDOC Standard Terminology Relating to the Examination of Questioned Documents*[b].

## 4   Technical Discussion

### 4.1   Significance and Use

The procedures outlined in Section 6 are grounded in the generally used body of knowledge and experience in the field of forensic document examination. These procedures shall be used by a forensic document examiner trained in the procedures and instruments described in this document.

### 4.2   Interferences

Items submitted for examination may have inherent limitations that can interfere with the procedures in this standard. Limitations should be noted and recorded.

**4.2.1**  Limitations can be due to such factors as the submission of non-original documents, the condition of the items submitted for examination, the quantity, complexity, or comparability of the writing submitted, alphabet, language, or absent or insufficient characteristics. Such features are taken into account in this standard. The effects of prior storage, handling, testing, or chemical

---

[a] Available from: http://www.swgdoc.org/documents/SWGDOC%20Standard%20for%20Examination%20of%20Handwritten%20Items.pdf

[b] Available from: http://www.swgdoc.org/documents/SWGDOC%20Standard%20Terminology%20Relating%20to%20the%20Examination%20of%20Questioned%20Documents.pdf

processing (for example, for latent prints) can interfere with the ability of the examiner to see certain characteristics, or can eradicate writing entirely. Whenever possible, document examinations should be conducted prior to any chemical processing. Items should be handled to avoid compromising subsequent examinations.

Caution should be exercised when evaluating quantity and comparability of known materials collected by a stakeholder.  Stakeholder selected specimens may not reflect a writer's full range of variation.

**4.2.2**  Limitations can be due to unnaturalness of any writings.

Consideration shall be given to the various forms of simulations, imitations, and duplications of handwriting that can be generated by computer and other means.

The drawn nature of many handwritten simulations and tracings can limit their comparability with known writing. It is not always possible to differentiate between handwritten simulations and tracings.

Distorted writing can appear similar to some forms of simulation or tracing, or may be the product of other intrinsic or extrinsic factors.

## 5   Equipment and Requirements

**5.1**   The items in 5.2 through 5.6 are required for forensic document examination of handwritten items. Their use is case specific.

**5.2**   Light source(s) of intensity and appropriate type to allow fine detail to be distinguished shall be used. Light sources include those capable of producing transmitted lighting, oblique lighting, vertical incident lighting, and other alternative lighting and filters.

**5.3**   The examiner shall use necessary magnification that allows pertinent fine detail to be distinguished. Magnification may include low power hand lenses but may require higher magnification such as a stereomicroscope, or digital microscope, with a range of magnification.

**5.4**   Photographic or other imaging equipment for recording observations shall be available. This may include: image capture device(s) capable of resolution to reliably record pertinent details; image output device(s) (for display or hardcopy production) capable of resolution and color balance for the intended purpose(s), and; media and appropriate systems for intermediate storage and archiving of images.

**5.5**   The examiner should utilize other apparatus and software as appropriate.

**5.6**   There shall be adequate time and facilities to complete all applicable procedures.

## 6   Procedure

### 6.1   General

The examiner shall not treat, handle, alter, or mark a document in any way that will affect the examination integrity of the document.

If permission is granted or required by the laboratory to label the document sets, it shall be done in a manner that does not affect the examination integrity of the document.

The examiner shall contemporaneously document the examinations performed, relevant observations, and basis for results, in detail to allow for an internal or external review and assessment of the utilized examination processes by a forensic document examiner. The documentation shall include any relevant information, method(s), interpretation(s), evaluation(s), and conclusion(s), opinion(s), or other finding(s).

At various points in these procedures, a determination that an important character or feature is not present or that an item is lacking in quality, quantity, or comparability can indicate that the examiner should discontinue or limit the procedure(s). It is at the discretion of the examiner to discontinue the procedure at that point and report accordingly or to continue with the applicable procedures to the extent possible. The examiner shall document the reason(s) for such a decision.

NOTE  Although there is some support within forensic disciplines for the evaluation and documentation of the questioned material prior to the evaluation of the known material, there are currently limited studies specific to handwriting examinations that support requiring the evaluation of the questioned material first.

## 6.2    Scope of Examination

**6.2.1**    The examiner shall perform and document all applicable procedures in sections 6.2.2 through 6.2.6. These procedures need not be performed in the order given. Deviations from these procedures shall be documented and justified.

**6.2.2**    The examiner shall determine whether the examination is a comparison of questioned writing to known writing or a comparison of questioned writing to questioned writing.

**6.2.3**    If the scope of the examinations to be undertaken is not clear based upon submission materials or communication(s) with the submitter, the examiner shall endeavor to clarify the examination(s) to be undertaken or question(s) to be evaluated.

**6.2.4**    The examiner shall document the scope of the examinations and comparisons. The scope can be as simple as a statement of the initial relevant question(s) to be answered.

NOTE  The scope may be written as two or more mutually exclusive competing hypotheses and propositions for each set of comparisons. There are typically two competing hypotheses for each set of comparisons; however, sub-hypotheses may also arise.

Commonly encountered hypotheses which, when mutually exclusive, may be combined as competing hypotheses for evaluation, include:

a)    the questioned material was written by the writer of the known material;

b)    the questioned material was written by a random and unspecified writer in a relevant alternative population;

c)    the questioned material was written by another specified writer;

d)    the questioned material was written by the writer of the known material in a distorted manner.

**6.2.5**    The examiner shall analyze the submitted item(s) to determine sufficiency relative to the scope.

**6.2.6**    The examiner shall consider factors that might affect the writing (i.e., unnatural writing, simulation, tracing, reproduction). The examiner may consider information regarding intrinsic or extrinsic factors that might affect the writing.

**6.2.7**    The examiner shall endeavor to avoid exposure to potentially biasing information that is not necessary for evaluation purposes within the examination process.

**6.2.8**    If modification of the original scope is appropriate during the examination (6.3 through 6.6), the examiner shall document the reason and restate the scope. If modifications are made to the scope, the examiner shall reconsider aspects of 6.2.

**6.3    Examination of the Questioned Writing**

**6.3.1**    The examiner shall perform and document all applicable procedures in sections 6.3.2 through 6.3.10. These procedures need not be performed in the order given. Deviations from these procedures shall be documented and justified.

**6.3.2**    The examiner shall determine whether the questioned writing is original writing. If it is not original writing, request the original.

If the original questioned writing is not submitted, the examiner shall evaluate the quality of the submitted reproduction to determine whether the significant details of the writing have been reproduced with sufficient clarity for analysis and comparison purposes and proceed to the extent possible. The degree of limitation will vary depending upon the specifics of the case. If the writing has not been reproduced with sufficient clarity for meaningful analysis or comparison purposes, the examiner shall discontinue these procedures and report accordingly.

NOTE  The absence of original writing does not preclude the examinations in this standard; however, examination of the original writing is preferable. Limitations associated with reproductions can include the inability to detect: guide lines; writing instrument type; direction of stroke; pressure; sequence of strokes; hesitations and stops; indentations; erasures; line quality; and artifacts of cut and paste alterations. The extent of these limitations may vary greatly.

**6.3.3**    The examiner shall examine the questioned writing for characteristics of duplication, such as those of cut and paste manipulation, by electronic or other means.

**6.3.4**    The examiner shall evaluate the questioned writing for the following.

a)    *Type of Writing*—If there is more than one type of writing (hand printing, cursive writing, numerals, symbols, or combinations thereof, and signatures) within the questioned writing, separate the questioned writing into groups of single types of writing.

b)    *Internal Consistency*—If there are inconsistencies within any one of the groups created in a) (for example, suggestive of multiple writers), divide the group(s) into consistent sub-groups.

c)    *Complexity*—Assess the perceived ease or difficulty with which the questioned writing could be simulated by another writer for purposes of determining the suitability of the questioned writing for comparison purposes.  Factors to be considered include speed, skill, style, construction, changes of directions, retracings, pen lifts, level of stylization, and degree of repetitive movements or shapes. This includes the examiner's assessment of overall rarity or generic nature of the characteristics.

ANSI/ASB Standard 070, 1st Ed. 2022

Proceed to 6.3.5 for the questioned writing. If it is sub-divided, proceed for each group or subgroup created.

**6.3.5**    The examiner shall perform an analysis of the questioned writing.

NOTE  Among the features to be considered are elements of the writing such as: abbreviation; alignment; arrangement, formatting, and positioning; capitalization; connectedness and disconnectedness; cross strokes and dots, diacritics and punctuation; direction of strokes; distortion; embellishments; formation; freedom of execution; inconsistencies; legibility; line quality; method of production; pen hold and pen position; overall pressure and patterns of pressure emphasis; proportion; simplification; sister lines; size; skill; slant or slope; spacing; speed; initial, connecting, and terminal strokes; system; tremor; type of writing; and range of variation, both overall and with respect to each of the above features/elements.

**6.3.6**    The examiner shall examine the questioned writing for characteristics indicative of speed of execution.

NOTE  Features that may indicate rapid execution include: varied pen pressure; tapered beginning and ending strokes; and smooth, continuous strokes. Features that may indicate slow execution include: lifts, stops, and hesitations of the writing instrument; patching and retouching; slow, drawn quality of the line; unvaried pressure; and unnatural tremor.

**6.3.7**    The examiner shall determine whether the questioned writing appears to be distorted.

NOTE  Distortion can be attributable to internal or external factors and can be intentional. Features that may indicate distortion include: poor line quality; excessive angularity; unusual overall size; tremor; and wide variation in slant, shapes, spacing, and size.

**6.3.8**    The examiner shall examine the questioned writing for indicia of simulation and tracing. Consideration shall be given to the following:

— if characteristics of slow execution are observed, determine whether these characteristics are specifically indicative of an attempt to simulate or to trace;

   NOTE  Some handwritten simulations and tracings might not display significant characteristics of slow execution (for example, practiced freehand simulations). Simulations and tracings executed in a rapid manner can reflect the preparer's individual writing habits.

— whether guide lines or sister lines are present;

— whether, including the above factors, there is an unnatural similarity between multiple questioned items;

— if indicia of simulation or tracing are found, see 6.5.6 through 6.5.6.1.

**6.3.9**    The examiner shall consider additional features such as date, nature of the substrate, writing instrument, document type, margins, and the area available for writing.

**6.3.10**   If the examination is a comparison of exclusively questioned writing, go to 6.5.

## 6.4  Examination of the Known Writing

**6.4.1**　The examiner shall perform and document all applicable procedures in sections 6.4.2 through 6.4.7. These procedures need not be performed in the order given. Deviations from these procedures shall be documented and justified.

**6.4.2**　For known writing submitted, the examiner shall determine whether the known writing is original writing. If it is not original writing, the examiner may request the original. .

If no original known writing is submitted, the examiner shall evaluate the quality of the submitted reproduction to determine whether the significant details of the writing have been reproduced with sufficient clarity for analysis and comparison purposes and proceed to the extent possible. The degree of limitation will vary depending upon the specifics of the case. If both original and non-original known writings are submitted, the examiner shall evaluate the known writings as a group. If the writing has not been reproduced with sufficient clarity for any analysis or comparison purposes, and neither the original nor better copies are available, the examiner may discontinue these procedures and report accordingly.

NOTE  The absence of original writing does not preclude the examinations in this standard; however, examination of the original writing is preferable. Limitations associated with reproductions can include the inability to detect: guide lines; writing instrument type; direction of stroke; pressure; sequence of strokes; hesitations and stops; indentations; erasures; line quality; and artifacts of cut and paste alterations. The extent of these limitations may vary greatly.

**6.4.3**　The examiner shall evaluate the known writing for the following.

a) *Type of Writing*—If there is more than one type of writing (hand printing, cursive writing, numerals, symbols, or combinations thereof, and signatures) within the known writing, separate the known writing into groups of single types of writing.

b) *Internal Consistency*—If there are unresolved inconsistencies within any of the groups created in 6.4.3 a) (for example, suggestive of multiple writers), contact the submitter for authentication. If any inconsistencies are not resolved to the examiner's satisfaction, discontinue these procedures for the affected group(s), and report accordingly.

c) *Source of Specimens*— Known specimens may include both those written in the normal course of business and those that were written specifically at request for comparison purposes. Known specimens solely collected by a stakeholder may not reflect a writer's full range of variation.

Proceed to 6.4.4 for the known writing. If it is sub-divided, proceed for each group or subgroup created.

**6.4.4**　The examiner shall determine whether any of the known writing appears to be distorted. If it appears to be distorted, the examiner shall determine whether it is possible to establish that the distorted writing is natural writing.

If it is not possible to establish whether apparently distorted writing is natural writing, the examiner shall determine whether the writing is suitable for analysis and comparison and proceed to the extent possible. It should be determined whether additional known writing could be of assistance, and if so, it should be requested. If the available known writing is not suitable for any analysis or comparison, the examiner shall discontinue these procedures and report accordingly.

ANSI/ASB Standard 070, 1st Ed. 2022

**6.4.5**   The examiner shall perform an analysis of the known writing (see Note in 6.3.5).

**6.4.6**   The examiner shall examine the known writing for characteristics indicative of speed of execution (see NOTE in 6.3.6).

**6.4.7**   The examiner shall consider additional features such as date, nature of the substrate, writing instrument, document type, margins, and the area available for writing.

**6.5**   **Comparison of the Bodies of Writing (questioned writing to known writing or exclusively questioned writing)**

**6.5.1**   The examiner shall perform and note all applicable procedures in sections 6.5.2 through 6.5.6.1. These procedures need not be performed in the order given. Deviations from these procedures shall be documented and justified.

**6.5.2**   The examiner shall evaluate the comparability of the bodies of writing.

**6.5.2.1**   Features limiting comparability may include the type of writing, non-contemporaneousness, dissimilarities in text content, capture methods, writing instruments, and writing surfaces. Consideration of factors in 6.5.4 shall be taken into account regardless of whether contemporary writings are available.

NOTE  A lack of contemporaneous writings can hamper the assessment of characteristic dissimilarities. The consideration of the quality of any submitted known writings that are nearest in date to the item(s) in question may indicate if more contemporary writings are needed.

**6.5.2.2**   The evaluation of pictorial images from digitally captured signatures (DCS, also known as electronically captured signatures) generally follows the procedures outlined in this standard. However, the pictorial characteristics of such images may exhibit poor quality and distortion. The examination of the data utilized to create those signatures (i.e., X and Y position of the stylus tip, timing of execution, and exercised Force) may prove useful, but is beyond the scope of this document.

**6.5.2.3**   In questioned to questioned examinations, if the bodies of writing are not comparable, the examiner shall discontinue and report accordingly per laboratory policy. In questioned to known examinations, if the bodies of writing are not comparable, the examiner shall request additional known writing per laboratory policy.

**6.5.2.4**   If contemporaneous writings are requested but not obtained, continue as appropriate.

**6.5.2.5**   If additional known writing is made available, return to 6.4.

**6.5.3**   The examiner shall conduct a side-by-side comparison of comparable portions of the bodies of writing.

NOTE  In some cases, when known writings are submitted from multiple writers, the volume of material may require a methodical assessment of characteristics for comparability, also known as screening. The screening process is used to denote certain significant characteristics that tend to be obvious, particularly uncommon, or in some other way may allow for comparisons of limited characteristics in a timely manner and may include questioned or known material. Once the screening process is complete, the selected items will be fully examined.

**6.5.3.1**  The examiner shall note absent characters relevant to the comparison.

**6.5.3.2**  The examiner shall evaluate the quantity and quality of writing (questioned writing, or known writing, or both) with respect to all of the characteristics (see Note in 6.3.5).

**6.5.4**  If distortion or affects were previously noted in the questioned or known writing, such distortion or affects shall be considered in the comparison process. Factors which might affect writing include age; illness or injury; medication, drugs or alcohol (intoxication or withdrawal); awkward writing position; writing instrument(s); substrate(s); cold or heat; fatigue; haste or carelessness; nervousness; nature of the document, use of the unaccustomed hand; attempts to disguise should be considered.

**6.5.5**  The examiner shall evaluate the significance of dissimilarities and similarities, individually and in combination, with respect to discriminating elements (see Note in 6.3.5.).

NOTE  A dissimilarity is a feature within the questioned writing that is not found in any of the submitted known specimens. The presence of a feature, even in one specimen, constitutes evidence that the feature is within the repertoire of the writer and cannot be assessed as a dissimilarity.  The assessment of a dissimilarity being evidence of a different source (writer) is in large part relative to the confidence level of the assessment that the provided handwriting specimens constitute a comprehensive sample of the writer's full range of variation as opposed to a feature that is not present within the specimen samples. This is a very high level of proof requiring extensive known specimens from multiple sources, over a large timeframe, and with a well-defined and well-established range of variation.

**6.5.6**    If indicia of simulation or tracing are noted in the examination of the questioned writing, the examiner shall determine whether the model(s) is among the submitted writings. The examiner shall individually evaluate the presence of unnatural pictorial similarities in order to determine whether the known writing was used as a model or if two or more questioned writings are simulations or tracings based on a common model. Overlay comparisons have been found to be an effective method of evaluation. If the model(s) is located among the submitted writings, report accordingly. If the model(s) is not located among the submitted writings, a request for additional materials may be appropriate.

NOTE  Tracings can be produced by various techniques, including: direct tracing, where the model is placed behind the target and seen through the target by ambient light; transmitted light tracing, where the model is placed between the target and a light source; or guideline tracing, where an intermediate model, such as an indentation or a carbon, pencil or printed image, is transferred to the target and overwritten following the intermediate model. Tracings might not involve an exact overlay of an entire signature or entry(s). A segmented tracing can result from shifts in the substrate, hesitations during the tracing process, or the use of multiple models in its creation. Distortion due to copying or reproduction of an intermediate model may also preclude an exact overlay.

**6.5.6.1**  The examiner shall evaluate for evidence of exact replication among multiple writings indicative of duplication by electronic or other means.

**6.5.6.2**  The examiner shall evaluate features of the questioned writing that deviate from the characteristics of the purported writer to determine whether they include natural handwriting characteristics of the person making the simulation or tracing.

## 6.6    Evaluation of Observations

The examiner shall consider the results of the above procedures in relation to the scope of examination based on the characteristics, features, or information under observation as interpreted with the knowledge, skills, and abilities acquired through appropriate education, training, and experience.

The examiner shall form a conclusion for each set of comparisons with respect to the results of the above procedures and report accordingly.

The bases and reasons for the conclusion(s) and opinion(s) shall be included in the examiner's documentation. Limitations shall also be documented if present.

## 6.7    Review of Work

The examiner shall review all observations, comparisons, evaluations, and relevant documentation in accordance with applicable standards and policies. The examiner shall consider alternative interpretations.

## 6.8    Results

**6.8.1**    Conclusion(s), or opinion(s), or observation(s) may be reached after following the appropriate procedures outlined in this standard. A conclusion is not based solely upon any one characteristic, but rather on the combination of characteristics within the set of writing in conjunction with any limitations that may be present. The number and nature of the examination results are dependent on the question(s) at hand.

**6.8.2**    Methods of reporting may be dictated by confidentialities, laboratory policy, and rules of procedure.

**6.8.3**    For generally accepted phrases expressing conclusions, refer to professional Forensic Document Examination organizations and published standards.

ANSI/ASB Standard 070, 1st Ed. 2022

## Annex A
(informative)

## Bibliography

The following bibliography is not intended to be an all-inclusive list, review, or endorsement of literature on this topic. The goal of the bibliography is to provide published standards directly used in the preparation of this standard.

1]   SWGDOC *Standard for Examination of Handwritten Items*, 2013.[c]

2]   SWGDOC *Standard Terminology Relating to the Examination of Questioned Documents,* 2013.[3]

---

[c] Available from: http://www.swgdoc.org/index.php/standards/published-standards



Academy Standards Board
410 North 21st Street
Colorado Springs, CO 80904

www.aafs.org/academy-standards-board.

**Appendix 4**
**Illustrations**

**Appendix Intentionally Omitted**

**(To Be Provided in Full to Defense Counsel & Filed with the Court Via the Sealing Portal)**

**Appendix 5
Qualifications of Expert**

# QUALIFICATIONS OF JOHN PAUL OSBORN



John Paul Osborn is a forensic document examiner and maintains an office in Middlesex, New Jersey.  He has been qualified as an expert and has testified about disputed documents on numerous occasions in civil and criminal courts, and before various arbitration associations.

He has studied the leading books on the subject, collected reference materials, conducted experiments, and has worked on a full-time basis in the field since 1982.  This includes the examination of signatures, handwriting, hand printing, fabrication and alteration, inks, paper, writing instruments, as well as many other problems related to documents.  His office office maintains a library of reference material, including current articles and publications on the subject, and has access to thousands of other research articles and texts maintained by professional groups in the field.

Mr. Osborn attended and received a BA from Susquehanna University in Pennsylvania in 1982.  After graduation he began training under the supervision of his late father, Paul A. Osborn, as a member of the now five-generation family practice founded by his great grandfather, Albert S. Osborn in 1910.  Mr. Osborn, in turn trained both Kevin Kulbacki, currently a private practitioner in Chicago, and Kelsey Osborn who represents the fifth generation of the family practicing in the field.

Mr. Osborn is currently a member of the American Academy of Forensic Sciences, the American Society of Questioned Document Examiners (for which he served as President from 2014 through 2016), the Northeastern Association of Forensic Scientists the New Jersey Association for Forensic Scientists and the American Society for Testing and Materials.  He served as a member of the National Institute of Standards and Technology Organization of Area Scientific Committees, as well as the Working Group for Human Factors in Handwriting Examination.  Mr. Osborn was certified by the American Board of Forensic Document Examiners in 1990 and has maintained that status through required recertification during each five-year period since that time.

He maintains the necessary equipment and instruments used in this work, including different types of magnification devices, microscopes, type measuring plates, lighting instruments, projectors, electrostatic detection apparatus, video spectral examination equipment, a variety of photographic devices, as well as other instruments.

Mr. Osborn has been retained by the United States Attorney's Office in the District of NJ and the Eastern & Southern Districts of NY, District Attorneys' Offices in New York State, Prosecutors in New Jersey, the state Attorney General's Offices in both New Jersey and New York, several large corporations, brokerage houses, commodity exchanges, insurance companies and well recognized law firms.  He also has been retained in matters for the Legal Aid Society of New York, St. John's University School of Law Elder Law Clinic, Georgetown University Center for Applied Legal Studies and other non-profit legal service groups and agencies, as well as in cases for criminal defendants funded through the CJA in federal courts.

Mr. Osborn's work has been published in the Journal of Forensic Sciences and he was Editor of the American Society of Questioned Document Examiners Newsletter from 1991 through 1997.  He has given presentations for CLE classes, as well for fraud investigators, insurance, and banking groups. He has also appeared numerous times as a consultant on television programs and documentaries.

# JOHN PAUL OSBORN

**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**

**732-667-5888 (tel), 732-200-3354 (fax)**

**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                              **Page 1 (revised 10/2024)**

**OCCUPATION:**

Forensic Document Examiner

**DUTIES:**

Examination and analysis of documents towards specific problem resolution including handwriting, hand printing, signatures, typewriting, machine printing, machine reproduction, obliteration, alteration, paper (non-chemical examination), ink (non-chemical examination), sequence, physical match and other related evidence. Preparation of verbal and written reports; digital imaging; photography; and preparation of demonstrative court exhibits.  Expert testimony.

**EQUIPMENT/RESEARCH LIBRARY:**

Magnification equipment, including B&L and Olympus stereoscopic microscopes, Pentax macro scopes and a variety of hand held magnifiers; various lighting equipment and light filters; various document measuring devices; Olympus digital camera equipment; Foster & Freeman Electrostatic Detection Apparatus; MiScope digital microscope; Foster & Freeman VSC2000/HR high resolution video spectral comparator; Foster & Freeman CVM2000 compact video microscope; video recording cameras and equipment, computers, Canon ImageClass and LiDE digital imaging equipment and software.

In-office library collection accumulated since the early 1900s of research papers, texts and journals; collection of typeface records and Haas Atlas; ink and paper reference library; domestic and foreign handwriting systems library; access to American Society of Questioned Document Examiners National Library; access to Questioned Document Article Database (in excess of 7,000 articles and research notes)

**PROFESSIONAL PRACTICE:**

The oldest private document examination laboratory in the United States established in 1910 by Albert S. Osborn (d. 1946).  Osborn Associates with Albert D. Osborn (d. 1972), Russell D. Osborn (d. 1994), Frank Murphy (d.) and Paul A. Osborn (d. 2007).  Osborn & Son with Paul A. Osborn (d. 2007), Kevin Kulbacki (2012-2015) and Kelsey Lynn Osborn (2019-present).

**EDUCATION:**

Susquehanna University (Selinsgrove, Pennsylvania) Bachelor of Arts (Communications Department Major) 1982.

**TRAINING:**

Paul A. Osborn, Osborn Associates, initial full-time training period 1982 - 1984

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                             Page 2 (revised 10/2024)

**PROFESSIONAL ORGANIZATION MEMBERSHIPS/CERTIFICATION:**

**Memberships:**
American Academy of Forensic Sciences (AAFS)
    Trainee Affiliate (1984)
    Provisional Member (1987)
    Member (1989).

American Society of Questioned Document Examiners (ASQDE)
    Associate Member (1987)
    Member (1989)
    Life Member (2022).

American Society for Testing and Materials (ASTM), Committee E-30 on Forensic Sciences
    Member (1992).

New Jersey Association of Forensic Scientists (NJAFS)
    Charter Member

**Certification:**
American Board of Forensic Document Examiners (ABFDE)
    Applicant for Certification (1987)
    Certificate of Qualification in Forensic Document Examination (1990)
    Five Year Re-Certifications (1995, 2000, 2005, 2010, 2015, 2020)

**PROFESSIONAL ORGANIZATION POSITIONS:**

American Academy of Forensic Sciences Questioned Documents Section, Discipline Assessment Task Force, Member (1990-1991)

American Board of Forensic Document Examiners, Continuing Education Committee, Northeast Regional Committee Member (1991-1993)

American Society of Questioned Document Examiners, 1992 Annual Meeting Program Chairperson (Milwaukee, WI)

American Society for Testing and Materials, Committee E30 on Forensic Sciences (including the Sub-Committee E30.02 - Questioned Documents) Member (1992 - present)

American Society of Questioned Document Examiners, ASQDE Newsletter Editor (1992 - 1997)

Scientific Working Group for Document Examination Subcommittee for Standard Operating Procedures and Terminology (sponsored by the National Institute of Justice and Federal Bureau of Investigation) Member (1997 - 2000), Interim Chairperson (1999)

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                    Page 3 (revised 10/2024)

American Society of Questioned Document Examiners, Director (1998 - 2000), Treasurer (2000 - 2002), Secretary (2010 – 2012), Vice President (2012 - 2014), President (2014 – 2016)

American Society of Questioned Document Examiners 2023 Annual Meeting Site Chairperson (New York, NY)

National Institute of Standards and Technology, Organization of Scientific Area Committees, Forensic Document Examination Subcommittee Voting Member (term I 2014 – 2019 and term II 2020 - present), Vice Chairperson (2017 - 2019)

National Institute of Standards and Technology, Expert Working Group on Human Factors in Forensic Handwriting Examination Member (2015 – 2018).

**CONTINUING EDUCATION/TRAINING:**

**Professional Organization Sessions:**

American Academy of Forensic Sciences - Various Technical Sessions (beginning in 1983)
American Society of Questioned Document Examiners - Various Technical Sessions (beginning in 1983)
Northeastern Association of Forensic Scientists - Various Technical Sessions (beginning in 1987)
International Association of Forensic Scientists - Various Technical Sessions (1999)

**Seminars and Workshops:**

*"Identification of Electrostatic Copiers"* James H. Kelly, Instructor, Syracuse, NY, October 20-21, 1982 (Sponsored by Northeastern Association of Forensic Scientists)

*"Photocopier Workshop"* James H. Kelly & Diane K. Tolliver, Instructors, Arlington, Virginia, August 27, 1989 (at American Society of Questioned Document Examiners Meeting)

*"Signature Workshop"* James L. Hayes & Howard C. Rile, Presenters, San Jose, California, August 28, 1990 (at American Society of Questioned Document Examiners Meeting)

*"Type Element Workshop (GP Industries)"*, Jeffrey Luber (Suffolk Co. NY Police) Somerville, New Jersey, April 9, 1991 (sponsored by Northeastern Association of Forensic Scientists)

*"Deposition Testimony Workshop"* Prof. Michael Flynn (Nova Law School), Instructor, Lake Buena Vista, Florida, August 4, 1991 (at American Society of Questioned Document Examiners Meeting)

*"Expert Witness Workshop"* Prof. Carol Henderson Garcia (Nova Law School), Instructor, Lake Buena Vista, Florida, August 4, 1991 (at American Society of Questioned Document Examiners Meeting)

*"Eastman Kodak Workshop"* Richard T. McEvoy, Jr. (Eastman Kodak Company), Instructor, Lake Buena Vista,

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                      Page 4 (revised 10/2024)

Florida, August 5, 1991 (at American Society of Questioned Document Examiners Meeting)

*"Signature Comparison Workshop"* Howard C. Rile, Presenter, Lake Buena Vista, Florida, August 7, 1991 (at American Society of Questioned Document Examiners Meeting)

*"Canon Fax Workshop"* Carmello Martinez, Jr. & Charla Wykel (Canon Corporation), Instructors, Lake Buena Vista, Florida, August 8, 1991 (at American Society of Questioned Document Examiners Meeting).

*"Signature Workshop"* Howard C. Rile, Presenter, Milwaukee, Wisconsin, August 24 & 26, 1992 (at American Society of Questioned Document Examiners Meeting).

*"Paper Manufacturing Workshop"*, H.M. Spencer, Co. (dandy roll producer) & Southworth Company (paper manufacturer), Massachussetts, February 16, 1993 (sponsored by American Academy of Forensic Sciences)
*"Physical Match for Document Examiners"* Mark R. Masson (Indiana State Police) & Stephen McKasson (Illinois State Police), Instructors, San Antonio, Texas, February 13-15, 1994 (at American Academy of Forensic Sciences Meeting)

*"Questioned Documents Reference and Typewriter Database"* Dr. Philip D. Bouffard (Lake County Ohio Regional Forensic Lab) & James F. Larner (INS), Instructors, San Antonio, Texas, February 17, 1994 (at American Academy of Forensic Sciences Meeting)

*"Forensic Examination of Counterfeit Documents"* James F. Larner (US Dept. of Justice, INS Laboratory) Instructor, Long Beach California, August 22, 1994 (at American Society of Questioned Document Examiners Meeting).

*"Signature Workshop"* Howard C. Rile, Presenter, Long Beach, California, August 20-23, 1994 (at American Society of Questioned Document Examiners meeting).

"*Desktop Publishing for the Preparation of Court Charts*" Gus Lesnovich, Instructor, New York, New York, October 13, 1994 (at Northeastern Association of Forensic Scientists meeting).

"*Conservation and Preservation Methods of Documents" - Ethical Treatment of Documents"* John Sang, Sang Associates; Dennis Ryan, Nassau Co. Police; Marc Reeves, Conservation Lab, NY Public Library; Anna Stenstrom, Conservation Laboratory, NY Public Library, February 17-18, 1997 (at American Academy of Forensic Sciences Meeting).

"*Handwriting Workshop"* Howard C. Rile and Steve McKasson, Presenters, Indianapolis, Indiana, August 10, 1998 (at American Society of Questioned Document Examiners meeting).

"*Institute for Forensic Imaging (IFI)"* Prof. Barry Bullard, Jack Jacobia and Herb Blitzer, Presenters, Indianapolis, Indiana, August 10, 1998 (at American Society of Questioned Document Examiners meeting).

"*Neuroanatomy and Neurophysiology of Handwriting"* Dr. Jane Paulsen, Presenter, Indianapolis, Indiana, August 11, 1998 (at American Society of Questioned Document Examiners meeting).

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                                              Page 5 (revised 10/2024)

*"Technology and Its Use in Questioned Document Examination"* Grant Sperry, Bob Dartnell, Audrey Giles, Sandy Giles, Jim Hartman and Neil Holland, Instructors, University of California at Los Angeles, August 23, 1999 (at joint meeting of International Association of Forensic Scientists and American Society of Questioned Document Examiners).

*"Digital Print Technologies"* Larry F. Stewart and Richard Outland, Instructors, University of California at Los Angeles, August 24, 1999, (at joint meeting of International Association of Forensic Scientists and American Society of Questioned Document Examiners).

*"Computer Printers - Their Classes, Defects, and Ink Dot Morphology"* Roch Beausoleil, Presenter, Ottawa, Ontario, August 25, 2000 (at American Society of Questioned Document Examiners meeting).

*"An Integrated Approach to Ensuring Reliability of Expert Handwriting Analysis Testimony After Daubert & Kumho Tire"* and *"Practical Supplement"* Mark Bellomy and David Bellomy, Ottawa, Ontario, August 28, 2000 (at American Society of Questioned Document Examiners meeting).

*"Method Validation: Assessment of Handwriting Habits"* Patricia A. Manzolillo, Robert J. Muehlberger, Grant R. Sperry, Richard C. Hanlon Presenters, Des Moines, IA, August 19, 2001 (at American Society of Questioned Document Examiners meeting).

*"Signature Workshop"* Howard C. Rile, Presenter, Des Moines, IA, August 19-21, 2001 (at American Society of Questioned Document Examiners meeting).

*"Print Quality Measurement Workshop"* Asman Arslan, Gazi N. Ali, Prof. George Chiu, Prof. Edward J. Delp, Prof. Jan P. Allebach and Prashat Mehta presenters; Montreal, Quebec, Canada; August 12, 2005 (at American Society of Questioned Document Examiners Meeting).

*"Cedar-Fox Forensic Document Analysis System Workshop"* Dr. Sargur N. Srihari presenter; Montreal, Quebec Canada; August 13, 2005 (at American Society of Questioned Document Examiners Meeting).

*"MS Access for Document Examiners"* Lamar Miller presenter, University of Rhode Island at Kingston, November 8-9, 2005 (at Northeastern Association of Forensic Scientists meeting).

*"Typography for the Forensic Document Examiner"* Peter Tytell presenter, Newport, Rhode Island, November 10, 2005 (at Northeastern Association of Forensic Scientists meeting).

*"Seminar on Foster + Freeman Video Spectral Comparator and Electrostatic Detection Apparatus,"* F. L. "Jim" Lee, Technical Applications Sales Engineer, Instructor, Rye Brook, New York, November 3, 2006 (at Northeastern Association of Forensic Scientists meeting).

*"Business Records Workshop"* Dennis Ryan, David Oleksow, Lloyd Cunningham, Frank Hicks and Howard

## JOHN PAUL OSBORN
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                          Page 6 (revised 10/2024)

Rile presenters; Asheville, NC; August 16, 2008 (American Board of Forensic Document Examiners sponsored workshop)

*"Expert Penman: Empirical Investigations of the Validity of Forensic Handwriting Examiners Opinions on Skilled Simulations,"* Tahnee Dehurst, presenter, Asheville, NC, August 17, 2008 (at American Society of Questioned Document Examiners meeting).

*"Typography – Testing to Testimony,"* William Flynn and Kathleen Annunziata Nicolaides, presenters; Asheville, NC; August 18, 2008 (at American Society of Questioned Document Examiners meeting).

*"Working with Write-On 2 Document Comparison Software,"* Brian Lindblom, presenter; Asheville, NC; August 19, 2008 (at American Society of Questioned Document Examiners meeting).

*"Challenging Signatures Workshop,"* A. Frank Hicks, presenter; Dearborn, MI; August 9, 2009 (at American Society of Questioned Document Examiners meeting).

*"Handwriting of a Homogenous Population,"* Marie Durina, presenter; Dearborn, MI; August 10, 2009 (at American Society of Questioned Document Examiners meeting).

*"The Examination of Documents Produced Using Inkjet Technology – Parts I and II,"* Gerry LaPorte, presenter; Dearborn, MI; August 12, 2009 (at American Society of Questioned Document Examiners meeting).

*"Signature Examination: Translating Basic Science to Practice,"* Prof. Michael Caligiuri, Linton Mohammed presenters; Victoria, BC; August 29, 2010 (at American Society of Questioned Document Examiners / Southwestern Association of Forensic Document Examiners joint meeting).

*"Electronic Recording & Analysis of Handwritten Signatures and Writings,"* Dr. Steven Strach, Nicholas Mettyear, Andrea Devlin, presenters; Victoria, BC; August 31, 2010 (at American Society of Questioned Document Examiners / Southwestern Association of Forensic Document Examiners joint meeting).

*"Challenging Signatures Workshop,"* A. Frank Hicks, Kirsten Singer presenters; Victoria, BC; September 1, 2010 (at American Society of Questioned Document Examiners / Southwestern Association of Forensic Document Examiners joint meeting).

*"Signature Examination Workshop - Complex Issues and Common Problems,"* Dennis Ryan, Dave Oleksow presenters; Philadelphia, PA; August 20, 2011 (sponsored by the American Board of Forensic Document Examiners).

*"Using Adobe Photoshop in a QD Workflow,"* George Reis, presenter; Philadelphia, PA; August 21-22, 2011 (at American Society of Questioned Document Examiners meeting).

*"Printing Process Identification for Forensic Document Examiners,"* Scott Walters, Jeffrey Payne, presenters; Philadelphia, PA; August 24, 2011 (at American Society of Questioned Document Examiners meeting).

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                              Page 7 (revised 10/2024)

*"Managing Human Factors in the Forensic Sciences,"* Scott Shappell, presenter; Charleston, SC; August 19, 2012 (at American Society of Questioned Document Examiners meeting).

*"Kinematic Features of Signature Writing in Persons with Alzheimer's Disease,"* Dr. Michael Caligiuri, Dr. Linton Mohammed, presenters; Charleston, SC; August 22, 2012 (at American Society of Questioned Document Examiners meeting).

*"Measurement Science and Standards in Forensic Handwriting Analysis Conference,"* National Institute of Standards and Technology / United States Department of Commerce; Gaithersburg, MD; June 4-5, 2013

*"Questioned Documents: Conclusion Scales and Logical Inference,"* Brent Ostrum, presenter; Indianapolis, IN; August 25, 2013 (at American Society of Questioned Document Examiners meeting).

*"Forensic Examination of Digital Signatures Workshop,"* William Flynn and Kathleen Annunziata Nicolaides, presenters; Indianapolis, IN; August 27, 2013 (at American Society of Questioned Document Examiners meeting).

*"Challenging Signatures Workshop,"* A. Frank Hicks, presenter; Indianapolis, IN; August 28, 2013 (at American Society of Questioned Document Examiners meeting).

*"Skilled Freehand Signature Simulation Workshop,"* Lloyd Cunningham, Dr. Linton Mohammed, presenters; Honolulu, HI; August 11-12, 2014 (at American Society of Questioned Document Examiners meeting).

*"Adobe, Digital Media & Evidence Workshop,"* John Penn, II, presenter; Honolulu, HI; August 13, 2014 (at American Society of Questioned Document Examiners meeting).

*"Signature and Handwriting Conclusion Terminology and Scales Panel,"* Sandra Ramsey Lines, Tom McAlexander, Ted Burkes, Rigo Vargas, Brent Ostrum, Audrey Giles, Robert Radley, John Welsh, Anna Molin, Wil Fagel, Charles Berger, Abdulaziz Al-Musa Alkahtani, Saqar Alzaabi, Gideon Dabi, Jannie Bester, Linda Liu, Patrick Cheng, Chris Anderson, Steven Strach and Kylie Jones panel members; Honolulu, HI; August 14, 2014 (at American Society of Questioned Document Examiners meeting).

*"Validity, Reliability, Accuracy and Bias in Forensic Signature Identification,"* Dr. Mara L. Merlino and Dr. Tierra M. Freeman, presenters; Honolulu, HI; August 15, 2014 (at American Society of Questioned Document Examiners meeting).

*"Characteristics of Fountain Pen Writing,"* Lloyd W. Cunningham, presenters; Toronto, Ontario, Canada; August 11, 2015 (at American Society of Questioned Document Examiners meeting).

*"Principles of Forensic Examination of Arabic Signatures,"* Mohammed Aloyoni and Dr. Abdulaziz Alkahtani presenters; Toronto, Ontario, Canada; August 12, 2015 (at American Society of Questioned Document Examiners meeting).

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                        **Page 8 (revised 10/2024)**

*"Measuring the Frequency Occurrence of Handwriting and Hand Printing Characteristics,"* Thomas Vastrick, Dr. Mark Johnson, Ellen Schuetzner, Dr. Michele Boulanger; Pensacola Beach, Florida; August 20, 2016 (at American Society of Questioned Document Examiners meeting).

*"Sequence of Entries Determination – New Approach to Additional Print,"* Martina Lunakova, Petra Moracova; Pensacola Beach, FL; August 24, 2016 (at American Society of Questioned Document Examiners meeting).

*"Forensic Science Research: Your Mission to Propose, Innovate and Collaborate,"* Heather Waltke, Gerald LaPorte, Lisa Hanson and Melissa Taylor; San Diego, California; August 28, 2017 (at American Society of Questioned Document Examiners meeting).

*"Chinese Handwriting and Signatures Workshop: Hanzi through the Eyes of the Forensic Document Examiner,"* Chiew Yung Yang and Chin Chin Lim; San Diego, California; August 31, 2017 (at American Society of Questioned Document Examiners meeting).

*"VSC & ESDA Technology: Explaining to the Layperson,"* Jim Lee, San Diego, California; September 1, 2017 (at American Society of Questioned Document Examiners meeting).
*"The Greatest Forger to Ever Get Caught,"* Bill Flynn, George Throckmorton and Steve Mayfield; Park City, Utah; August 19, 2018 (at the joint meeting of American Society of Questioned Document Examiners and Southwestern Association of Forensic Document Examiners).

*"Introduction to Handwriting Features Common to Hispanic Writers of Latin American Origin,"* Manny Gonzales; Park City, Utah; August 21, 2018 (at the joint meeting of American Society of Questioned Document Examiners and Southwestern Association of Forensic Document Examiners).

*"Write-On 3.0 Workshop,"* Brian Lindblom and Pierre Goudreault; Baltimore, MD; February 19, 2019 (at the American Academy of Forensic Sciences meeting).

*"Overview of Digital Examination Techniques and Remote Case Review,"* Lt. Mark Goff; Covid19 Virtual Meeting; August 11, 2020 (at the American Society of Questioned Document Examiners meeting).

*"Opinion Measurement Workshop,"* Prof. Mara Marlino, Veronica Hahir, Charles Edwards, Samiah Ibrahim and Jonathan Jackson Morris; Covid19 Virtual Meeting; August 13, 2020 (at the American Society of Questioned Document Examiners meeting).

*"Complete Introduction to Digitally Captured Signatures,"* Nikolaos Kalantzis; Covid 19 Virtual Meeting, February 15, 2021 (at the American Academy of Forensic Sciences meeting).

*"Demonstrative Evidence in the Courtroom, An evaluation and Discussion of Probative and Prejudicial Characteristics of Demonstrative Visual Aids,"* Prof. Mara Merlino, Tobin Tanaka and Samiah Ibrahim; Covid 19 Virtual Meeting, August 10, 2021 (at the American Society of Questioned Document Examiners meeting).

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                                 Page 9 (revised 10/2024)

*"Pressure Training Calibration Workshop for Digitally Captured Signatures,"* Nikolaos Kalantzis; Covid 19 Virtual Meeting; August 12, 2021 (at the American Society of Questioned Document Examiners meeting).

*"Examination Basics for Adobe PDF Files,"* Brent Ostrum; Covid 19 Virtual Meeting; August 12, 2021 (at the American Society of Questioned Document Examiners meeting).

*"Some Basics on FDE Examination of PDF Documents,"* Joseph Parker and Charlotte Ware, San Antonio, Texas; August 8, 2022 (at the American Society of Questioned Document Examiners 80th Annual Meeting – held jointly with the Southwestern Association of Forensic Document Examiners)

*"Special Topics in QD for the 21st Century,"* Lloyd Cunningham and Dr. Linton Mohammed; San Antonio, Texas; August 9, 2022 (at the American Society of Questioned Document Examiners 80th Annual Meeting – held jointly with the Southwestern Association of Forensic Document Examiners)

*"The Robert Durst Case: Revisiting Myths of Handprinting Examinations,"* Lloyd Cunningham, Dr. Linton Mohammed; San Antonio, Texas; August 10, 2022 (at the American Society of Questioned Document Examiners 80th Annual Meeting – held jointly with the Southwestern Association of Forensic Document Examiners)

*"What Lies Beneath: Peeling Back the Layers on Forensic Document Evidence,"* Roberto King, Richard Wilson and Beth McMurchie; San Antonio, Texas; August 10, 2022 (at the American Society of Questioned Document Examiners 80th Annual Meeting – held jointly with the Southwestern Association of Forensic Document Examiners)

*"Memorabilia, Authentications and the FDE-How do we fit in,"* Grant Sperry, John House and Stephen Rocchi; San Antonio, Texas; August 10, 2022 (at the American Society of Questioned Document Examiners 80th Annual Meeting – held jointly with the Southwestern Association of Forensic Document Examiners)

*"Taking Advantage of DCS Technology & Applying it to Pen and Paper Casework,"* Nikolaos Kalantzis; New York, NY; August 8, 2023 (at the American Society of Questioned Document Examiners 81st Annual Meeting held in John Jay College of Criminal Justice)

*"DCS Visualizations: From Numbers to Images to Numbers Again,"* Nikolaos Kalantzis; New York, NY; August 9, 2023 (at the American Society of Questioned Document Examiners 81st Annual Meeting held in John Jay College of Criminal Justice)

**PUBLICATIONS:**

Osborn, J. P., "*Fraudulent Photocopy of a Promissory Note,*" <u>Journal of Forensic Sciences</u>, JFSCA, Vol. 32, No. 1, Jan. 1987, pp. 282-284.

Osborn, J. P., *"Historical Review on* 'The Relation of Light to the Proof of Documents' *by Albert S. Osborn,"*

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                          Page 10 (revised 10/2024)

<u>Journal of the American Society of Questioned Document Examiners</u>, JASQDE, Vol. 1, No. 2, Dec. 1998, p. 130.

Osborn, J. P., "*Historical Review on* 'The Abuses of Expert Testimony and the Development of the Expert Witness' *and* 'Errors in Verdicts Based on Handwriting Testimony' *by Albert S. Osborn,*" <u>Journal of the American Society of Questioned Document Examiners,</u> JASQDE, Vol. 3, No. 2, December 2000, pages 91 and 95.

Osborn, J. P., *"Historical Review on* 'Questioned Documents' *by Albert S. Osborn and Albert D. Osborn,"* <u>Journal of the American Society of Questioned Document Examiners</u>, JASQDE, Vol. 5, No. 1, June 2002, p.39.

Osborn, J. P. (as Working Group Member), *Forensic Handwriting Examination and Human Factors: Improving the Practice Through a Systems Approach*, The Report of the Expert Working Group for Human Factors in Handwriting Examination, National Institute of Standards and Technology (United States Department of Commerce), 2019.

**RESEARCH and OTHER PAPERS:**

*"Introducing the Brother EP-20*" American Society of Questioned Document Examiners Annual Meeting, Crystal Bay, Nevada, September 11-15, 1983

*"Questioned Document Examiners in re: State of New Jersey vs. Bruno Richard Hauptmann"* (Co-Authored with P.A. Osborn) American Academy of Forensic Sciences Annual Meeting, Anaheim, California, February 21-25, 1984

*"Writing Instruments' Effects on Traced Signatures*"
American Society of Questioned Document Examiners Annual Meeting, Nashville, Tennessee, May 20-24, 1984

*"Fraudulent Photocopy: On Another Silver Platter*"
American Academy of Forensic Sciences Annual Meeting, New Orleans, Louisiana, February 10-15, 1986

*"Prioritizing and Implementing a Computer Filing Data Base for the Private Practice Document Examiner"*
American Academy of Forensic Sciences Annual Meeting, San Diego, California, February 16-21, 1987

*"A Study of Gasoline Credit Card Receipt Signatures Affected By Adverse Conditions"*
American Academy of Forensic Sciences Annual Meeting, Philadelphia, Pennsylvania, February 15-20, 1988
*"Problem of Proof: Transfer of Impressions from Carbon Paper*"
American Society of Questioned Document Examiners Annual Meeting, Washington, D.C., August 26-30, 1989

*"Unexplainable Variations in Signatures"* (Co-Authored with P.A. Osborn)
American Society of Questioned Document Examiners Annual Meeting, San Jose, California, August 25-29, 1990

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                           **Page 11 (revised 10/2024)**

*"When Qualified Document Examiners Disagree"* (Co-Authored with Gregory McNally)
American Society of Questioned Document Examiners Annual Meeting, Long Beach, California, August 20-24, 1994.

*"State of New York v Sante Kimes and Kenneth Kimes - The Role of Forensic Document Examination in a Murder Case,"* American Society of Questioned Document Examiners Annual Meeting, Montreal, Quebec, Canada, August 11-16, 2005.

*"Archiving Cases Digitally in a Small Private Practice,"* American Society of Questioned Document Examiners Annual Meeting, Asheville, NC, August 16-21, 2008.

*"Two Case Studies on Problems of Document Alteration,"* American Society of Questioned Document Examiners / Southwestern Association of Forensic Document Examiners joint annual meeting, Victoria, British Columbia, Canada, August 28 – September 2, 2010.

*"Forensic Document Examination: A Brief History,"* Measurement Science and Standards in Forensic Handwriting Analysis Conference, Gaithersburg, MD, June 4-5, 2013.

*"The Effect of Limiting Factors on the Application of Standards for Conclusion Terminology"* (Co-Presented with Kelsey L. Osborn) American Society of Questioned Document Examiners, Atlanta, Georgia August 25th – 28th, 2024.

**PANELS**

Panel Member *"Roundtable Discussion: US v. Starzecpyzel"* (jointly presented with Gus Lesnevich) Northeastern Association of Forensic Scientists, Mystic, Connecticut, October 25-28, 1995.

Panel Member *"Ethical Practice in the Forensic Science"* (Paul A. Osborn, Moderator) American Academy of Forensic Sciences, 49th Annual Meeting, New York, NY, February 17-22, 1997.

Panel Member *"Body of Evidence: How Criminal Defendants' Bodies Become Part of the Evidence at Trial,"* New York City Bar Center for Continuing Legal Education, New York, NY, September 10th, 2007.

Presenter and Moderator *"Almeciga v. Center for Investigative Reporting,"* American Society of Questioned Document Examiners meeting; Pensacola, Florida; August 23, 2016.

Panel Member *Human Factors in Handwriting Examination,"* joint meeting of American Society of Questioned Document Examiners and Southwestern Association of Forensic Document Examiners; Park City, Utah; August 22, 2018.

**INSTRUCTION/LECTURES:**

Lecturer *Forensic Document Examination: Fundamentals of Submitting Writing Problems to the Examiner*,

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                  Page 12 (revised 10/2024)

New York County District Attorney's Office Continuing Legal Education Lecture Series, New York, NY, November 8, 2006.

Lecturer *Forensic Document Examination: Special Capabilities and Instrumentation*, New York County District Attorney's Office Continuing Legal Education Lecture Series, New York, NY, January 17, 2007.

Co-Lecturer (with Peter V. Tytell) *Forensic Document Examination: Mechanically Produced Document Examination*, New York County District Attorney's Office Continuing Legal Education Lecture Series, New York, NY, May 2, 2007.

Training supervisor for forensic document examiner trainee *Kevin P. Kulbacki*, June 2012 – June 2014 (Mr. Kulbacki, successfully completed certification testing with the American Board of Forensic Document Examiners and was granted certification in August of 2015, thereafter accepting positions with the South Carolina State Law Enforcement Division and then the Internal Revenue Service. Mr. Kulbacki is currently in private practice with his firm KDX Forensic Consulting in Chicago, IL.

Lecturer *Forensic Examination of Signatures*, Union County Board of Elections, Elizabeth, NJ, August 20, 2015.

Lecturer *Forensic Document Examination*, New Jersey Bar Association, White Collar Crime Sub-Committee of the Criminal Law Section, New Brunswick, NJ, February 3, 2016.

Lecturer *Introduction to Forensic Science: Forensic Document Examination*, Virtual Presentation at the University of Central Oklahoma Forensic Science Institute (2020, 2021, 2022).

Lecturer *Introduction to Forensic Science FRSC 201 (Dr. David Fisher)*, New Jersey Institute of Technology; Newark, NJ; (2019, 2021, 2023 and on-site class visit 2023).

Training supervisor for forensic document examiner trainee *Kelsey Lynn Osborn*, June 2019 – present (Ms. Osborn is a 2019 BS degree conferee in Forensic Science and BA degree conferee in English from the University of Central Oklahoma). Ms. Osborn completed her required 24 month training period and is currently seeking certification.

Lecturer *When Are Expressions of Certainty Appropriate in the Elimination of a Signatory*, Clue4 Evidence Foundation of India, Covid19 Virtual Lecture, May 23, 2020.

Adjunct Instructor, *Introduction to Forensic Document Examination* (undergraduate elective), New Jersey Institute of Technology Forensic Science Department, Fall Semester 2024.

**PROFICIENCY TESTING:**

Collaborative Testing Services – Forensics Proficiency Testing – 524 Handwriting Examination (2021), U9454A Handwriting Examination – Digital (2022), 23-245 Handwriting Examination (2023).

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

<u>**DETAILED RESUME**</u>                                          Page 13 (revised 10/2024)

**OTHER RELATED EXPERIENCE and SERVICE:**

New Jersey Supreme Court, Office of Attorney Ethics, District VIII (Middlesex County, NJ) Public Member (non-attorney) 2018 – 2022, 2023 - Present

**INSTRUCTION/GENERAL EDUCATION/CONSULTATION/BROADCAST APPEARANCE:**

Chase Manhattan Bank (Teller Supervisors Seminar)
Brooklyn (Kings County, NY) Bar Association
New York State Association of Insurance Fraud Investigators
Queens County (NY) Bar Association Forensics Fair
Eastern Claims Conference Fraud and Death Claims Panel
The Family Historian (local access cable program, Northern NJ)
Good Morning America ABC
Dateline NBC NBC
48 Hours CBS
48 Hours Mystery CBS
"Brooklyn DA" CBS
The Montel Williams Show WB
"Jinx – The Life and Deaths of Robert Durst" (2015 documentary directed by Andrew Jarecki for HBO)
Susquehanna University (visiting alumni presenter)
Montclair High School Adult School (NJ)
High School for Legal Studies (NYC) Career Fair
Wilson Area High School Forensic Science Club (PA)
South Plainfield High School Forensic Science Classes (NJ)
Dunellen High School Forensic Science Classes (NJ)
Rutgers Preparatory School Forensic Science Classes (NJ)
West Caldwell High School Forensic Science Classes (NJ)

**COURT QUALIFICATIONS and EXPERT TESTIMONY EXPERIENCE:**

NEW YORK:
Bronx County Housing Court
Kings County Family Court (Brooklyn)
Kings County Surrogate's Court (Brooklyn)
Kings County Landlord Tenant Court (Brooklyn)
Kings County Civil Court (Brooklyn)
Kings County Criminal Court (Brooklyn)
Kings County Grand Jury (Brooklyn)
Mount Vernon Civil Court
Nassau County Surrogate's Court (Mineola)
New York County Civil Court (Manhattan)
New York Supreme Court (Bronx)
New York County Criminal Court (Manhattan)

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

**DETAILED RESUME**                                      Page 14 (revised 10/2024)

New York State Worker's Compensation Board (Binghamton)
New York Supreme Court (Brooklyn)
New York City Department of Housing Preservation and Development Hearing Room
New York County Landlord Tenant Court (Brooklyn)
New York Family Court (Manhattan)
New York Supreme Court (Manhattan)
New York City Office of Administrative Trials & Hearings
New York County Surrogate's Court
New York County Grand Jury (Manhattan)
Queens County Criminal Court (Kew Gardens)
Queens County Surrogates Court (Kew Gardens)
Rensselaer County Criminal Court (Grand Jury)
Richmond County Surrogate's Court (Staten Island)
Village of Scarsdale Criminal Court
Suffolk County Civil Court (Riverhead)
Suffolk County Grand Jury (East Islip)
Suffolk County Criminal Court (Central Islip)
Westchester County Criminal Court (White Plains)

NEW JERSEY:
Jersey City Municipal Court
Mercer County Surrogates Court (Trenton)
Newark Office of Administrative Law
New Jersey Superior Court (Flemington)
New Jersey Superior Court (Hackensack)
New Jersey Superior Court (Freehold)
New Jersey Superior Court (Morristown)
New Jersey Superior Court (Mount Holly)
New Jersey Superior Court (Newark)
New Jersey Superior Court (New Brunswick)
New Jersey Superior Court (Somerville)
New Jersey Superior Court (Belvidere)
New Jersey Superior Court (Jersey City)
New Jersey Superior Court (Atlantic City)
New Jersey Superior Court (Elizabeth)
Office of Attorney Ethics (Newark)

CONNECTICUT:
Westport Probate Court

CALIFORNIA:
California Superior Court, Contra Costa County (Martinez)

FEDERAL:

**JOHN PAUL OSBORN**
**1273 Bound Brook Road, Suite 15, Middlesex, NJ 08846**
**732-667-5888 (tel), 732-200-3354 (fax)**
**JPOSBORN@aol.com (email), www.osbornandson.com (website)**

**DETAILED RESUME**                                    **Page 15 (revised 10/2024)**

United States Federal Court, Southern Dist. of NY (Criminal Part Manhattan)
United States Federal Court, Southern Dist. of NY (Civil Part Manhattan)
United States Federal Court, Eastern District of New York (Criminal Parts Brooklyn, Uniondale and Hauppauge)
United States Federal Court, District of New Jersey (Criminal Parts Newark and Camden, Civil and Criminal Parts in Trenton)
United States Federal Court, Northern District of Illinois, Eastern Division (Civil Part Chicago)
United States Federal Court, Central District of California (Criminal Part Los Angeles)

INTERNATIONAL:
Ontario Superior Court (Ottawa, Ontario, Canada)
High Court of Justice (Republic of Trinidad and Tobago)

ARBITRATION:
American Arbitration Association (New York)
American Arbitration Association (Philadelphia)
Office of Impartial Chairman, Hotel Trades Industry of New York
American Stock Exchange
New York Stock Exchange
National Association of Security Dealers (New York)
National Association of Security Dealers (Southfield, MI)
Financial Industry Regulatory Authority (Boca Raton, FL)

## 7 YEAR LIST OF EXPERT WITNESS APPEARANCES – JOHN PAUL OSBORN

| Title | FileNumber | Contact | Firm | Court | Location | Judge | TestimonyDate |
|---|---|---|---|---|---|---|---|
| Gerasimov v. Westoil, Ltd., et al. (Index No. 18017/2014, NY Supreme Court, Kings County) | J-2633 | Ralph Carter, Esq. | Duane Morris, LLP | Deposition | Duane Morris 1540 Broadway, New York, NY | Deposition by Michael A. Drobenare, Esq. | 1/11/2018 |
| HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corp., Mortgage Asset-Backed Pass-Through Certificates Series 2007-AR6 v ASHOK M. PATEL, et al. (Docket No F-01269-10, NJ Superior Court, Middlesex County) | J-2531 | Lawrence W. Luttrell, Esq. | Law Offices of Lawrence William Luttrell | NJ Superior Court, Chancery Div. Middlesex County | 56 Paterson Street, Courtroom #404 New Brunswick, NJ | Hon. Arthur Bergman | 2/8/2018 |
| 274 MADISON COMPANY, LLC v CAAM, LLC; CRAIG ANTELL, DO, PC; CRAIG ANDREW MARCUS, et al. v CRAIG ANTELL, et al. (Index No 652506/2013, NY Supreme Court, NY County) | J-2770 | Nicole A. Sullivan, Esq. | White & Williams, LLP | Examination by Bret I. Herman, Esq. with Jed R. Schlacter, Esq. | Veritext 1250 Broadway, New York, NY | Deposition | 10/24/2018 |
| INDRA JAIKARAN and SHANTAL JAIKARAN v JMMB (T&T) LIMITED (formerly INTERCOMMERICAL BANK LIMITED) and JMMB BANK (T&T) LIMITED v CYNTHIA JAIKARAN Administratrix ad litem of the Estate of Mohan Jaikaran, deceased (CV 2017-02452) | J-2684 | Ernest Koylass, SC | Ernest H. Koylass & Co. | High Court of Justice, The Republic of Trinidad and Tobago | Knox Street, Port of Spain, Trinidad | Honourable Madam Justice J. Wilson | 12/6/2018 |
| CREDIT BUREAU OF NEW YORK, INC. v RAPID REALTY 95, INC., MARIA GABRIELA FALQUEZ and FOTIUS EUGENIS aka FOTIOS EUGENIS, aka FRANK EUGENIS (Index No. 21443/12, Kings County, NY) | J-2418 | Troy D. Lipp, Esq | Cuddy & Feder LLP | New York Supreme Court | Courtroom 574 360 Adams Street Brooklyn, NY 11201 | Hon. Karen B. Rothenberg | 1/7/2019 |

| 7 YEAR LIST OF EXPERT WITNESS APPEARANCES – JOHN PAUL OSBORN | | | | | | | |
|---|---|---|---|---|---|---|---|
| Title | FileNumber | Contact | Firm | Court | Location | Judge | TestimonyDate |
| UNITED STATES v JOAQUIN ARCHIVALDO GUZMAN LOERA (Docket CR 09-0466, USDC EDNY) | J-2810 | Gina M. Parlovecchio, AUSA | United States Attorney's Office (EDNY) | USDC-EDNY | 225 Cadman Plaza East Brooklyn, NY | Brian M. Cogan | 1/24/2019 |
| KARLA BARNABAS and CARLOS McKENZIE v ZACHERY BOODOO | J-2685 | Linda S. Agnew, Esq. | Jaspan Schlesinger, LLP | NY Supreme Court, Kings County | 360 Adams Street, Court 461 Brooklyn, NY | Hon. Katherine A. Levine | 3/11/2019 |
| ESTATE OF PATRICIA E. SLAGADA (Docket No. 252-241, NJ Superior Court, Middlesex County) | J-2742 | Avrin Slatkin, Esq. | Biebelberg & Martin | Wilentz, Goldman & Spitzer, PA Alternative Dispute Resolution | 90 Woodbridge Center Dr., Suite 900 Woodbridge, NJ | Hon. Frank M. Ciuffani (retired), Arbitrator | 4/2/2019 |
| PEOPLE v JEFFERY SENGER (Indictment 1058/2018, NY Supreme Court, Queens County) | J-2868 | Jesse Kropf, Staff Attorney | The Legal Aid Society | NY Supreme Court, Queens County | Queens County Criminal Courthouse 125-01 Queens Boulevard, K-24, Queens, NY | Hon. Gene R. Lopez | 10/22/2019 |
| NYCTL 2013-A TRUST and THE BANK OF NEW YORK MELLON v JOSEPH ZUCCARO, NYC PARKING VIOLATIONS BUREAU, NYC ENVIRONMENTAL CONTROL BOARD and CARBUSTERS AUTO RECYCLING - FLEX NYC, LLC (Int. Def) (Index No. 503793/2014, NY Supreme Court, Kings County) | J-2873 | Grail A. Moore, Esq. | Butler, Fitzgerald, Fiveson & McCarthy, P.C. | Traverse Hearing at NY Supreme Court, Kings County | 360 Adams Street, Courtroom 256, Brooklyn, NY | Referee Miriam Sunshine | 1/13/2020 |

**7 YEAR LIST OF EXPERT WITNESS APPEARANCES – JOHN PAUL OSBORN**

| Title | FileNumber | Contact | Firm | Court | Location | Judge | TestimonyDate |
|---|---|---|---|---|---|---|---|
| CHRISTOPHER J. MORGAN v AEGIS CAPITAL CORP. Robert Eide, ET AL. (FINRA Arbitration No.: 19-00200, NYC) | J-2883 | Iciss R. Tillis | Jackson Lewis P.C. | FINRA Arbitration Office | 165 Broadway, 27th Floor New York, NY | Francis Carling, Chairman; Elise Strauss, Arbitrator; Michael Davies; Arbitrator | 1/29/2020 |
| STATE OF NJ v Adison Trigueno (Ind. No. 15-05-00645-I, Superior Court NJ, County of Middlesex) | J-2580 | Christie L. Bevacqua, Dep. First Asst. Prosecutor | Middlesex County Prosecutors Office | NJ Superior Court, Middlesex County (original testimony 1/12/2018, this was a retrial) | 56 Paterson Street Courtroom 506 New Brunswick, NJ | Joseph L. Rea | 2/11/2020 |
| ESTATE OF MARCIANA IGLESIAS (Docket No. 19-16226-00001, Superior Court of NJ, Somerset County) | J-2892 | Mark K. Silver, Esq. | Coughlin Duffy, LLP | NJ Superior Court, Somerset County | 50 Bridge Street, Somerville, NJ - 4th Floor, Courtroom 2 | Hon. Margaret Goodzeit | 9/29/2020 |
| PEOPLE v MENIQUE LASHON (Docket No. 5-181410-2, Contra Costa County, CA) | J-2957 | Jermel Thomas, Deputy Public Defender | Contra Costa County Public Defender's Office | Virtual Testimony - California Superior Court, Contra Costa County | A.F. Bray Courthouse 1020 Ward Street Martinez, CA 94553 | Hon. Terri Mockler | 5/24/2021 |

| 7 YEAR LIST OF EXPERT WITNESS APPEARANCES – JOHN PAUL OSBORN | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Title** | **FileNumber** | **Contact** | **Firm** | **Court** | **Location** | **Judge** | **TestimonyDate** |
| ESTATE OF ALLAN D. YORKOWITZ (Docket No 265728, NJ Superior Court, Middlesex County) | J-2860 | David B. Foltz, Esq. | Buttermore and Foltz | NJ Superior Court, Middlesex County | 56 Paterson Street, Courtroom 104 New Brunswick, NJ | Roger W. Daley | 7/20/2021 |
| ESTATE OF FRANK KIMMISH (Docket 321932, NJ Superior Court, Hudson County) | J-3011 | Peter R. Bray, Esq. | Bray & Bray, LLC | NJ Superior Court, Hudson County | 583 Newark Avenue Jersey City, NJ (virtual appearance) | Hon. Mary K. Costello | 7/21/2022 |
| ESTATE OF LYNDA NATHANSON SUTTON (Docket 127920, NJ Superior Court, Atlantic County) | J-2977 | Michael D. Weinraub, Esq. | Michael D. Weinraub, PC | NJ Superior Court, Atlantic County | 1201 Bacharach Blvd., 3rd Floor, Atlantic City, NJ | M. Susan Sheppard | 8/31/2022 |
| 150-170 MAIN STREET HACKENSACK, LLC and JVS&T INVESTMENT, LLC v SHERGOH ALKILANI (Docket No. BER-C-179-19, NJ Superior Court, Bergen County) | J-2904 | Marc D'Angiolillo, Esq. | Riker Danzig Scherer Hyland & Perretti, LLP | Riker Danzig Scherer Hyland & Perretti, LLP | 1 Speedwell Avenue, Morristown, NJ | Deposition | 1/19/2023 |
| UNITED STATES OF AMERICA v JAMES B. NUTTER & COMPANY (Civil Case No. 20-cv-00874-RK, USDC Western District of Missouri, Western Div.) | J-3070 | Brian D. Frey, Esq. | Alston & Bird, LLP | Deposition | Alston & Bird 950 F Street NW Washington, DC | | 9/29/2023 |
| MARISSA WILEY v REGEIS CARE CENTER, ET AL. (Index No. 808314/2021E, NY Supreme Court, Bronx County) | J-3075 | Julie A. Mickiewicz, Esq. | Kaufman Borgeest & Ryan, LLP | NY Supreme Court, Bronx County | Grand Concourse Bronx, NY | Hon. Joseph E. Capella | 10/23/2023 |

| 7 YEAR LIST OF EXPERT WITNESS APPEARANCES – JOHN PAUL OSBORN | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Title** | **FileNumber** | **Contact** | **Firm** | **Court** | **Location** | **Judge** | **TestimonyDate** |
| ESTATE OF ROMAN BLUM (File Nos. 2012-29, 2012-29/D, 2012-29/J; NY Surrogate's Court, Richmond County) | J-3040 | John A. Passarello, Jr., Esq., Counsel to the Public Administrator | Law Office of John A. Passarello, Jr., Esq. | Richmond County Surrogate's Court Courtroom 202 | 18 Richmond Terrace, Staten Island, NY | Hon Matthew J. Titone | 2/5/2024 |
| J. EMMITT MURPHY v WESTCHESTER COUNTY BOARD OF ELECTIONS and WILLIAM O. WAGSTAFF III (Index No NY Supreme Court, Westchester County | J-3108 | Martin E. Connor, Esq. | Law Offices of Martin E. Connor | NY Supreme Court, Westchester County | 111 Dr. Martin Luther King Blvd., 16th Floor, White Plains NY | Hon. Paul I Marx | 4/23/2024 |
| JOHN I. MALIK v Deccan Value LLC, Deccan Value Investors GP LLC, Deccan Value Investors LP and Vinit Bodas (Docket No. FST-CV-21-6049964-S, CT Superior Court, JD of Stamford/Norwalk at Stamford) | J-3059 | Daniel L. Schwartz, Esq. | Day Pitney, LLP | Deposition conducted virtually by James Nealon (Plaintiff's Counsel) | Virtual | Deposition | 5/22/2024 |
| Riverside Auto Sales Co. v. Jamil Basuf (Docket No.: PAS-C-92-23, NJ Superior Court, Passaic County) | J-3093 | Franklin G. Soto, Esq. | Bastarrika, Soto, Gonzalez & Somohano, LLP | NJ Superior Court, Passaic County | Passaic County Historic Courthouse 71 Hamilton Street, 1st Floor Paterson, NJ | Hon. Frank Covello | 7/24/2024 |
| CHARLES K. GEYER, GFTA LLC and CCLLGG LLC v CHARLES W. GEYER, ARLYNE D. GEYER, DEBRA A GOLDBERG, et al. (MRS-C-93-20, NJ Superior Court, Morris County) | J-2927 | John T. Ambrosio, Esq. John T. Ambrosio, Esq. | AMBROSIO & ASSOCIATES, LLC | Superior Court of NJ, Morris County | 56 Court Street, Courtroom C-151, Morristown, NJ | Hon. Stephan C. Hansbury | 11/18/2024 |

| 7 YEAR LIST OF EXPERT WITNESS APPEARANCES – JOHN PAUL OSBORN | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Title** | **FileNumber** | **Contact** | **Firm** | **Court** | **Location** | **Judge** | **TestimonyDate** |
| Mohammed J. Uddin v. Nasim Uddin (Docket PAS C 110-22, NJ Superior Court, Passaic County) | J-3095 | Charles E. Tempio, Esq. | Law Office of Charles E. Tempio, LLC | Arbitration | Mecca Law Firm, 87 S Farview Avenue, Paramus, NJ 07652 | Arbitrator Hon. Daniel P. Mecca, JSC (Ret.) | 2/14/2025 |
| ESTATE OF ROBERT MARSHALL (Docket No. BER-P-226-24, NJ Superior Court, Bergen County) | J-3139 | Christopher McEvilley, Esq. | Law Offices of Christopher McEvilley | NJ Superior Court, Bergen County (Chancery) | 10 Main Street, Courtroom 421, Hackensack, NJ | Hon. Nicholas Ostuni | 4/15/2025 |