

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| AFM:AAS/RMP/ADR/AS<br>F. #2021R00600 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

September 25, 2025

By ECF
The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Linda Sun, et al.
       Criminal Docket No. 24-346 (S-3) (BMC)

Dear Judge Cogan:

  The government respectfully submits this motion to quash four improper trial subpoenas issued on behalf of the defense in this matter on September 18, 2025 (the "Challenged Subpoenas"). As described further below, the Challenged Subpoenas fail to comply with the provisions of Rule 17(c) and the pertinent case law. The government requests that the Court quash the Challenged Subpoenas and further requests that the Court compel the defendant to provide the government and the Court with (i) a full accounting of any other Rule 17(c) subpoenas served in the case and (ii) a copy of any materials received in response to Rule 17(c) subpoenas.

 I. Background

  On September 23 and 24, 2025, outside counsel for the New York State Executive Chamber ("Executive Chamber") alerted the government to the Challenged Subpoenas, all dated September 18, 2025. The Challenged Subpoenas, attached hereto as Exhibits A through D (filed via the sealing portal), are directed to the Executive Chamber, the New York State Office of General Services, the New York State Department of Financial Services, and Empire State Development. All returns for the Challenged Subpoenas are to be provided to the address of counsel for Linda Sun by September 30, 2025. None of the Challenged Subpoenas appear signed or "so ordered" by Your Honor; rather, they were signed by a clerk or deputy clerk of the U.S. District Court.

  The Challenged Subpoenas each seek disclosure of broad swathes of information. The most comprehensive of these requests is found in the subpoena to the Executive Chamber, *see* Exhibit A, which seeks in relevant part:

  A. For the period from January 1, 2007, through the present . . . :

1. Copies of documents or communications *(e.g.*, official schedules, logs, notes, or journals) concerning or reflecting any meetings between the Governor of the State of New York (the "Governor") and any official representative of:
    a. the People's Republic of China ("PRC");
    b. Taiwan; and/or
    c. the Taipei Economic and Cultural Representative Office ("TECRO"); and/or
    d. Taipei Economic and Cultural Offices ("TECOs").
2. Copies of documents or communications *(e.g.*, official schedules, logs, notes, or journals) concerning or reflecting any meetings between the Lieutenant Governor of the State of New York (the "Lieutenant Governor") and any official representative of:
    a. the PRC;
    b. Taiwan;
    c. TECRO; and/or
    d. TECOs.
3. Copies of documents or communications *(e.g.*, official schedules, logs, notes, or journals) concerning or reflecting meetings or other interactions between personnel in the [Executive Chamber] and members or representatives of the Consulate General of China in New York (the "PRC Consulate").
4. Copies of proclamations, letters, speeches, statements, and/or video messages issued by or on behalf of the Governor, Lieutenant Governor, or the Executive Chamber in connection with the Lunar New Year.
5. Copies of proclamations, letters, speeches, statements, and/or video messages issued by or on behalf of the Governor, Lieutenant Governor, or the Executive Chamber regarding the Uyghurs or their treatment by the PRC.

B. For the period from January 1 2015, through January 1, 2024 (the "First Charged Period") . . . :
1. Copies of any written policies, rules, or guidance in force at any time during the First Charged Period regarding any requirements or process for the following:
    a. Obtaining, providing, and/or presenting proclamations issued by or on behalf of the Executive Chamber;
    b. Obtaining, providing, and/or presenting letters on behalf of the Executive Chamber inviting foreign persons to visit or attend events in the State of New York; and/or
    c. Signing, stamping, and/or authorizing documents on behalf of the Governor of the State of New York by Executive Chamber personnel.
2. Copies of any written policies, rules, or guidance in force at any time during the First Charged Period regarding Whether or when to meet with representatives of the following:
    a. the PRC;

2

      b. Taiwan;
      c. TECRO or TECOs; and/or
      d. members or representatives of so-called "hometown associations" or other community organizations advocating trade or cultural ties with foreign entities or territories, including, but not limited to, [Association-1], Inc. (collectively, "Foreign Community Groups").

3. Copies of written policies, rules, or guidance in force at any time during the First Charged Period setting forth any position taken by or policy of the Executive Chamber regarding the following:
   a. relations with consulate offices or embassies of foreign nations;
   b. relations with the PRC; and/or
   c. regarding relations with Taiwan.
4. Copies of documents or communications concerning scheduling, planning, invitations, or attendee information for a conference call held on March 16, 2020, beginning at 6:30 PM, which was to address the health response to the COVID-19 pandemic and New York State's response to rising hate crimes against Asian Americans.
5. Copies of communications between employees or representatives of any foreign nation, consulate, or embassy and [any of four listed] individuals[.]
6. Copies of documents or communications concerning or reflecting a recommendation by any Executive Chamber personnel that the Executive Chamber grant or decline any request from any employee or representative of a foreign nation, consulate, or embassy, including, but not limited to, requests for meetings, to take or refrain from any action, or to attend events.
7. Copies of documents or communications listing or otherwise reflecting the duties and responsibilities of the following titles and/or roles during the First Charged Period:
   a. Director of Asian American Affairs;
   b. Queens Regional Representative;
   c. Director of External Affairs of Global New York for Empire State Development;
   d. Deputy Chief Diversity Officer;
   e. Superintendent for Intergovernmental Affairs for the New York State Department of Financial Services;
   f. Deputy Chief of Staff; and/or
   g. Official liaisons to any cultural or ethnic communities or affinity groups.
8. Copies of any performance reviews or evaluations of Linda Sun.
9. Copies of all official documents including, in particular, any letters, proclamations, certificates, or memoranda bearing a signature of the Governor that was (*i*) applied by mechanical methods (*e.g.*, by using an autopen or similar device) or *(ii)* physically signed or applied by any person other than the Governor.

C. For the period from March 1, 2020, through August 31. 2020 (the "Second Charged Period") . . . :
1. Documents sufficient to identify all individuals who possessed sufficient procurement authority to approve or reject contracts with potential vendors for obtaining or providing personal protective equipment ("PPE").
2. Copies of documents or communications concerning or reflecting any criteria to be used by individuals with procurement authority when approving or rejecting contracts with potential vendors for obtaining or providing PPE.
3. Copies of documents or communications concerning or reflecting any direction or instruction to Executive Chamber personnel to identify or locate potential vendors for obtaining or providing PPE.
4. Copies of documents or communications concerning or reflecting any criteria to be used by Executive Chamber personnel when identifying or locating potential vendors for obtaining or providing PPE.
5. Copies of documents or communications concerning or reflecting any consideration, accounting, assessment, analysis, vetting, examination, or evaluation of [the Cousin Company] or [the Associate Company].
6. Copies of documents or communications concerning or reflecting any consideration, accounting, assessment, analysis, vetting, examination, or evaluation of PPE obtained from or through [the Cousin Company] or [the Associate Company].
7. Copies of documents or communications concerning or reflecting any consideration, approval, or denial of contracts with [the Cousin Company] or [the Associate Company].
8. Copies of documents or communications concerning or reflecting any consideration, approval, or denial of contracts with other potential vendors for obtaining or providing PPE.
9. Copies of documents or communications concerning or reflecting any rejection of a contract with any potential vendors for obtaining or providing PPE due to any perceived conflict of interest.
10. Copies of documents or communications concerning or reflecting any orders or purchases of PPE that were not delivered, partially delivered, or delinquent.

The defense did not disclose the Challenged Subpoenas to the government; the government only learned of the Challenged Subpoenas from counsel to the Executive Chamber. To date, the defense has not provided any reciprocal Rule 16 discovery to the government, notwithstanding requests for reciprocal discovery contained in every Rule 16 production letter from the government, as well as the government's expert disclosures and other communications. In part because of this discrepancy, the government has moved *in limine* for the Court to order pretrial disclosure of Rule 16 materials and trial exhibits by the defense.

II.    The Court Should Quash the Challenged Subpoenas

A.    <u>Applicable Law</u>

Rule 17(c)(1) of the Federal Rules of Criminal Procedure provides that

> [a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1); *see also United States v. Pierre*, No. 22-CR-19 (PGG), 2023 WL 7004460, at *15 (S.D.N.Y. Oct. 24, 2023). "Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *United States v. Nixon*, 418 U.S. 683, 702 (1974).

Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *Id.* at 700; *see also Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (same). Instead, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial." *United States v. Louis*, No. 04-CR-203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005). Accordingly, a defendant seeking documents pursuant to a Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in *Nixon*, namely of "specifically identifying the materials sought and showing that they are relevant and admissible." *United States v. Brown*, No. 95-CR-168 (AGS),1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995); *see also United States v. RW Professional Leasing Services Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (citing *Nixon*, 418 U.S. at 699-700); *Louis*, 2005 WL 180885, at *5 (party seeking documents pursuant to a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" and establish both relevancy and admissibility (internal quotations omitted)).

A Rule 17(c) subpoena may not be used to conduct a "general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. Indeed, precisely because the rule poses such a risk of abuse and misuse, courts are stringent in holding those seeking to obtain documents under Rule 17(c) to their burden of demonstrating that the documents sought are (1) relevant, (2) admissible, and (3) specifically identified. It is "insufficient" for a party to show only that the subpoenaed documents "are *potentially* relevant or *may be* admissible," *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 162 (emphasis added); *see also Nixon*, 418 U.S. at 699-700 (requiring a showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and not intended as a general 'fishing expedition'"). Requests accurately characterized as fishing expeditions "deserve[] to be quashed" on that basis alone. *United States v. Yian*, No. 94-R-719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995); *see also United States v. Binday*, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012) (noting that "an impermissible discovery motive is

5

much more likely to underlie a subpoena calling for a return well in advance of trial than one issued for return the date trial is set to begin"); *Pierre*, 2023 WL 7004460, at *15 (same).

Rule 17(c)(2) permits a court to quash or modify a Rule 17(c) subpoena on a motion promptly made. The government has standing to move to quash a subpoena "based 'upon its interest in preventing undue lengthening of the trial, undue harassment of its witness[es], and prejudicial over-emphasis on [the witnesses'] credibility." *United States v. Giampa*, No. 92-CR-437 (PKL), 1992 WL 296440, at *3 (S.D.N.Y. Oct. 7, 1992) (quoting *United States v. Raineri*, 670 F.2d 702, 711 (7th Cir. 1982)); *see also United States v. Vasquez*, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009); *United States v. Nix*, 251 F. Supp. 2d 555, 561 (W.D.N.Y. 2017); *United States v. Nektalov*, No. 03-CR-828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004); *Yian*, 1995 WL 614563, at *2 (same). Indeed, where the Rule 17(c) subpoena principally seeks impeachment or material pursuant to 18 U.S.C. § 3500 for a government witness, because "[t]he government has an interest in controlling the timing of disclosures" of that material, those interests "are sufficiently strong and immediate . . . to confer standing." *United States v. Bergstein*, No. 16-CR-746 (PKC), 2017 WL 6887596, at *3 (S.D.N.Y. Dec. 28, 2017).

Moreover, even if the government did not have standing, "the Court has an independent duty to review the propriety of the subpoena . . . and whether the subpoena itself comports with the requirements of Rule 17." *Vasquez*, 258 F.R.D. at 72; *see also United States v. Coriaty*, No. 99-CR-1251 (DAB), 2000 WL 1099920, at *6 n.4 (S.D.N.Y. Aug. 7, 2000) (considering government's motion to quash third-party subpoena, notwithstanding defendant's objections on ground that government had no standing, because "'it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose'".).

B. Argument

The Court should quash the Challenged Subpoenas because the subpoenas are facially invalid, are an inappropriate attempt to circumvent the discovery process, and are legally insufficient. As set forth below, the Challenged Subpoenas are invalid because each commands production of responsive information to a place other than the Court within twelve days of the subpoenas' issuance and over one month before the start of trial. Even if the Challenged Subpoenas did not have these deficiencies, the Court should still quash the Challenged Subpoenas (and any other similar subpoenas issued by the defendant) as improper fishing expeditions that violate Rule 17(c).

1. The Government Has Standing to Move to Quash

As a threshold matter, the government has standing to move to quash the Challenged Subpoenas. The Challenged Subpoenas seek information from components of the New York State Executive Branch, which have been cooperating extensively with the underlying investigation and instant prosecution by producing tens of thousands of documents (which the government has, in turn, produced to the defense on a continuing basis). Moreover, multiple current and former employees of the Executive Branch are expected to testify at trial. Accordingly, the government has an interest in preventing the improper disclosure of materials that concern those potential witnesses and in ensuring that they are not subject to undue harassment. *See Vasquez*, 258 F.R.D. at 71 ("[A] party whose legitimate interests are affected by a subpoena may

6

move to quash that subpoena."); *United States v. Carton*, No. 17-CR-680 (CM), 2018 WL 5818107, at *2 (S.D.N.Y. Oct. 19, 2018) (government had standing to move to quash subpoenas served on third parties); *Nektalov*, 2004 WL 1574721, at *1 (same). Separately, the government has a legitimate interest in preventing the defendant from using Rule 17(c) subpoenas to circumvent the requirements of Rule 16, Rule 26.2, and other applicable federal criminal discovery rules. *See Vasquez*, 258 F.R.D. at 71-72.

Finally, even if the government lacked the interests identified above, the Court can and should review the Challenged Subpoenas pursuant to its independent obligation to ensure the propriety of a Rule 17(c) subpoena.

2. <u>The Challenged Subpoenas Improperly Direct the Recipients to Produce the Materials to a Place Other than the Court</u>

The Challenged Subpoenas improperly direct the recipients to produce the materials to the office of Sun's defense counsel, not to the Court. This contradicts Rule 17, which provides for the designated items to be produced "in court" and allows the Court to "permit the parties and their attorneys to inspect all of part of them." Fed. R. Crim. P. 17(c)(1); *See, e.g., United States v. Al-Amin*, 2013 WL 3865079, *10 (E.D. Tenn. 2013) ("There is no provision in [Rule 17(c)] for the parties to receive records. The records should not have been provided to counsel, and counsel should not have accepted them but rather if the subpoena had been proper they would have been in the custody and control of the Court and both parties may have been permitted to inspect the records."); *United States v. Latimore*, 2010 WL 148231, *3 (E.D. Mich. 2010) ("Defendant Gilford has not established that he is entitled to have the documents delivered directly to defense counsel."); *United States v. Jenkins*, 895 F. Supp. 1389, 1394 (D. Hawaii 1995) ("It appears to the court that Castle delivered the documents directly to counsel for the Defendant. Indeed, Defendant's application for the [Rule 17(c)] subpoenas *duces tecum* makes a request for subpoenas requiring 'the documents to be turned over directly to the defense at the earliest possible date.' The magistrate erred in allowing the documents to be turned over directly to the defense and not to the court."). In contrast, the wording of the Challenged Subpoenas would impermissibly require the recipients to produce the requested materials only to defense counsel's office, with no opportunity for the government to examine the production—as Rule 17(c)(1) permits.

Aside from the plain wording of Rule 17(c)(1), the impropriety of issuing subpoenas that require a production somewhere other than in court has been recognized in this district. In *United States v. Greebel*, the defendant attempted to withhold Rule 17(c) subpoenas from the government prior to trial. On the record, Judge Matsumoto ordered the defendant to disclose all Rule 17(c) subpoena returns, commenting, "[w]ell, they were supposed to be returnable here [*i.e.*, in court] and the parties are supposed to be allowed to inspect them. Where are they? Make them available. Today." *United States v. Greebel*, No. 15-CR-637 (KAM) (Oct. 16, 2017 Conf. Tr. at 15).

3. <u>The Challenged Subpoena Improperly Directs the Recipient to Produce the Materials by an Arbitrary Deadline</u>

The Challenged Subpoenas are also improper because they are not "so ordered" by the Court yet direct the recipients to produce the materials by September 30, 2025—more than a month before the start of trial and unconnected to a hearing. Rule 17 provides a limited grant of

7

authority that permits pretrial production of materials only with court approval. Rule 17(c) states, "The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." *See* Charles Alan Wright, et al., Federal Practice and Procedure § 275 n.10 (4th ed. 2014) ("Leave is required for a pre-trial subpoena duces tecum."). As one district court explained, "The Rule itself expressly contemplates pre-trial production, but only upon order of the court." *Nix*, 251 F. Supp. 3d at 563-64 (quashing defendant's subpoenas made returnable to the court without the court's prior authorization). The rule, in "leaving advance production to the court's discretion[,] is no mere technicality"; rather, "[i]t is a vital protection against misuse or improvident use of such subpoenas." *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 178 (D.D.C. 2015) (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)); *see also United States v. Beckford*, 964 F. Supp. 1010, 1020 (E.D. Va. 1997). Such a requirement makes sense because a Rule 17 subpoena is not a tool for pretrial discovery. *See, e.g.*, *United States v. Finn*, 919 F. Supp. 1305, 1329 (D. Minn. 1995) ("Without the Court's supervision, Rule 17(c) would lend itself to discovery of the broadest sort—a result that the drafters of the Rule decried.").

    4.   The Challenged Subpoenas Improperly Seek to Circumvent the Federal Discovery Process

The Court should also quash the Challenged Subpoenas because they extend far beyond the purpose of what Rule 17 intended and seek materials that are either statutorily protected from pretrial disclosure—most notably, witness statements protected by 18 U.S.C. § 3500—or that are otherwise not within the scope of a Rule 17(c) subpoena.

Fed. R. Crim. P. Rule 17(h) explicitly states, "No party may subpoena a statement of a witness or of a prospective witness under this rule" as "Rule 26.2 governs the production of the statement." Rule 26.2, in turn, provides that a defendant may move the government to produce "any statement of the witness that is in [the government's] possession and that relates to the subject matter of the witness's testimony," after that witness has testified. Fed. R. Crim. P. 26.2(a). *See also* 18 U.S.C. § 3500(a) ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.").

There is no legitimate basis for the defendant to seek internal New York State government communications regarding, among other matters, interactions with PRC and Taiwanese government officials, the award of PPE contracts, and the scheduling of meetings. Rule 26.2, in conjunction with 18 US.C. § 3500, provides the means by which the defendant is entitled to obtain prior witness statements, and the defendants will receive those materials at the appropriate time. Indeed, the government expects to call at trial relevant personnel responsible for interactions with PRC and Taiwanese government officials and the award of PPE contracts. The Court should adopt the approach taken by other courts in the Second Circuit and reject the defendant's attempt to circumvent the federal discovery rules by attempting to obtain witness statements through Rule 17 subpoenas. *See, e.g., United States v. Menendez*, No. 23-CR-490 (SHS), 2024 WL 2801960, at *2-3 (S.D.N.Y. May 31, 2024) (materials the defendant sought regarding communications between the government and the government's witness are obtainable

through Rule 16 discovery and § 3500 procedures, and if they are "not otherwise discoverable under Rule 16, they are not appropriate subjects for a Rule 17 subpoena"); *United States v. Chang*, No. 18-CR-681 (NGG)(CP) at 8 (E.D.N.Y. July 10, 2024) ("Rule 17(c) does not offer an end-run around standard criminal discovery procedures"); *United States v. Carton*, No. 17-CR-680 (CM), 2018 WL 5818107, at *4 (S.D.N.Y. Oct. 19, 2018) (quashing Rule 17 subpoena to prospective government witness, which sought witness statements, relying on Rule 17(h) prohibition of using a subpoena to obtain the statement of a witness or of a prospective witness); *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009) (quashing defense subpoena for statements made by witnesses the government intends to call at trial because "Rule 17(h) expressly precludes a party from subpoenaing a witness statement"); *United States v. Arias*, 373 F. Supp. 2d 311, 313 (S.D.N.Y. 2005) (quashing subpoena to lawyer for a cooperating witness because to the extent documents are "not discoverable by [the defendant] under Rule 16, [he] may not subpoena a co-defendant or related party to make an end-run around the discovery limitations of Rule 16" (emphasis omitted)).

Although some courts have determined that Rule 17(c) subpoenas may be used to obtain materials to be used for impeachment, *see United States v. Seabrook*, No. 16-CR-467, 2017 WL 4838311, at *1-2 (S.D.N.Y. Oct. 23, 2017), the defendant here has not identified how any of the categories of requested material could be admissible for that purpose under Rules 608 or 613 of the Federal Rules of Evidence—which govern the admissibility of evidence pertaining to a witness's character for truthfulness or untruthfulness and prior inconsistent statements—or any other evidentiary rule. *See* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement."). In any event, "the potential impeachment of a witness does not provide grounds for issuance or enforcement of a Rule 17(c) subpoena because such materials would only become relevant after a witness has testified." *United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 2292773, at *1 (S.D.N.Y. June 4, 2021) (citing cases). At bottom, the requests appear untethered to any kind of trial evidence in this case—as evidenced by the sheer scope of material requested.

> 5. The Challenged Subpoenas Fail to Meet *Nixon*'s Requirements of Relevance, Admissibility, and Specificity

Even if the subpoenas were properly issued, the information sought goes far beyond the scope of the permissible use of a Rule 17(c) subpoena. The Court should quash the Challenged Subpoenas because they fail to meet the *Nixon* standard for relevance, admissibility, and specificity. As a general matter,

> the need to impeach witnesses generally "is insufficient to require [materials'] production in advance of trial." *Nixon*, 418 U.S. at 701. Many courts have held that impeachment material does not become relevant until after the witness testifies. *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) (collecting cases); *United States v. Scaduto*, No. 94-CR-311 (WK), 1995 WL 130511, at *1 (S.D.N.Y. Mar. 27, 1995) ("Potentially impeaching statements 'ripen into evidentiary material . . . only if and when the witness testifies at trial. . . .'" (citation omitted)). *See also Avenatti*, 2020 WL 86768, at *6 (rejecting the argument that the defendant needed the recordings in question prior to trial in order "to demonstrate witnesses' bias or self-interest.").

9

*United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 1625392, at *2 (S.D.N.Y. Apr. 27, 2021); *see also Giampa*, 1992 WL 296440, at *3 (collecting cases).

*First*, the Challenged Subpoenas fail *Nixon*'s specificity requirement. The Challenged Subpoenas seek "CERTIFIED COPIES" of numerous broad categories of materials, with many seeking such records over an 18-year time period—well outside the charged period. These requests are overbroad and burdensome and should be quashed on their face. As courts in this Circuit have observed, this sort of request "smacks of a fishing expedition." *United States v. Nachamie*, 91 F. Supp. 2d 552, 564 (S.D.N.Y. 2000). Courts have found that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, at 515 (S.D.N.Y. 2013); *see also United States v. Barnes*, 2008 U.S. Dist. Lexis 125298, at *11 (S.D.N.Y. Apr. 1, 2008) (quashing motion that "blindly seeks 'all' documents and records that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence" because "[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"); *RW Professional Leasing Services Corp.*, 228 F.R.D. at 163-64 (rejecting as "overbroad and totally unreasonable" various requests calling for production of "[a]ll documents" noting it was likely to result in a "massive search for countless documents"); *United States v. Lopez*, No. 15-CR-252 (PKC), 2021 WL 4033886, at *2 (E.D.N.Y. Sept. 3, 2021) (quashing subpoena as overbroad, noting that use of the terms "all" and "any" undermined specificity, and reaffirming that "Rule 17(c) subpoenas are not tools of discovery" (internal quotation marks omitted)).

*Second*, the Challenged Subpoenas fail *Nixon*'s requirement that the requested information not be otherwise procurable. The government has already produced all the information in its possession that it received pursuant to broad requests for information from the recipients of the Challenged Subpoenas. Thus, the defendant has received much of the requested material. Rule 17(c) does not permit the defendant to demand information that is already available to her. *See United States v. Cognetta*, No. 18-CR-14 (VM), 2019 WL 4198544, at *2 (S.D.N.Y. Aug. 13, 2019) (citing *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) and *Nixon*, 418 U.S. at 699-700); *United States v. Columbo*, No. 04-CR-273 (NRB), 2006 WL 2012511, at *15 (S.D.N.Y. July 18, 2006) ("[T]he requests set forth in the proposed subpoenas are excessively broad and burdensome and some of the requests seek documents that duplicate materials already produced by the Government.").

*Third*, the subpoenas fail *Nixon*'s relevance requirement. None of the requests even attempts to identify a particular piece of admissible evidence and, thus, the defendant has made no showing that the documents requested are "evidentiary and relevant." *Nixon*, 418 U.S. at 699-700. Although the government may seek to call one or more New York State employees to authenticate records produced to the government, the defendant still must show how the internal New York State communications, documents, and reports she seeks meet the relevance and admissibility requirements. The defendant has failed to do so.

*Fourth and finally*, given the multitude of wide-ranging requests, the information the defendant seeks is extremely impractical, if not completely impossible, to compile. *See Cognetta*, 2019 WL 4198544 at *5 ("compliance with the request . . . would be unduly burdensome or oppressive"); *United States v. Skelos*, 988 F.3d 645, 661 (2d Cir. 2021) ("We find no abuse of

10

discretion in the district court's decision to quash these subpoenas as 'unreasonable or oppressive' under Rule 17.").

### III. The Court Should Compel Disclosure of Other Rule 17(c) Subpoenas and All Materials Received Pursuant to Rule 17(c)

As the government only learned of the Challenged Subpoenas after being informed by the Executive Chamber, the government respectfully requests that the Court order both defendants to immediately disclose all issued Rule 17(c) subpoenas and any responses received to date.

An analysis of the contents of the Challenged Subpoenas demonstrates that the subpoenas are improper under Rule 17(c) and *Nixon* and its progeny. In *United States v. Chang*, Judge Garaufis ordered the defendant to disclose Rule 17(c) subpoenas to the government. *See United States v. Chang*, No. 18-CR-681 (NGG) Order Dated May 23, 2024 ("The court ORDERED the Defendant to disclose the Rule 17(c) subpoenas to the Government. Disclosure must be made by May 24, 2024. The court also granted leave for the Government to file its motion to quash within 10 days from receipt of the subpoenas. The return date for the subpoenas is held in abeyance pending resolution of the motion to quash."). Accordingly, the government requests that any additional Rule 17(c) subpoenas be disclosed to the government, unless the defendants obtained the Court's permission to issue *ex parte* Rule 17(c) subpoenas. None of the four Challenged Subpoenas at Exhibits A through D were ordered by the Court.

The purpose of Rule 17(c) is to provide both parties the opportunity to inspect documents produced before trial. *See* Fed. R. Crim. P. 17(c)(1) (providing that, "when the items arrive, the court may permit the parties and their attorneys to inspect all or part of [the subpoenaed documents]"); *United States v. Skelos*, 2018 WL 2254538, at *9 (ordering defendants to make all items received pursuant to Rule 17 subpoenas available to the government); *United States v. Pena*, No. 16 Cr. 551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016); *United States v. Hart*, 826 F. Supp. 380, 382 (D. Colo. 1993) ("The plain language of rule 17(c) could not be clearer. Where a defendant seeks the production of documents prior to trial, the court may permit these documents 'to be inspected by the parties and their attorneys.'"). Notwithstanding the clarity of the law, the defendants have not made the government aware of any Rule 17(c) subpoenas, nor have the defendants provided the government with any materials received pursuant to Rule 17(c) subpoenas. And, as noted above, the defendants have yet to provide any Rule 16 disclosures notwithstanding the government's repeated written requests for reciprocal discovery. It is the government's understanding that the recipients of the Challenged Subpoenas have not provided materials to the defendant. The government does not know whether the defendants have received materials from other Rule 17(c) subpoenas. As discussed above, Rule 17(c) is not a mechanism for the defendants to conduct discovery. The government thus requests that the Court order the defendants to promptly produce such materials in their entirety, as is required.

11

IV.     Conclusion

For the reasons set forth above, the Court should quash the Challenged Subpoenas and order the defendants to disclose the contents of any other Rule 17(c) subpoenas as well as produce all materials received in response to any Rule 17(c) subpoenas.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/
Alexander A. Solomon
Robert M. Pollack
Andrew D. Reich
Amanda Shami
Assistant U.S. Attorneys
(718) 254-7000

Enclosures

cc:    Clerk of the Court (by ECF)
       Defense counsel (by ECF)