

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AFM:AAS/RMP/ADR/AS     *271 Cadman Plaza East*
F. #2021R00600     *Brooklyn, New York 11201*

October 20, 2025

<u>By Hand and ECF</u>

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   <u>United States v. Linda Sun, et al.</u>
            <u>Criminal Docket No. 24-346 (S-4) (BMC)</u>

Dear Judge Cogan:

The government submits this letter in opposition to the defendant Linda Sun's supplemental motions *in limine*. For the reasons articulated below, the defendant's motions lack merit and should be denied.

    I.    <u>Motion to Compel Election and to Preclude</u>

Claiming that Count One, charging a conspiracy to violate the Foreign Agents Registration Act ("FARA"), is duplicitous, Sun argues that the government should be compelled pretrial to elect on which conspiracy it will proceed at trial and to be precluded from offering evidence related to anything it is forced to discard. In essence, Sun improperly seeks to have the Court revisit its denial of Sun's pretrial motion to dismiss. However, Count One is not duplicitous, and the relief that Sun seeks is inappropriate.

        A.    <u>Applicable Law</u>

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(i), a defendant may move to dismiss an indictment if "the motion can be determined without a trial on the merits" for various defects, including "joining two or more offenses in the same count (duplicity)." Fed. R. Crim. P. 12(b)(3)(B)(i). An "indictment is impermissibly duplicitous where (1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be a separate count for each offense, and (2) the defendant is prejudiced thereby." *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013) (quoting *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (internal quotation marks omitted)).

Where a pretrial motion to dismiss cannot be determined without reference to the evidence that would be presented at trial, it must be denied as premature. A technically sufficient indictment "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial." *United States v. Laurent*, 861 F. Supp. 2d 71, 110 (E.D.N.Y. 2011); *see United States v. Sampson*, 898 F.3d 270, 279 (2d Cir. 2018) ("[T]he civil summary judgment mechanism does not exist in federal criminal procedure . . . ."); *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Thomas*, 150 F.3d 743, 747 (7th Cir. 1998) (Easterbrook, J., concurring) ("Summary judgment does not exist in criminal cases"). There is "a narrow exception to the rule that a court cannot test the sufficiency of the government's evidence on a Rule 12(b) motion"—where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." *Sampson*, 898 F.3d at 282 (citing *Alfonso*, 143 F.3d at 776-77)—but that is not the case here.

"[T]o prove a single conspiracy, rather than multiple conspiracies, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) (citations and internal edits omitted). "The coconspirators need not have agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan." *Id*. (citation omitted). Indeed, "for a single conspiracy to be found, it is not necessary that the conspirators even know the identities of all the other conspirators." *Id*. (citations omitted); *see United States v. Sureff*, 15 F.3d 225, 230 (2d Cir. 1994) ("A single conspiracy may encompass members who neither know one another's identities . . . nor specifically know of one another's involvement.") (citations omitted); *United States v. Labat*, 905 F.2d 18, 21 (2d Cir. 1990) ("The defendant need not know the identities of all of the other conspirators, nor all of the details of the conspiracy.").

"Where an alleged conspiracy encompasses members who neither know one another's identities . . . nor specifically know of one another's involvement, it is permissible for the jury to find that there was a single conspiracy so long as a reasonable juror could conclude beyond a reasonable doubt (1) that the scope of the criminal enterprise proven fits the pattern of the single conspiracy alleged in the indictment, and (2) that the defendant participated in the alleged enterprise with a consciousness of its general nature and extent." *Eppolito*, 543 F.3d at 47-48 (internal citations and edits omitted); *see also Sureff*, 15 F.3d at 229-30 (stating that government may prove that multiple defendants are part of a conspiracy by showing that "each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal") (citation omitted); *United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989) ("A single conspiracy may be found where there is 'mutual dependence and assistance' among the [participants], a common aim or purpose . . . or a permissible inference, from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture.'") (citation omitted). "Nor need the goals of all the participants be congruent for a single conspiracy to exist, so long as the participants agree on the essential nature of the enterprise and their goals are not at cross purposes." Eppolito, 543 F.3d at 48 (citation and internal edits omitted). Additionally, "a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." *United States v. Berger*, 224 F.3d 107, 114-15 (2d Cir. 2000) (quoting *United States v. Maldonado–Rivera*, 922 F.2d 934, 963 (2d Cir. 1990)).

In a "hub-and-spoke" or "wheel" conspiracy, "members of a 'core' group deal with a number of contacts who are analogized to the spokes of a wheel and are connected with each other only through the core conspirators." *United States v. Manarite*, 448 F.2d 583, 589 (2d Cir. 1971); *see also United States v. Taggert*, No. 09 CR. 984 (BSJ), 2010 WL 532530, at *1-2 (S.D.N.Y. Feb. 11, 2010) (describing wheel conspiracies). In such cases, "[t]o prove a single conspiracy, . . . the Government must show that there was a 'rim' around the spokes, such that the 'spokes' became coconspirators with each other." *United States v. Pauling*, 256 F. Supp. 3d 329, 335 (S.D.N.Y. 2017), *aff'd and remanded*, 924 F.3d 649 (2d Cir. 2019). The "spoke" participants may be found to be members of a single conspiracy along with the "hub" conspirators as long as the spoke participants "knew or had reason to know of the existence . . . of one or more of the other spoke participants." *Manarite*, 448 F.2d at 589; *see also Taggert*, 2010 WL 532530, at *1 ("While [the two spoke participants] may have been unaware of each other's identity, they could not have been unaware that the other existed. That is all that a wheel conspiracy requires.").

Multiple conspiracy analysis is inapplicable to the trial of a single defendant, even if that defendant is implicated in conspiratorial agreements with multiple individuals. *See United States v. Corey*, 566 F.2d 429, 431 n.3 (2d Cir. 1977) ("[S]ingle/multiple conspiracy analysis does not apply to the trial of a single defendant."); *United States v. Sir Kue Chin*, 534 F.2d 1032, 1035 (2d Cir. 1976) (multiple conspiracy analysis does not apply to the trial of a single defendant); *see also United States v. Richardson*, 532 F.3d 1279, 1291 (11 Cir. 2008) (Trager, J.) ("[I]t seems clear that the instruction is intended for use in cases charging multiple defendants with a single conspiracy, which makes sense. In those cases there is a legitimate concern that a defendant who operated on the periphery of a large, overarching conspiracy will be unfairly grouped in with a larger conspiracy than he intended to join. The same cannot be said of cases, like this one, where the indictment charges only one defendant who is at the hub of the conspiracy."); *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) (holding that a duplicity analysis was inapplicable where two defendants were charged in the same indictment but each "ultimately stood trial alone, and evidence at each trial focused on the individual appellant's own role in the conspiracy and the direct consequences of that defendant's actions in furthering the conspiracy"); *United States v. Anguiano*, 873 F.2d 1314, 1317-18 (9th Cir. 1989) ("there is no problem of spillover prejudice when . . . the defendant stands trial alone" and single defendants are not entitled to a multiple conspiracies instruction on that basis); Sand, Modern Federal Jury Instructions, Instruction 19-5 Commentary (citing cases).

Multiple conspiracies doctrine generally exists to protect a defendant from spillover prejudice that may result from the introduction of evidence offered in support of a conspiracy of which the defendant was not a member, but other defendants on trial were. *See United States v. Geibel*, 369 F.3d 682, 693 (2d Cir. 2004); *Corey*, 566 F.2d at 429 n.3; *cf. Kotteakos v. United States*, 328 U.S. 750, 766-67 (1946); *id.* at 775 (specifying that the right vindicated by the multiple conspiracies doctrine is "the right not to be tried en masse for the conglomeration of distinct and separate offenses committed by others"); *United States v. Cusimano*, 123 F.3d 83, 89 (2d Cir. 1997). By extension, a defendant "who is indicted and tried alone . . . cannot suffer substantial prejudice from a district court's failure to issue a multiple-conspiracies instruction, even if conduct charged as a single conspiracy in the indictment in fact constituted two separate conspiracies in which the defendant was involved." *United States v. Reid*, 732 F. App'x 14, 16 (2d Cir. 2018) (citing *Sir Kue Chin*, 534 F.2d at 1035).

"Whether the government has proven the existence of the conspiracy charged in the indictment and each defendant's membership in it, or, instead, has proven several independent conspiracies is a question of fact for a properly instructed jury." *United States v. Johansen*, 56 F.3d 347, 350 (2d Cir. 1995) (citations omitted); *see United States v. Aracri*, 968 F.2d 1512, 1519 (2d Cir. 1992) (same); *United States v. Rajaratnam*, 736 F. Supp. 2d 683, 688 (S.D.N.Y. 2010) ("[T]he question of whether a single conspiracy or multiple conspiracies exists is a question of fact for the jury.").

B.  Analysis

As alleged in the Fourth Superseding Indictment ("S-4 Indictment"), Sun engaged in a multifaceted scheme involving multiple government representatives and intermediaries to act as an unregistered agent of the government of the People's Republic of China ("PRC") and the Chinese Communist Party ("CCP"). Accordingly, Count One properly alleges that Sun, together with others, conspired to violate FARA. Nothing more is needed at this procedural juncture, and Sun's request for relief should be denied as a premature pretrial motion for partial dismissal of Count One. Sun's arguments fail for numerous reasons.

*First*, any motion to dismiss is procedurally unripe, where the government has not made a full proffer of its evidence. Nor does the government's pretrial disclosure of witness statements constitute a full proffer of the government's trial evidence. (*See* Def. Br. at 2). Indeed, Sun points to no authority standing for such a proposition because none exists.

*Second*, the government has never conceded that Count One is duplicitous. The government has always responded at length to the core issues raised in Sun's numerous and scattershot briefs. That the government (for brevity's sake) has not always responded to Sun's peripheral arguments is not tantamount to a concession.

As an initial matter, Sun's present claim that her activities with the PRC Consulate, on the one hand, and with CC-1 and CC-2, on the other hand, were not temporally connected, (*see* Def. Br. at 1), is contradicted by the plain language of the S-4 Indictment, which alleges activities involving the PRC Consulate from 2016 until December 2023, and CC-1 and CC-2 from 2016 through the late fall of 2019.

Indeed, Count One is not duplicitous. As alleged in the S-4 Indictment, Sun conspired with various representatives from the PRC Consulate and various intermediaries for the PRC government, including CC-1 and CC-2, to achieve that objective. Though various spokes in the conspiracy focused their efforts with Sun on different issues of importance to the PRC government and the Chinese Communist Party at different times, this does not mean that Count One is duplicitous or that it improperly incorporates multiple conspiracies. Notably, as alleged, the various coconspirators met together with the Henan Province delegation that Sun invited to New York State without proper authorization. (*See* S-4 Ind. ¶ 54) ("[T]he defendant LINDA SUN, CC-1, and two officials from the PRC Consulate, as well as various leaders of local Chinese associations, participated in a welcome dinner on behalf of the delegation from Henan Province.").

*Third*, the multiple conspiracy concern raised by Sun is inapplicable, where she is the sole named defendant. *See Sir Kue Chin*, 534 F.2d at 1035. Even though Sun conspired with multiple individuals to accomplish the objectives of the overarching conspiracy to act as an

4

unregistered agent of the PRC government and the CCP, none of the concerns about spillover prejudice from introduction of evidence unrelated to Sun's own actions is present.

*Finally*, even assuming *arguendo* that the conspiracy charged in Count One is improperly duplicitous (which it is not and is impossible legally), Sun cites to no precedent standing for the proposition that a court may compel the government to proceed on a narrow version of an arguably duplicitous count. There are no such cases. The primary case on which Sun relies involves a duplicitous substantive narcotics distribution charge, rather than a duplicitous conspiracy charge. *Sturdivant*, 244 F.3d 71. In *Sturdivant*, the Second Circuit held that prejudice to the defendant could be avoided "by having the government elect to proceed based upon only one of the distinct crimes included within a duplicitous count" "or by a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction." In other words, *Sturdivant* does not compel the Court to force the government to "proceed based upon only one of the distinct crimes," where such decision rests solely with the government. "The Government may decide to proceed on proving one of the [arguably] distinct crimes at trial or the Court can issue an appropriate jury instruction." *United States v. Bullen*, No. 22-CR-0494(JS), 2025 WL 2235464, at *8 (E.D.N.Y. Aug. 5, 2025)

II.     Motion for Waiver of Privilege or Preclusion

Pointing to certain materials produced by the New York State Executive Chamber (the "Executive Chamber") to the government that contain redactions for deliberative process privilege and other materials produced by the Executive Chamber that Sun posits should—but do not—contain similar redactions, Sun argues that the Court should direct the government to procure unredacted copies of all materials where the Executive Chamber has asserted deliberative process privilege and, in the alternative, suppress all materials containing Sun's communications where Sun believes that the Executive Chamber should have asserted such privilege. Sun's argument, while creative, lacks merit.

As Sun acknowledges, the deliberative process privilege belongs exclusively to the Executive Chamber. (Def. Br. at 5). The government, which is not the holder of the privilege, has no basis for evaluating the validity of the Executive Chamber's assertions of privilege. Nor should the Executive Chamber be required to waive privilege by providing unredacted versions of the materials. Not surprisingly, Sun cites to no authority in which a court directs the government to obtain a privilege waiver of a third party or face preclusion of evidence reflecting the third party's privilege determinations. No such authority exists.

Sun's assertion that the government is using the privilege as a sword and shield is unavailing, where the privilege at issue does not belong to the government. *Cf. In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (admonishing that "fairness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.'"). The Executive Chamber is not a member of the prosecution team, and the Executive Chamber's independent determinations on privilege should not be imputed to the government.

At bottom, Sun has identified a potential dispute with the Executive Chamber for which the proper remedy would be a narrowly tailored trial subpoena for the documents containing

the purportedly improper redactions.[1] The government has no role in this dispute and should not be improperly penalized for the actions of a third party to the litigation.

III.     Conclusion

For the reasons articulated above, the Court should deny Sun's supplemental motions *in limine*.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/ Alexander A. Solomon
Alexander A. Solomon
Robert M. Pollack
Andrew D. Reich
Amanda Shami
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of Court (by ECF)
        Defense counsel (by ECF)

---

[1] Several days after filing the instant motion *in limine*, Sun moved the Court for a trial subpoena to be served on the Executive Chamber. Unexpectedly, the proposed subpoena—which is some respects is impermissibly broad and seeks inadmissible materials—does not seek unredacted copies of the communications involving Sun that contain allegedly improper redactions. The government has written the Court under separate cover to address the appropriateness of the proposed subpoena. (*See* ECF No. 211).