UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
  UNITED STATES OF AMERICA,

                            Plaintiff,

                  - against -                    **MEMORANDUM DECISION AND ORDER**

  LINDA SUN,                                      24-cr-346 (BMC)
     also known as "Wen Sun," "Ling Da
     Sun," and "Linda Hu," and
  CHRIS HU,

                         Defendants.
-------------------------------------------------------------- X

**COGAN**, District Judge.

Defendants are charged with various offenses relating to fraud, immigration, money laundering, and the Foreign Agents Registration Act ("FARA"). Defendants have since the outset inquired whether this case implicates the Foreign Intelligence Surveillance Act ("FISA") and search warrants issued by the Foreign Intelligence Surveillance Court ("FISC"). The Government has given, and continues to give, an unqualified denial in answer to that question. Unsatisfied, defendants move to compel the Government to disclose the legal authority under which certain unproduced classified materials were obtained. For the reasons below, defendants' motion is denied.

## BACKGROUND

The Court previously granted the Government's motion for a protective order under Section 4 of the Classified Information Procedures Act ("CIPA") and Fed. R. Crim. P. 16(d)(1). Before doing so, the Court reviewed in camera a voluminous amount of classified materials relating to defendants in the Government's possession. The Government sought to exclude it from discovery because, according to the Government, none of it would be used against

defendants in any capacity. See United States v. Sun, No. 24-cr-346, 2025 WL 2733267, at *2 (E.D.N.Y. Sept. 24, 2025). During that review, the Court identified certain classified materials (the "Classified Materials") that would be material, relevant, and helpful to the defense, and ordered their disclosure under Brady v. Maryland, 373 U.S. 83 (1963). Because the materials were classified, the Government instead created substitution summaries (the "Classified Summaries"). See CIPA § 4 ("The court . . . may authorize the United States to . . . substitute a summary of the information for such classified documents"). The Court reviewed the Classified Summaries, to ensure they would "provide the defendant[s] with substantially the same ability to make [their] defense as would disclosure of the specific classified information." See CIPA § 6(c)(1); see also United States v. Sedaghaty, 728 F.3d 885, 892 (9th Cir. 2013) (vacating and remanding for a new trial because of insufficient substitution summaries). The Government then produced the Classified Summaries to cleared defense counsel, the use of which was governed by the Court's protective order and discussed in classified hearings.

Throughout the case, the Government has denied that FISA was in play, even after producing, allegedly by accident, a document marked "**SECRET // NOFORN // FISA**."[1] On the basis of that alleged accident and for other reasons described in classified briefing, defendants believe that the Classified Materials underlying the Classified Summaries were likely obtained under FISA. Consequently, the defense argues, defendants were entitled to notice under 18 U.S.C. § 1806 ("FISA Notice").[2]

---

[1] According to the Government, the marking was a mistake after certain unclassified evidence was "exported from an FBI review platform that incorrectly stamped the [documents] with FISA markings."

[2] Defendants are essentially demanding the Government admit or deny that it engaged in FISA surveillance, which seems more appropriate for resolution under 18 U.S.C. § 3504 than FISA itself. That statute would force the Government to admit or deny that it engaged in unlawful surveillance upon defendant's claim that "evidence is inadmissible because it is the primary product of" unlawful surveillance. 18 U.S.C. § 3504(a)(1). But defendants cannot invoke this "based upon mere suspicion" and "must at least appear to have a 'colorable' basis" for doing so."

## DISCUSSION

"Individuals affected by FISA surveillance are very often unaware of the surveillance unless it is revealed by the Government." FBI v. Fazago, 595 U.S. 344, 356 (2022). The Government must reveal this surveillance by issuing a FISA Notice if it "intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding . . . against an aggrieved person, any information obtained or derived from [FISA.]" 50 U.S.C. § 1806(c); see also 18 U.S.C. § 1801(k) (defining "aggrieved person"). Notice matters because without it, a surveilled defendant is left in the dark pondering whether the Government is advantaged and armed with evidence obtained in violation of the Fourth Amendment. See United States v. Abu-Jihaad, 630 F.3d 102, 122 n.24 (2d Cir. 2010) ("FISA's notice and duration requirements . . . raise no Fourth Amendment concerns"); see also In re Sealed Case No. 02-001, 310 F.3d 717, 741 (F.I.S.C.R. 2002) (notice is not required "where such evidence is not ultimately going to be used for law enforcement [because] the need to preserve secrecy for sensitive counterintelligence sources and methods justifies elimination of the notice requirement.") (quotations omitted).

Although the Fourth Amendment's protections do not change in the FISA context, the review procedures do. In an unclassified prosecution, counsel for defendants would likely have access to the search warrant, the underlying affidavit, and the fruits of that search, even if on an "attorneys-eyes-only" basis. See, e.g., United States v. Khan, 575 F. Supp. 3d 490, 497

---

United States v. Pacella, 622 F.2d 640, 643 (2d Cir. 1980). Most courts to consider the issue have decided that § 3504 is inapplicable to FISA surveillance. See United States v. Aziz, 228 F. Supp. 3d 363, 370 (M.D. Pa. 2017) (FISA's "procedures supplant the requirements of § 3504"); In re NSA Telcomms. Records Litig., 595 F. Supp. 2d 1077, 1082 (N.D. Cal. 2009) ("§ 3504(a)(1) [is] not directly transferrable to FISA"); but see United States v. Russell, 754 F. Supp. 3d 600, 606 (D. Md. 2024) ("Section 3504 facially applies to all unlawful surveillance (foreign or domestic), and there is evidence from FISA's legislative history that Congress contemplated the possibility that § 3504 would supplement FISA, rather than be supplanted by it"). In any event, it is not applicable here because defendants are not claiming that "evidence is inadmissible" on that basis and indeed, the Government has denied that any evidence it intends to offer at trial was obtained from or is derivative of FISA surveillance. Whether any hypothetical FISA surveillance was unlawful or not is therefore a nonissue.

(S.D.N.Y. 2021) (fraud prosecution where discovery was "subject to an attorneys' eyes only access restriction").  But in a classified prosecution, even if the Government issued a FISA Notice, neither defendants nor their counsel would have access to the FISA search warrant, the underlying FISA affidavit, and perhaps not even the fruits of the search itself.  See 50 U.S.C. § 1806(f) (outlining review procedures); United States v. Trump, 701 F. Supp. 3d 1, 3 (D.D.C. 2023) (denying defendant's motion for "attorneys'-eyes-only access to the paragraphs and pages of" classified briefing and materials, noting "the defense identifies no case in which any court has ordered [such relief], and this court is aware of none.").

Here, the Government has repeatedly denied that its case is derived in any way from FISA-obtained information.  That denial could very well be the end of the inquiry.  See United States v. Hossain, No. 19-cr-606, 2020 WL 6874910 (S.D.N.Y. Nov. 23, 2020) ("[I]n this case, the government has repeatedly affirmed that 'no FISA-obtained or FISA-derived information will be used against the defendant at trial or any other hearing in the case' [and so] the FISA provisions requiring notice are not at issue here.") (citations omitted).

Defendants' rebuttal is essentially that the Government, because it is actively prosecuting defendants, should not be fully trusted to unilaterally make that determination.  This is not so much an accusation of deliberate dissembling, although it could encompass that.  It is more so a concern about the pitfalls of potential gray areas where the Government may not see classified materials as subject to Brady, whereas a more objective or adverse examiner would.  It is a common-sense argument frequently raised by defendants who receive a FISA Notice.  See, e.g., Sedaghaty, 728 F.3d at 891 ("We also recognize that defense counsel, who best know their client's interests, are placed at a serious disadvantage in challenging classified proceedings in a vacuum."); United States v. Warsame, 547 F. Supp. 2d 982, 987 (D. Minn. 2008) ("The Court is

4

receptive to [defendant's] concerns about the one-sided nature of the FISA process"). But that is illogical because when "the government 'is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'" United States v. Aref, 533 F.3d 72, 81 (2d Cir. 2008) (quotations omitted).

Counsel for defendants flagged several other cases where the Government was found to have been delinquent by failing to issue a FISA Notice, sometimes resulting in a vacated conviction. Those cases, plus the fact that FISC has found "misstatements and omissions of material facts [in a substantial number of] FISA applications," see In re All Matters Submitted to the F.I.S.C., 218 F. Supp. 2d 611, 620 (F.I.S.C. 2002), appear to cut in favor of defendants. However, that is of little moment because the "fact that the government has included misstatements and critical omissions in other FISA applications" bears no weight on the Government's propriety in the case at bar. See Warsame, 547 F. Supp. 2d at 987. It would create a false syllogism to tally up the number of times the Government has intentionally or mistakenly broken the law and conclude from that sample that the Government is likely to be breaking the law here.

This is the nature of discovery in any federal case, criminal or civil. At some point, the integrity of the process resides in the hands of the attorneys who represent to the Court that they have diligently performed their ethical and professional responsibilities. In the area of FISA, the Government's representations are particularly important. See United States v. Stewart, 590 F.3d 93, 126 (2d Cir. 2009) ("Congress created the FISA system in an attempt to accommodate 'the legitimate need of Government for intelligence information and the protected rights of our citizens.'") (quoting United States v. U.S. District Court, 407 U.S. 297, 322-23 (1972)). In Stewart, the Second Circuit rejected that FISA "lack[ed] meaningful judicial review" and

5

otherwise violated due process because "the procedures fashioned in FISA [are] a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information." 590 F.3d at 126 (quoting United States v. Duggan, 743 F.2d 59, 73 (2d Cir. 1984)). The Government's unqualified, strongly offered assertion that FISA Notice is not required is therefore sufficient for the Court to conclude the same.

In any event, even if defendants "were correct that [they were] entitled to notice," there would be "no steps [to] be compelled beyond those already undertaken by the Court." United States v. Russell, 754 F. Supp. 3d 600, 606 (D. Md. 2024). Indeed, a defendant who receives a FISA Notice must rely on the Court to "review in camera and *ex parte* the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance . . . was lawfully authorized and conducted." 50 U.S.C. § 1806(f).[3]

As in Russell, this is "essentially what *already happened* in this case." 754 F. Supp. 3d at 606. In ruling on the Government's motion for a protective order under CIPA § 4, the Court reviewed in camera and *ex parte* all the relevant classified material in the Government's possession. See Sun, 2025 WL 2733267, at *2. The Court then ruled that the Government's invocation of the state-secrets privilege must yield to certain materials that the Court found to be

---

[3] Although this subsection does contemplate disclosing classified materials to the defense, this is only under narrow circumstances – not present here – "where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. 1806(f). "Such a need might arise if the judge's initial review revealed potential irregularities such as 'possible misrepresentation of fact, vague identification of the persons to be surveilled or surveillance records which include[] a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.'" Duggan, 743 F.2d at 78 (quoting S. Rep. No. 95-604(II), reprinted in 1978 U.S.C.C.A.N. 3904). But if the Court can determine "that the surveillance was lawfully authorized and conducted," such disclosure is unnecessary. 50 U.S.C. § 1806(g); see also Abu-Jihaad, 630 F.3d at 122 ("disclosure of FISA materials is the exception and *ex parte*, in camera determination is the rule.") (quotations and citations omitted).

"helpful or material to the defense[.]" Id., at *1. Nothing further would have happened under FISA.

To be sure, evidence that a search is tainted is, of course, helpful to the defense because the fruits of that search could then be suppressed. See generally Murray v. United States, 487 U.S. 533, 536 (1988). Such an inquiry is therefore part and parcel of the in camera, *ex parte* review of classified materials under CIPA. See Sedaghaty, 728 F.3d at 910 (rejecting defendant's argument that "the classified materials contain evidence of prior unlawful surveillance that led to the [unclassified] search warrant application" because the "record [did] not support a claim of taint.").

The Court has carefully and aggressively (through several *ex parte* meetings with the Government) executed its role in the classified review process proscribed by Congress. In directing the Government to summarize some classified materials that the Government did not conclude on its own was subject to Brady, the Court has covered the amplified "gray area" about which defendants are understandably concerned. And although the Court recognizes that defendants lack access to the original classified materials, the Government has emphatically denied, in no uncertain terms, that any materials it has used or will use against defendants were obtained or derived from FISA. The Court will make sure of that at trial, but it does not expect to be surprised.

Based on the record before it, the Court cannot find the Government has used, or plans to use, FISA materials against defendants at trial or at any proceeding. Therefore, defendants are not entitled to a FISA Notice.

7

## CONCLUSION

For the foregoing reasons, defendants' motion to compel is denied.


**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       October 27, 2025