

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AFM:AAS/RMP/ADR/AS
F. #2021R00600

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 11, 2025

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Linda Sun, et al.
     Criminal Docket No. 24-346 (S-4) (BMC)

Dear Judge Cogan:

  The government respectfully submits this supplemental motion *in limine* to request that the Court permit the government to authenticate certain Customs and Border Protection ("CBP") records by the certification of a records custodian, and that the Court rule that the CBP records are admissible as public records and/or records of a regularly conducted activity pursuant to Rules 803(8) and 803(6) of the Federal Rules of Evidence.[1]

**I. Background**

  In Count Three of the indictment, defendant Linda Sun is charged with visa fraud for presenting a falsified invitation letter purportedly signed by Politician-2 to a delegation from Henan Province, People's Republic of China, for their use to obtain visas to enter the United States. Counts Four through Seven of the indictment charge Sun with illegally bringing in aliens, which reflects one count for each of the four delegates who entered the United States with a visa obtained through the fraud charged in Count Three.

  The government expects to call (likely on Wednesday, November 12) a witness from the U.S. State Department who will testify about the visa application process generally and about the particular visa applications at issue in Counts Three through Seven. The government

---

  [1] The government has attempted in good faith to avoid litigation over the authenticity of documents by negotiating stipulations with defense counsel, and the defense have agreed to numerous stipulations to streamline the presentation of uncontroversial evidence. The defense have so far declined, however, to stipulate to the authenticity or admissibility of the CBP records that are the subject of this motion.

intends to offer the underlying visa applications and associated State Department records, which the witness can authenticate from his own direct knowledge.

A critical piece of the evidentiary picture naturally follows: that the four delegates from Henan Province who obtained visas through the fraud charged in Count Three *actually entered* the United States with those visas, consummating the crimes charged in Counts Four through Seven. (In fact, each of them entered the United States twice, on a trip that included a detour to South America.) The best evidence of this fact is the record of ingress and egress that CBP keeps in its TECS system of entries and exits through U.S. ports, which is reflected in a CBP "Person Encounter List."

The meaning and relevance of the Person Encounter Lists are self-evident on the face of the documents. The government intends to offer into evidence a TECS Person Encounter List for each of the delegates who entered the United States on a visa obtained with the falsified letter—that is, one each for Counts Four through Seven.[2] Each of the records identifies a particular traveler by name, date of birth, and passport number, and this information matches the information from the corresponding visa application. At the bottom of the page is a reverse-chronological list of the dates and times of entries and exits through U.S. ports, including arrival location and departure location designated by three-letter airport codes (the record also includes a key to the airport codes). The records here show the same itinerary for all four travelers: (1) entry into the United States at Dulles International Airport (designated by "IAD") on a flight from Beijing (designated by "PEK") on October 29, 2019; (2) exit from the United States from Miami (designated "MIA"—the records reflect only movement through U.S. ports, not intervening domestic flights) to Montevideo, Uruguay on October 31, 2019; (3) entry into the United States at JFK International Airport on a flight from Buenos Aires, Argentina (designated by "EZE") on November 5, 2019; and (4) exit from the United States from JFK back to Beijing on November 6, 2019.

The government also submits under separate cover for the Court's inspection a signed and sealed certification by a designated custodian of records for CBP, which certifies that the TECS Person Encounter Lists are true and correct copies of official CBP records, and which itself satisfies the authentication requirements of Rules 902(4) and 902(1).

II.     Analysis

Rule 803(8) provides an exception from the rule against hearsay for a record of a public office if "(A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; … and (B) the opponent does not show that the source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Courts have concluded that public records prepared as part of routine, objective observations, made as part of the everyday function of the agency, fall within this exception. *United States v. Agustino-Hernandez*, 14 F.3d

---

[2] The government will move to seal the exhibits because they contain personally identifiable information, and for the same reason does not attach them to this letter but submits them under separate cover for the Court's inspection.

42, 43 (11th Cir. 1994) (INS records are admissible under 803(8) as they are routinely and mechanically kept by INS). The TECS Person Encounter Lists meet these requirements.

The records reflected in the TECS Person Encounter Lists are records of a public office that document the passage of persons through United States ports of entry as a required part of CBP's daily functions. When an individual enters the United States at an airport or other port of entry, their entry is necessarily processed by a Customs official and that person's identifying information is entered into the TECS system. All TECS entries are stored in a central system and may be retrieved when needed. *See Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 819 (8th Cir. 2016) (explaining how the TECS system operates with respect to vehicles). CBP and its officers are under a legal duty to record this information.

Further, the reports are not "matter[s] observed by law enforcement personnel." While CBP officials could be viewed as law enforcement personnel as described in Rule 803(8), the information reflected in the Person Encounter Lists is not the type of information meant to be excluded from the exception in rule 803(8) because it is neither testimonial nor adversarial. *See United States v. Orozco*, 590 F.2d 789, 793 (9th Cir. 1979) (observing that "the simple recordation of license numbers of all vehicles that pass his station is not of the adversarial confrontation nature" prohibited by the rule). Most courts have concluded that reports prepared by law enforcement officials are admissible under 803(8) as long as they are not records prepared for the purpose of investigating a crime. *See, e.g., United States v. Quezada*, 754 F.2d 1190, 1193-94 (5th Cir. 1985) (finding that INS Form I-205 admissible under 803(8)); *United States v. Smith*, 973 F.2d 603, 605 (8th Cir. 1992) (computer records of report robberies in a specific local admissible under 803(a)), *Agustino-Hernandez*, 14 F.3d at 43 (I.N.S. A-file admissible under 803(8); *United States v. Brown*, 9 F.3d 907, 911 (11th Cir. 1993) (per curium) (records of property receipts were admissible under Rule 803(8)).

Additionally, because the records are not testimonial, they do not implicate the Confrontation Clause. The Confrontation Clause bars testimonial statements (in the absence of an opportunity to cross examine the declarant) because they alone are statements that "bear witness against a defendant." *Crawford v. Washington*, 541 U.S. 36, 39 (2004). The Tenth Circuit, for example, has defined a testimonial statement as a formal statement where "a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for the use in the investigation or prosecution of a crime." *United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010). The Supreme Court has observed that evidence under Rules 803(8) and 803(6) is generally admissible because it is not testimonial. "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

In *United States v. Zarauskas*, 814 F.3d 509 (1st Cir. 2016), the First Circuit considered whether a similar type of TECS report, TECS II reports, delineating entries through license plate numbers is testimonial as "a matter observed by law enforcement personnel" and thus excluded from the purview of rule 803(8). *Id.* at 519. The First Circuit distinguished non-adversarial records from adversarial records that constituted "contemporaneous observations of crime by law enforcement," *id.* at 519, and held that TECS II reports came within the exception as

3

non-adversarial public records because the act of recording license plate numbers is rote information and "quintessentially ministerial and non-adversarial." *Id.*

The Fourth, Fifth and Ninth Circuits have also concluded that TECS records are admissible under rule 803(8). *United States v. Cabrera-Beltran*, 660 F.3d 742, 753 (4th Cir. 2011) (TECS reports are non-testimonial and are admissible under 803(8); *United States v. Puente*, 826 F.2d 1415, 1417-18 (5th Cir. 1987) (customs records showing when a vehicle entered the United States was admissible under 803(8)); *Orozco*, 590 F.2d at 794 (TECS reports are admissible and although district court found TECS cards admissible under 803(6), they were more properly admissible under 803(8)). This Court, too, should conclude that the TECS reports are admissible under Rule 803(8).

At bottom, the TECS Person Encounter Lists are public records generated by public officials performing a legally required duty to record entries into the country. They are not testimonial as they were not prepared for the purposes of litigation but as a component of the day-to-day operations of CBP. The defense has not, and cannot, show that they are in any way unreliable—indeed, almost by definition, there is no more reliable record of entries into and exits out of the United States than CBP's records reflected in TECS. As a non-testimonial record that sets out matters public employees are under a lawful duty to report, the TECS reports are admissible under 803(8), and properly authenticated by certificate.

Moreover, even if the TECS records were not admissible as public records under Rule 803(8), they would also satisfy the requirements for admissibility as records of a regularly conducted activity under Rule 803(6). Although some courts have declined to treat governmental records within Rule 803(6) because of the existence of 803(8), *see, e.g.*, *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1087 (9th Cir. 2000) ("While governmental functions could be included within the broad definition of 'business' in rule 803(6), such a result is obviated by rule 803(8) . . . .") (citations omitted), others have concluded that governmental records can satisfy the requirements of that rule as well. *See, e.g.*, *United States v. Medrano*, 356 F. App'x 102, 108 (10th Cir. 2009) (holding that immigration A-file is admissible under both Rules 803(6) and 803(8)) (overruled on other grounds); *United States v. Figueroa-Rivera*, 2017 WL 3601341, at *3 (D.N.M. Mar. 8, 2017) (ruling that a TECS record is a "public record generated by a public official that records the entries into the United States," the purpose of which "is to keep track of who is in the United States and for how long," and "not a document prepared for use in litigation or for the investigation of any crime," and is thus "admissible as a hearsay exception under Rules 803(6) and 803(8)").

### III.     Conclusion

For all of the above reasons, the government respectfully submits that the Court should admit the TECS Person Encounter Lists into evidence at trial and permit the government to authenticate pursuant to certification of a CBP records custodian.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/
Alexander A. Solomon
Robert M. Pollack
Andrew D. Reich
Amanda Shami
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (by Email and ECF)
      Defense counsel (by Email and ECF)