

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AFM:AAS/RMP/ADR/AS
F. #2021R00600

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 4, 2025

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Linda Sun, et al.
                Criminal Docket No. 24-346 (S-4) (BMC)

Dear Judge Cogan:

        The government respectfully submits this letter for several reasons: first, to oppose in the most strenuous possible terms the defendants' letter filed last night, and second, to request that the Court reconsider its ruling on Government Exhibit 108 ("GX108"), or, in the alternative, that the Court stay its order to allow the government time to confer with other components within the Department of Justice to assess other avenues of emergency relief or, if none is available, to attempt to craft an alternative remedy.

        The timing of the defendants' application could not be more prejudicial.  Several weeks into trial and perhaps a day before the government expects to rest its case in chief, the defense has asked to adjourn the defense case until sometime next year (after having received the benefit of seeing almost the entirety of the government's case).  The practical effect, as the Court is surely aware, is to invite the mistrial that the defense has repeatedly said it may seek.

        On the merits, the government respectfully submits that the Court's decision, which was initially made based upon a misunderstanding and then adhered to following a brief recess without the benefit of fuller argument, is seriously mistaken.  Denoting a search premises—whether by an exhibit number or any other identifier, and whether the premises is physical or electronic—so that it can be unambiguously identified and referred to in the courtroom does not equate to "use" of all of that premise's unseized contents, requiring disclosure in violation of the Fourth Amendment.  Thus, in courthouses across the United States, the government routinely authenticates digital evidence by asking witnesses to link that evidence to the physical, unadmitted digital media or devices from which that evidence was extracted.  And, just as routinely, the defense does not possess the complete contents of the media or device.  To the contrary, where the device or media belongs to someone other than the defendant, it is the government's standard practice, and usually a requirement of the Fourth Amendment, that the device *not* be disclosed in full to the defendant.  Thus, the Court's order assigns the government a Rule 16 obligation to have

done something that, in fact, the government typically treats as prohibited. At this late date, the consequences of such a ruling would be to utterly derail this trial.

At minimum and in the alternative, the government requests that the Court stay its order on GX108 to allow the government time (including after the government rests and while the defense puts on whatever defense case they may wish to put on) to confer with other components within the Department of Justice to assess other avenues of emergency relief or, if none is available, to attempt to craft an alternative remedy.[1]

I. The Defendants' Request to Adjourn Trial Should Be Denied

First, and most urgently, the defendants' request to adjourn the trial at this stage is enormously prejudicial to the government and to the fair administration of justice and should be rejected. Any trial adjournment after jury empanelment poses a significant risk of mistrial due to the threat of losing jurors whose continued availability may be impossible or unduly burdensome—and that risk is heightened here, where the jurors were told at jury selection to anticipate a trial that might run no later than mid-December, and were not even asked about their availability next year. Such a risk is not cheaply run. More than three dozen witnesses have already testified, most of whom are private citizens who had to take time off of work, and many of whom had to travel from out of state (at taxpayer expense). The costs already borne and the burdens already undertaken by the Court, court staff, jurors, and numerous agencies of the federal government are vast. When the Court broached the subject of an adjournment as a theoretical possibility in response to a defense complaint about time to review GX108, Your Honor expressed skepticism about the need and appeared to contemplate the possibility as one that would require some weighing of the need and the cost. *See* Tr. 2439:13-15 ("If you tell me, you know, we can't review this in a weekend – I think you can, but if you can't, then you'll ask me for more, and we'll consider that."). The defense's cavalier request to adjourn, based merely on the expected size of GX108 and likelihood that its contents are in Chinese, in no way intimates any reckoning with the seriousness of the risk and the extraordinary waste that could be caused if the request were granted.[2] Additionally, any adjournment at this stage, in light of the date and the government's

---

[1] While preparing this letter, the government has also been engaged and continues to be engaged in identifying and evaluating the viability of any possible alternative remedies in the event the Court denies this motion. Although the government is not yet prepared to propose specific alternatives, among the possibilities the government is evaluating are: (1) striking the testimony of Special Agent Matthew Harris regarding GX108 and thus leaving a break in the chain of custody, which the defense can argue goes to the weight the jury should give to the evidence obtained from the CC-1 device without undermining its admissibility; and/or (2) replacing evidence taken from the responsiveness report of GX108 with identical copies obtained from CC-1's iCloud search warrant return and/or the defendants' devices and accounts. Notably, it appears from the government's early (and ongoing) review, that much of the electronic evidence from the responsiveness report of GX108 is also available in the responsiveness report for the iCloud search warrant return and/or one or another of the defendants' own devices and accounts, which have already been disclosed to the defense.

[2] Although the government in no way doubts defense counsel's good faith, which may well be, as the Court observed yesterday, "as pure as the driven snow," Tr. 2434:10-11,

imminent completion of its case-in-chief, necessarily entails separating the jury's deliberations from the government's presentation of evidence by *at least* a month—*and* giving the defense that length of time to reflect on the government's trial presentation while developing a defense case that they have continually suggested has been in development while refusing to disclose details or produce any reciprocal discovery.[3] The prejudice to the government, and to the fundamental principles of fairness in trial practice, are difficult to overstate. The defense request to adjourn the trial must be rejected.

II. The Court Should Reconsider Its Ruling on GX108

Second, the government respectfully urges the Court to reconsider its ruling on GX108 (which is sole basis for the defense's adjournment request). That ruling treats as a violation of Rule 16—apparently requiring a monthlong postponement of trial—what is in fact a constitutional requirement and the government's standard practice: restricting third parties' irrelevant data from review both by the government and the defense. The act of gesturing toward a device or digital media in order to authenticate the relevant data extracted therefrom does not contravene this requirement. Doing so does not (and cannot) create an entitlement to the entire media, either on the part of the defense or the government. As such, there was no Rule 16 violation here, much less one requiring a break of more than a month in this trial, and a likely mistrial.

While the government will discuss the applicable law further below, the government submits that the in-court context of the Court's ruling is relevant to this discussion. In short, the Court initially ruled based on a simple misconception: that the government had introduced GX108 into evidence. It did not.

Thus, at the opening of the proceedings yesterday, after noting that the government had regrettably given the Court too little time with its written submission of earlier that morning, Your Honor indicated that "I'm not prepared to rule yet," but wanted to discuss some questions with the parties. Tr. 2427:18. In particular, Your Honor (correctly) rejected the defendants' *Brady* arguments, opined that "it's really just a Rule 16 issue. That's really all it is," Tr. 2430:11-12, and took a seemingly pragmatic perspective by asking, "What's the problem with giving them the whole hard drive now? It sounds like you were ready to on the second day of trial." Tr. 2429:11-

---

their frequent invocation of a potential motion for a mistrial they might make later suggests that (entirely consistently with their obligations to their clients) they do not weigh the cost of such waste in the same way that the government, the Court, the jury, the many witnesses, and the public would weigh it.

[3] The government notes that it has requested reciprocal discovery in its own discovery cover letters since the initiation of this case, and has repeatedly requested (including yesterday) Rule 26.2 materials for the witnesses that defense counsel have intimated they are more or less likely to call. To date, the government has not received even a single page of material (notwithstanding that the government exceeded its own obligations by producing thousands of pages of 3500 material weeks before trial, including for many witnesses that it was merely considering calling to testify, and by continuing to produce more material on a rolling basis since).

13. In other words, the Court observed that the government did *something* with GX108 on the second day of trial, which is at least idiomatically some kind of "use," and since Rule 16(a)(1)(E)(ii)—at least sometimes—creates a discovery obligation when "the government intends to use the item in its case-in-chief at trial," it could be a shrewd means of avoiding an unnecessary legal question to err on the side of producing (and that is indeed frequently the government's own approach, when constitutional constraints or other privacy interests of third parties are not at stake). The mistaken impression became clear when defense counsel complained about the time it would take to review GX108 (which caused the Court to raise the hypothetical of adjournment if it should be necessary), saying "we're now getting an exhibit that [the government] offered at the beginning of trial the day before the government rests." Tr. 2439:1-2. The Court seemingly adopted that framing in response. But counsel was mistaken. The Court called for the jury to be brought into the courtroom and before they arrived, government counsel rushed to correct the record: "I just want to make the point the government never actually offered it. It was only marked for identification to prove chain of custody. We never intended to offer it because presumably it has a lot of irrelevant material." Tr. 2439:25-2440:3. Your Honor immediately apprehended the significance of that fact: "So that's a closer question as to whether that's a use." Tr. 2440:12-13. There was a very brief colloquy about the government's "use" of GX108—that is, merely by reference in the sworn testimony of an agent who was present when the actual phones were temporarily detained at the border and data extracted from them, which was later copied onto GX108, and in stipulations and Rule 902(13) certificates to authenticate that certain stamped exhibits were copied from that data. But then the Court had to cut that colloquy short, saying "Let me think about that," as the jury entered. Tr. 2441:6.

A few hours later, without any further briefing or argument from the parties, and just before breaking for lunch, the Court ruled as follows:

> I just wanted to report that I've looked at some more cases and I remain of the view that the way the government utilized Exhibit 108 constitutes use of the hard drive at trial.
>
> You know, if you mark it and you show it to a witness and then the witness testifies as to pieces derived from it and you tell the jury that the chats came from those, that's using it as part of your case-in-chief. Not a lot of authority on it but I think that's the only practical meaning. So I'm going to stick to the ruling that I made earlier.

Tr. 2558:20-2559:5. In sum, Your Honor acknowledged a lack of authority but ruled that, from a "practical" point of view, such a "use" of GX108 triggered a Rule 16 obligation to produce its entire contents.[4] The government respectfully submits that this ruling was mistaken about Rule 16 and about the practical consequences of such a ruling—not just in this case (in which it has

---

[4] Additionally, because Your Honor did refer (while acknowledging a dearth of authority) to "some more cases" but did not cite them, in the event Your Honor denies this motion or takes it under advisement, the government requests that the Court direct the parties to other cases that may underlie the Court's reasoning so that we may review them and respond more directly.

4

precipitated the deeply problematic adjournment request discussed above) but in cases that are tried in other courtrooms in this district and across the country every day—and that it is at odds with a growing body of caselaw concerning the government's responsibilities and obligations in connection with electronic information that it retains for limited purposes without (or after the lapse of) lawful basis to search.

        A.       <u>Rule 16 Does Not Broadly Require Disclosure of Items that Are Referenced to Establish Foundation for Other Evidence</u>

Rule 16(a)(1)(E)(ii) creates a discovery obligation when "the government intends to use the item in its case-in-chief at trial." But the mere fact of marking an item for identification, so that the parties can discuss it in a clear and unambiguous way, is not Rule 16 "use."

As the Court is aware, GX108 was not offered or admitted into evidence, nor could it have been. It presumptively contains a large quantity of irrelevant and otherwise inadmissible information, and there is uncertainty about the scope of the government's lawful possession over its contents for purposes other than proving authenticity of items that were previously identified and seized.[5]

The limited role that was actually played at trial by the hard drive designated GX108 is more fully discussed in the government's letter submitted yesterday, but in short, a sticker was placed on it so that an agent could refer to it more easily in testifying that it contained two phone extractions, whose initial creation he had witnessed. The evidence actually introduced at trial consisted of chats that the defense stipulated to be authentic.

Although a sticker was placed on GX108—allowing it to be discussed without ambiguity—it was not introduced into evidence, and its contents are certainly not available to the jury. Marking the drive for identification in this way is not a form of "use" as contemplated by Rule 16, but is a convenient form of designating the place where relevant items were found – much as a premises searched is usually described by its street address. And marking the drive does not implicate an obligation to turn over all of a drive's contents, any more than a witness's reference to the address of a physical apartment searched would entail the disclosure of all of the apartment's unseized contents, on the basis that the apartment was somehow "used at trial." In both cases, the government did no more than refer to a premises as the foundation for introduction of items found within the premises.

---

     [5]      No party to this litigation has standing to challenge the government's possession or use of the material on GX108, but the government is of course still obligated not to violate the Fourth Amendment rights of non-parties, and to take reasonable measures to preserve their non-constitutional privacy interests. The government appreciates the Court's effort to assuage the government's concern about this issue by ordering disclosure to the defense on an attorney's-eyes-only basis and ordering that the government may also re-open its search of GX108 solely for purposes of this trial, but the government retains some uncertainty about the constitutional permissibility of that order, and there is no other party present to challenge it.

There is of course a practical difference between a hard drive and a physical location: electronic information, unlike a premises, can be copied onto removeable storage media and can thus be, in a sense, "present" in the courtroom. But from an evidentiary perspective, the nature of the "use" by means of *reference* merely to lay the foundation for the relevance or authenticity of *other* admissible evidence is no different. Testimony or other competent evidence can and routinely does *refer* to an object or a place, however identified, to establish a link in a chain of custody or some other context, but that object or place *itself* need not (and usually does not) thereby become admissible and subject to further inspection. In the case of electronic evidence, the government may use particular documents or data files that were obtained from and stored in some electronic medium. But if only those particular documents are relevant—and especially if only those documents were lawfully seized—then for Rule 16 purposes, the government does not "use" the original device or data extraction from which that evidence was drawn merely by pointing to it, any more than the government "uses" every storage locker that a piece of evidence was stored in, merely by identifying that locker in testimony or on a chain-of-custody document.

Indeed, although Rule 16(a)(1)(E)(ii) does not define "use," its language explicitly contemplates that it may be satisfied by the disclosure of only the relevant part of an item that is in the government's custody. Specifically, it requires the government to allow the defendant "to inspect and to copy or photograph," among other things, "documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," that are in the government's custody if "the government intends to use the item in its case-in-chief at trial[.]" In this case, the government did produce as Rule 16 discovery "copies or portions" of the data on GX108—specifically, all data that was identified as relevant and seized, in the form of a responsiveness report. The government has also offered the defendants the opportunity to inspect the physical object, like all physical objects relevant to this case, and such inspection could certainly entail reasonable checks to ensure authenticity of seized documents, to the extent there were any genuine challenge to authenticity (which there does not appear to be, and for which there is certainly no reasonable basis). But Rule 16 does not require an open-ended opportunity to rummage through a third party's data that the government has not seized as relevant to this case but retains only for purposes of proving authenticity of the items that it has seized.

B. The Court's Ruling Has Serious Consequences for Standard Practice in Other Cases and Is At Odds with a Caselaw About Electronic Evidence

The court's ruling here, if broadly applied, would run dramatically counter to the way that electronic evidence is routinely authenticated in court rooms across this district and the country, and would require the government to violate the Fourth Amendment rights of third-party device owners in numerous cases.

One of the many consequences of the relatively sudden pervasiveness of "smart" phones and other electronic devices in recent years is an explosive growth of electronic evidence in criminal cases, and it is now commonplace for criminal trials to involve evidence obtained from numerous phones or devices obtained from numerous parties, some of them defendants and some of them not. When the government seizes a defendant's electronic device, the government must produce that full device to *that* defendant pursuant to Rule 16(a)(1)(E)(iii) ("the item was obtained from or belongs to the defendant"). But no one else—including other defendants in the same

6

case—is entitled to the full device. As a separate matter, the government must also produce any relevant content seized from that device to any defendant to whom it is material or against whom it may be used, pursuant to Rule 16(a)(1)(E)(i) and (ii). The way the government routinely complies with these obligations in multi-defendant cases (and in single-defendant cases that involve devices belonging to others) is by generating responsiveness reports for every device that is seized and searched, producing the responsive report to all defendants, and producing the full extraction only to the defendant who owns the device or from whom it was seized.[6]

When such cases go to trial, this treatment persists in the courtroom: prosecutors routinely mark cellphones or electronic storage media for identification with exhibit numbers, and elicit testimony or offer certificates and stipulations that identify other evidence as coming from those devices, without offering the devices themselves into evidence. Indeed, in this very case the government has marked the defendants' cellphones, laptop, and iPad for identification, has elicited testimony about the circumstances of their seizure, and has offered stipulations and certificates authenticating exhibits that were obtained from them, although the government has not actually offered any of those devices into evidence—and could not do so consistent with Federal Rules of Evidence 401 and 403. Of course, because those devices belong to and were obtained from the defendants, the government also produced full extractions to the defendants (and in that way the defendants have more complete access to their contents than the government, since the time for the government's searches has expired and the government is now limited to preserving the originals for purposes of proving chain of custody and authentication). But where the device belongs to some *other* party, a defendant is only entitled to the relevant portions that the government actually intends to use as evidence. In multi-defendant cases, it is thus commonplace for the government to identify many devices, each of which is produced in its entirety only to one defendant while relevant portions of all are produced to all. The mere fact that the government puts a sticker on the back of one defendant's phone and elicits testimony that the relevant chats were obtained from it does not entitle *all of the other defendants* to *all of the other contents of that phone*, including plainly irrelevant contents and contents that the government no longer has lawful authority to review.

The Second Circuit in *United States v. Ganias*, 824 F.3d 199 (2d. 2016), accepted both the genuine "privacy concerns implicated when the government retains a hard drive or forensic mirror containing personal information irrelevant to the ongoing investigation, even if such information is never viewed," *id.* at 217, *and also* the government's legitimate interest and even need to maintain physical custody of full electronic devices or forensic images that it can no longer lawfully search "to preserve, authenticate, and effectively present at trial the evidence" that was "lawfully obtained" from them, *id.* at 216, since "[t]he weight of digital evidence admitted at trial . . . may be undermined by challenges to its integrity—challenges which proper preservation might have otherwise avoided." *Id.* at 218. The tension between these genuine concerns effectively requires the government to preserve full extractions while protecting their irrelevant

---

[6] Indeed, in this very case, since the co-defendants are husband and wife, the government briefly delayed some early discovery productions while waiting for defense counsel to confirm whether they preferred the government to segregate discovery productions of each defendant's respective devices and accounts in this customary fashion or to combine them to be produced to both defendants.

7

and non-seized contents from disclosure or review. The defendants' arguments about GX108, and the Court's ruling, require the government to make an impossible choice: abandon the ability to prove the authenticity or chain of custody of electronic evidence by retaining only the responsive data, or violate third-party privacy interests and Fourth Amendment rights by producing to every defendant in every case the full extraction of every device the government finds that contains a shred of relevant evidence. The government respectfully submits that the law does not require the Court to order the government into this dilemma, and whatever the consequence in this case, the Court's order will have far-reaching consequences because of how it must affect the government's decision-making in other cases, throughout and beyond this district, wherever there are multiple defendants or electronic devices seized from different owners.

Although the government has not been able to identify (in the short time the government has had to look for it) another case that involved a defense motion or an order squarely like the ones at issue here, the Court's order here will surely lead to many such challenges because this practice at issue here—that is, of *identifying* at trial the source of electronic evidence without offering the full device or producing it to defendants other than the owner—is so increasingly commonplace. To the government's knowledge, all the cases to have considered the closely related question of the Government's general discovery obligations with respect to retained-but-not-seized electronic information have concluded that for purposes of Rule 16 and *Brady*, the government lacks possession or control over data that has not been identified in a reasonable Fourth Amendment search. Effectively, such data is treated the same as data that is physically inaccessible. *See, e.g.*, *United States v. Balwani*, No. 5:18-CR-00258-EJD-2, 2022 WL 1405404, at *5 (N.D. Cal. May 4, 2022) (in fraud and conspiracy case, denying the defendant's motion for dismissal of the indictment or other sanctions because for purposes of Rule 16 and *Brady*, the Government was not in lawful possession, custody, or control of non-responsive data and thus never had a right or obligation to turn the data over to the defense); *United States v. Parnas*, No. 19-CR-725 (JPO), 2021 WL 2981567, at *8 (S.D.N.Y. July 14, 2021) (in fraud case, denying defendants' request for a conference to address the Government's discovery obligations in respect to search warrants executed on accounts and devices belonging to third parties because, *inter alia*, the Government represented that "if the documents responsive to the search warrants contain[ed] impeachment material for any of the Government's trial witnesses," it would produce those documents; and further, with respect to potentially privileged materials from those warrants not yet released to the case team, they are not within the Government's possession, custody, and control for purposes of Rule 16); *United States v. Hall*, No. 3:18-cr-623, 2020 WL 7027473, at *6 (N.D. Tex. Nov. 30, 2020) (denying government's request to produce complete images of pharmacy computers (including privileged information) to multiple defendants in health care fraud case, reasoning that "if the Government is not authorized to seize it, it certainly has no authority or legal obligation to disseminate it"); *United States v. Collins*, 409 F. Supp. 3d 228, 244 (S.D.N.Y. 2019) (in securities fraud case, government's *Brady* obligations were not superior to, and did not take precedence over, a third party's Fourth Amendment rights and government had neither authority nor any obligation to search non-responsive material that was outside scope of search warrant for additional *Brady* material beyond that already disclosed to defendants following the search and seizure of data); *United States v. Metter*, 860 F. Supp. 2d 205, 214-16 (E.D.N.Y. 2012) ("The Court agrees with Defendant that the release to the co-defendants of any and all seized electronic data without a predetermination of its privilege, nature or relevance to the charged criminal conduct only compounds the assault on his privacy concerns. It underscores the

government's utter disregard for and relinquishment of its duty to insure [*sic*] that its warrants are executed properly").

III. Conclusion

For the reasons discussed above, the government respectfully requests that the Court (1) deny the defendants' motion to adjourn trial; and (2) reconsider its decision ordering the government to produce the contents of GX108 and deny in full the defense motion underlying that order, or in the alternative stay its order to allow the government to sufficient time to assess the viability of alternative forms of relief.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/
Alexander A. Solomon
Robert M. Pollack
Andrew D. Reich
Amanda Shami
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (by Email and ECF)
Defense counsel (by Email and ECF)

9