

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:AAS/RMP/ADR/AS                             *271 Cadman Plaza East*
F. #2021R00600                                           *Brooklyn, New York 11201*

December 22, 2025

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Linda Sun, et al.
             <u>Criminal Docket No. 24-346 (S-4) (BMC)</u>

Dear Judge Cogan:

      The government writes to respectfully request that, in the event the jury returns another note indicating that it is at an impasse, the Court inquire with the jury whether it is deadlocked as to each count or whether, instead, it has in fact reached unanimity with respect to certain counts. If the jury indicates that it has reached unanimity with respect to some counts, the government respectfully requests that the Court instruct the jury that it has the option to return a partial verdict consistent with Federal Rule of Criminal Procedure 31(b).

I.     <u>Factual Background</u>

      On November 10, 2025, jury selection began in this case, with the parties selecting twelve jurors and four alternates. Between November 12 and December 5, 2025, the government called 41 witnesses as part of its case-in-chief. Following that, on December 8 and 9, 2025, the defense called eight witnesses in its own case, and the government called a rebuttal witness on December 9. On December 9 and 10, 2025, the parties delivered their summations and the government's rebuttal argument. The Court charged the jury over two days, beginning on Thursday, December 11 and continuing into the morning of Friday, December 12.

      The jury began deliberating in the late morning of Friday, December 12, and continued until 4:30 p.m. that day. During its deliberations on December 12, the jury sent out four notes: (1) requesting the transcripts of the testimonies of two witnesses, Daniel Palmquist and Jeffrey Lewis—which transcripts were provided; (2) inquiring about the use of "and" in the indictment and whether that use is conjunctive or disjunctive—which question was answered; (3) requesting the transcripts of the closing arguments of the parties—which request was denied; and (4) requesting to leave at 4:30 p.m.

When the jury returned on Monday, December 15, 2025, Juror 5 had become ill and was replaced with Alternate Juror 2 (Juror 10 had already been replaced by Alternate Juror 1 before deliberations began given travel plans). The jurors thereafter restarted their deliberations. The jury sent out two notes on December 15, Notes 5 and 6: (5) requesting six additional copies of the jury charge, the transcript of the testimony of Garrett Igo, and to be able to leave at 4:30 p.m.—which requests were all accommodated; and (6) asking: "What do we do if we cannot get to a unanimous decision on a charge? ~~What if we believe no progress can be made toward a unanimous decision?~~ MTB[1] We heard, well some of us believe we heard you say during jury instructions that if we cannot come to a unanimous decision we must acquit—Please explain."

On Tuesday, December 16, 2025, in response to Note 6, the Court reread to the jurors the jury instructions on the duty to consult and the need for unanimity in reaching a verdict. The Court also instructed the jury in the following way:

> Now, this has been a long trial and you have only been deliberating a couple of days, so it is not surprising that you asked me this question. It just means that you have to keep the process going.
>
> Now, as to the second part of your question, all I can tell you is you have the instructions. You have asked for multiple copies of those instructions. And it is up to you to use those instructions. Those are the written instructions. Those control your deliberations. If you think you heard me say anything different than what is written there, you shouldn't regard that, because I didn't say anything substantively different than what is in the written instructions that you have. So those should be your guide.

(Trial Tr. 3878).

On Wednesday, December 17, the jury continued its deliberations and sent out three notes, Notes 7, 8, and 9: (7) requesting the transcripts of the testimonies of Sean Carroll, Marybeth Hefner, Karen Gallacchi, and Jenny Low—which transcripts were provided; (8) requesting modifications to their deliberation schedule to start late and end early on December 18 and to not sit on December 19—which requests were granted; and (9) requesting the indictment language for Count 14 and to leave at 4:30 p.m.—which requests were granted. Separately, Juror 7 reminded the Court that she had a flight on December 22, 2025, and the parties discussed whether to replace her that day or to wait until the end of the day on December 18.

On Thursday, December 18, 2025, the jury convened (starting late in the morning) to deliberate further. Juror 7 informed the Court that she could not change her December 22 flight, and the parties agreed to wait until the end of the day to dismiss Juror 7 if the jury was unable to reach a verdict. Later on December 18, the jury sent out Note 10: "After thoughtful and careful consideration, and discussions, we cannot come to a unanimous decisions [sic]. There are fundamental differences on the evidence and interpretation of the law. We deeply feel that no

---

[1]     The jury foreperson appeared to have crossed out this language and placed her initials next to it.

progress can be made to change any jurors['] judgment on all counts. We continued to work hard through lunches and breaks." In response to this note, the Court proposed to (and ultimately did) provide the jury with a modified *Allen* charge. The government requested that the Court also reread the instruction that the jury's verdict must be unanimous and that the jurors must reach the same conclusion as to each charge. The defense objected to this proposal, contending that rereading this unanimity charge would "push[]" the jury "in the direction of a partial verdict." (Trial Tr. 3902). The Court declined to follow the government's suggestion, finding no "suggestion from the jury that they can or have reached a partial verdict," and observing that "it looks like they can't reach a verdict on any of the counts." (*Id.*).

In response to Note 10, the Court read to the jury the modified *Allen* charge. Thereafter, shortly before the jury was to leave for the day at 3:00 p.m. and the Court was to replace Juror 7, the defense moved for a mistrial. The government opposed, noting that the jury in its current composition had been deliberating for only four days, with that fourth day being a half day, and that given the length and complexity of the case, it was reasonable to seat the alternate juror. (*Id.* at 3908-09). The Court agreed that "[i]t is too soon" and the jurors "have not been deliberating long enough." (*Id.* at 3909). The parties also discussed with the Court the prospect of inquiring with the jurors about their availability the week of New Year's and following New Year's, and the Court stated that it would "see what happens Monday." (*Id.* at 3913). At the end of December 18, the Court replaced Juror 7 with Alternate Juror 3, and the jury restarted deliberations this morning, December 22, 2025.

II.    Legal Argument

The government respectfully requests that, in the event the jury returns another note indicating an impasse, the Court inquire whether the jurors have reached any unanimous decisions, and if so, to provide the jury with a neutral instruction that they have the option to return a partial verdict.

As an initial matter, the law is clear that it is appropriate to inquire with the jury regarding whether it has reached a unanimous verdict as to any counts, as to any defendant. If in response to this inquiry, the jury indicates that it has reached unanimity as to one or more counts, the Court can and should instruct the jury that it has the option of delivering a partial verdict. The law on partial verdicts is well settled: Partial verdicts are expressly contemplated by the Federal Rules of Criminal Procedure and have been routinely approved by the Second Circuit. In fact, the Circuit has been clear that a jury *should* be aware of its option to deliver a partial verdict—an option that has not yet been provided, even though Note 6 arguably provided such a basis—and that such an option may be provided over a defense objection.

Finally, at this point in deliberations—with the jury now restarting for a third time—it is premature to consider declaring a mistrial. The prevailing standard for declaring a mistrial in this Circuit, which asks whether there is a manifest necessity to do so, has not been met.

A.  It Is Appropriate to Inquire with the Jury Regarding the Status of Unanimity in Cases Involving Multiple Defendants and Multiple Counts and, If Appropriate, to Provide Partial Verdict Options

In the event the jury returns another note indicating an impasse, inquiring with the jury as to whether it has reached a unanimous decision as to any count as to either defendant is proper (and indeed, as discussed later, would be a necessary precursor to finding that the jury is "genuinely deadlocked").

As a starting point, the Second Circuit has held that "[u]nquestionably, before declaring a mistrial and dismissing a hung jury, a trial judge may properly inquire whether the jury has reached a partial verdict with respect to any of the defendants or any of the counts." *United States v. MacQueen*, 596 F.2d 76, 82 (2d Cir. 1979).  Multiple courts have neutrally inquired of juries in this way, and the government has found no case where the Second Circuit has found error in the district court conducting such a neutral inquiry.

Indeed, last year, in *United States v. Ayers*, No. 20-CR-239 (BMC) (E.D.N.Y.), Your Honor stated that, where a jury had given a note asking hypothetically what to do if they were deadlocked, the Court would first "make sure they are, in fact, deadlocked on some counts and then I would give the modified *Allen* instruction and if I could move that, then I'd take the partial verdict."  (*Ayers*, No. 20-CR-239 (BMC), Trial Tr. 6986).

That is effectively what the government requests here in asking the Court to inquire with the jury regarding whether it is unanimous on some counts.  Indeed, Note 6 provided the same type of hypothetical question referred to in *Ayers*, and there is no meaningful distinction that would prevent the Court now from inquiring about the status of the jury's unanimity.[2]  If the answer is that the jury has reached a unanimous verdict as to some counts, the government would request that the Court either deliver the partial verdict option or, given the replacement of Juror 7, redeliver the *Allen* charge already given last week at the same time as the partial verdict option.

Moreover, the partial verdict option Your Honor delivered in *Ayers* can be delivered here with only minor conforming alterations:[3]

> [A]t your option, you can deliver a partial verdict that is a unanimous verdict as to some charges as to one defendant, and not to charges on which you have not reached unanimity as to other charges or the other defendant. There are two things you need to know if you decide to go that way.

---

[2]      As described *supra*, Note 6 asked, "What do we do if we cannot get to a unanimous decision on *a charge*?"—which was singular.  In response to Note 6, which can be interpreted as requesting guidance on when a jury cannot reach a verdict on a single count—which is in effect a question regarding returning a partial verdict—the Court did not instruct the jury as to the option of a partial verdict.  Instead, the Court repeated that the jury must be unanimous as to all charges.

[3]      There were several defendants in *Ayers*, whereas there are two here.  Accordingly, the government has changed the plural "defendants" to the singular "defendant" in two places.

> First, as to those charges on which you have not reached a unanimous verdict as to one or more defendants, you will be directed to return to the jury room and continue your deliberations as to those counts.
>
> Second, when you do that, you will not be allowed to change your verdict as to the counts that you have decided because I will have read those counts in open court and those are locked in once I read them in open court.  So, keep that in mind.
>
> It's your option as to whether you want to do the partial verdict and continue deliberations or whether you just want to do the whole thing at one time.  But it's up to you.

(*Ayers*, No. 20-CR-239 (BMC), Trial Tr. 6988-89).

Similarly, earlier this year in *United States v. Johnson*, No. 20-CR-518 (JMA) (E.D.N.Y.)—a trial where the defendant was charged with 26 counts—when the jury sent back a note indicating that "one [juror] is asking to be excused because we cannot reach a verdict," Judge Azrack proposed a neutral jury instruction providing the jury with the option of a partial verdict— a proposal that both the government and defense found agreeable. (*Johnson*, No. 20-CR-518 (JMA), Trial Tr. 1583-87).  As it turned out, despite this broadly worded note which could have been interpreted to suggest a deadlock on all counts, the jury in *Johnson* had been able to reach unanimity on most of the counts, returning a partial verdict on 23 out of the 26 counts charged against the defendant.

Given that the jury here initially indicated a possible deadlock on only one count (*see* Note 6), and given the ambiguity in Note 10—especially considering the repeated instruction that the jury is permitted to return only unanimous verdicts—inquiring with the jury here regarding whether they have reached any unanimous decisions would be an appropriate next step in the event the jury returns another note indicating an impasse.

### B.  The Federal Rules of Criminal Procedure and the Second Circuit Confirm the Propriety of Giving Juries the Option of Returning a Partial Verdict

Rule 31(b) expressly permits that a "jury may return a verdict at any time during its deliberations as to any defendant about whom it has agreed" in a trial of multiple defendants and "a verdict on those counts on which it has agreed" in a trial of multiple counts.  Fed. R. Crim. P. 31(b)(1), (2).  The Second Circuit has affirmed the application of Rule 31(b) multiple times, holding that "[a] jury is entitled to report partial verdicts as to less than all defendants."  *United States v. Dolah*, 245 F.3d 98, 108 (2d Cir. 2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004); *see also United States v. DiLapi*, 651 F.2d 140, 146 (2d Cir. 1981) ("In a multi-defendant trial, the jury is entitled to return a verdict 'at any time in its deliberations' as to one or more defendants.").

However, "juries should be neither encouraged nor discouraged to return a partial verdict."  *DiLapi*, 651 F.2d at 147.  That said, juries "*should* understand their options, especially when they have reached a stage in their deliberations at which they may well wish to report a partial verdict as to some counts or some defendants."  *Id.* (emphasis added).  To comply with the

Second Circuit's guidance, a judge can give jurors a "neutral explanation of the jury's options either to report the verdicts reached, or to defer reporting of all verdicts until the conclusion of deliberations," with the instruction "advis[ing] the jurors that any verdicts they choose to report will not be subject to later revision." *Id.*

Accordingly, if the jury here is to return another note—following the replacement of Juror 7—indicating that they are at an impasse, and if the Court determines after neutral inquiry that the jury has reached a unanimous decision as to some counts, an instruction giving the jury the option to return a partial verdict is entirely consistent with the law. *See United States v. Burke*, 700 F.2d 70, 79 (2d Cir. 1983) ("Consistent with this duty to 'inform,' the district judge would be expected to give a Rule 31(b) instruction under appropriate circumstances"); *see also United States v. Levasseur*, 816 F.2d 37, 45 (2d Cir. 1987) (holding "that Judge Glasser's acceptance of the partial verdicts was entirely consistent with [Rule] 31(b) and with case law in this circuit," as "[t]his court has long allowed partial jury verdicts which resolve less than all counts as well as those which resolve all counts against less than all defendants").

Notwithstanding the defense's premature request for a mistrial on Thursday, December 18, 2025, following just over three days of deliberation in this complex case, and its objections to a partial verdict, giving juries the option to return a partial verdict is proper and preferable to a hasty declaration of a mistrial, especially given the length and complexity of this case. Moreover, as the Second Circuit has held, giving jurors the option to return a partial verdict does not "prompt" a partial verdict. *See Dolah*, 245 F.3d at 108 (rejecting defendants' claim that district court judge "prompt[ed] the return of the partial verdicts" by "neutrally inquir[ing] whether the jury had completed any of its deliberations" and advising the jury that they had the option of returning a partial verdict when the foreperson asked, in response to the court's neutral inquiry, whether a verdict on one charge could be reported).

Moreover, the Court is empowered to give the jury the option of returning a partial verdict even if the defense objects to a neutral instruction on the option of a partial verdict. In *United States v. Fermin*, the Second Circuit rejected a defendant's suggestion that the Circuit "should craft a *per se* rule finding error whenever a trial court gives a partial-verdict instruction over a defendant's objection," instead finding that Rule 31(b) "authorizes a jury to return a partial verdict 'at any time' and *this Circuit believes that a jury should be aware of this option*." 32 F.3d 674, 680 n.2 (2d Cir. 1994) (overruled on other grounds) (emphasis added) (citing *DiLapi*, 651 F.2d at 147). Indeed, the Second Circuit expressly declined "to create a rule that would allow a defendant to preclude a trial court from instructing a jury on its partial-verdict option." *Id.*; *see also Levasseur*, 816 F.2d at 45 (rejecting defendants' "claim that the trial court's conduct in obtaining a partial verdict was 'offensively coercive' [as] totally without merit"); *United States v. Mazzei*, 700 F.2d 85, 87 (2d Cir. 1983) (rejecting defendant's argument that "the district judge improperly instructed the jury regarding its right to return a partial verdict under Rule 31(b)").

In *United States v. Ruffin*, the Second Circuit similarly affirmed the propriety of delivering to the jury, over defense objection, a neutral instruction that a partial verdict is an option. 129 F.3d 114, 1997 WL 701364 (2d Cir. 1997) (summary order). There, the defendant contended that the partial verdict "instruction was an invitation to the jury to convict [the defendant] on the first count, which was precisely what the jury did," a contention the Circuit rejected because "[t]he fact that [the defendant] did not want a partial verdict . . . does not establish that an instruction

informing the jury of the option was an invitation by the judge to convict [the defendant] on the first count." *Id.*, 1997 WL 701364 at *3. "The judge's instruction merely informed the jury of its options in a neutral manner, and therefore was not coercive." *Id.*

The Second Circuit has also made clear that a trial court acts properly where it decides to *receive* a partial verdict over a defendant's objection. *Fermin*, 32 F.3d at 680 ("The District Court's responses to the jury and the procedure concerning the *Allen* charge and partial-verdict instruction were in full accord with this Circuit's precedents. We have consistently approved the use of an *Allen* charge in the face of an apparent deadlock as long as such a charge is carefully crafted to avoid coercing jurors. We have also approved the receipt of a partial verdict in multi-defendant criminal trials and have suggested that a jury should understand that it has the option to return such a verdict."); *see also Ruffin*, 129 F.3d 114, 1997 WL 701364 at *3.

C.  No Mistrial Is Warranted at This Stage of Deliberations

"Courts have the power to declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a *manifest necessity* for the act, or the ends of public justice would otherwise be defeated," and this "power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes and in the exercise of a sound discretion." *United States v. Klein*, 582 F.2d 186, 190 (2d Cir. 1978) (internal quotation marks omitted) (emphasis added).

"The test as to what circumstances will constitute manifest necessity is not susceptible to a mechanical formulation; each case must be evaluated on its own facts and circumstances." *United States v. Huang*, 960 F.2d 1128, 1135 (2d Cir. 1992). In the Second Circuit, *United States v. Razmilovic* outlines the relevant guideposts for when the circumstances demonstrate a manifest necessity to declare a mistrial. 507 F.3d 130 (2d Cir. 2007). "The classic example of manifest necessity is the discharge of a genuinely deadlocked jury." *Razmilovic*, 507 F.3d at 137 (alteration omitted). "The term 'genuinely deadlocked' suggests more than an impasse; it invokes a moment where, if deliberations were to continue, 'there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors.'" *Id.* (quoting *Arizona v. Washington*, 434 U.S. 497, 509 (1978)).

In assessing whether a jury is "genuinely deadlocked," the trial court "is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate . . . and . . . when faced with a deadlocked jury, the trial judge must delicately balance the defendant's valued right to have his trial completed by a particular tribunal and the public's interest in fair trials designed to end in just judgments." *Id.* (internal citations and quotation marks omitted). The *Razmilovic* court outlined several non-exhaustive factors in reviewing the determination that a jury is "genuinely deadlocked." *Id.* These factors include: (1) statements by the jury that it cannot agree, including "both jury notes indicating deadlock and statements made directly to the trial judge by the jury"; (2) "the length and complexity of the trial," including the number of counts and number of defendants; (3) "the amount of time that the jury has deliberated," which also is generally related to the length and complexity of the trial; (4) "the impact that further, forced deliberations might have on a possible verdict," particularly in the case of an "already exhausted jury," which may "induce jurors to accommodate a verdict which they would not

7

otherwise support"; and (5) what actions, if any, the trial judge took prior to declaring a mistrial to help it determine whether the jury was genuinely deadlocked, including "alternatives that the district court chose not to pursue, recognizing that a trial court must be mindful of the possibility that any action it chooses to take might coerce a verdict." *Id.* at 137-38.

At this early stage, none of the *Razmilovic* factors support a finding of genuine deadlock.

*First*, the jury has sent out only two notes on the topic, one indicating an impasse on *one* charge (Note 6) and one note that is ambiguously worded in its mixed use of singular and plural (Note 10) regarding the extent of its impasse. Apart from that, the jury has not made any direct statements in open court about its impasse. The government's request to inquire with the jury in the event the jury returns another note indicating an impasse—which is fully permissible— would give the Court and the parties actual clarity as to any deadlock. At this point in time, the Court and parties can only speculate, and that cannot meet the first factor

Importantly and relevant here, the Second Circuit held in *Razmilovic* that a "twenty-nine-word note from the jury that it was 'at a deadlock' and had 'exhausted all [its] options'" was insufficient to support a mistrial as the "trial judge did not discuss the extent of the deadlock referred to in the note with the members of the jury and did not ask them whether there was any chance that further deliberations might produce a verdict." 507 F.3d at 139. Put differently, even if the same jury continued to deliberate today (rather than the current makeup of the jury), Note 10 would not alone be sufficient to declare a mistrial.[4] More should be done to confirm that the jury is genuinely deadlocked. *See, e.g.*, *United States v. Monfort*, 485 F. App'x 493, 494 (2d Cir. 2012) (mistrial was appropriately declared when jury sent three notes about deadlock, court took partial verdict from jury, and court gave *Allen* charge); *United States v. Golding*, 482 F. App'x 633, 635 (2d Cir. 2012) (mistrial appropriate after three notes indicating that one or more jurors was impartial and unable to follow the jury instructions); *United States v. Altieri*, 278 F. App'x 53, 54

---

[4]    Although the Court and defense appeared to believe that Note 10 indicated deadlock on all counts, the government does not read the note that way, especially given that the jury has been instructed that it may not return anything but a unanimous verdict on all counts, and given that Note 6 indicated an impasse as to one count only. Moreover, when considering the broadly worded note in *Johnson* discussed above that resulted in a partial verdict, No. 20-CR-518 (JMA), it is evident that the only straightforward and reliable way to determine the status of deliberations is to inquire with the jury.

In any event, the jury's past notes cannot be used now to declare a mistrial. "[B]ecause the state of jury deliberations is ever-changing, prior evidence of deadlock is not always dispositive of a jury's present inability to reach a unanimous verdict." *Razmilovic*, 507 F.3d at 138 (quoting *United States v. Byrski*, 854 F.2d 955, 962 (7th Cir. 1988)); *see also id.* (citing *United States v. Gordy*, 526 F.2d 631, 636-37 (5th Cir. 1976) (finding that record was insufficient to determine that "no verdict could be reached," despite statement by foreman that jury was "hung," because no dialogue "was developed with jurors individually" and it could not be said with certainty that further deliberations "would have proved futile")).

(2d Cir. 2008) (mistrial appropriate after three juror notes, a partial verdict was delivered, jurors were instructed to continue deliberating, and jury had been deliberating for nine days).

*Second*, the length and complexity of this trial, including the number of counts and number of defendants, also would not support a mistrial at this juncture. Indeed, *Razmilovic*— where the Second Circuit determined that a mistrial was improperly declared—provides the relevant comparison: The trial in *Razmilovic* "lasted for six weeks," it was a "complex" case with "twenty-one separate counts against three defendants," and the jury "heard testimony from forty witnesses." *Id.* Here, the government alone called 41 witnesses across four weeks as part of its case in chief, and during the fifth week, the defense called eight witnesses in its own case and the government called a single rebuttal witness. Moreover, the Court has noted multiple times the complexity of this case, including the complexity of the charged crimes themselves.

*Third*, the deliberations in this case have been relatively short, especially given that deliberations have had to restart three times due to replacing jurors. *Razmilovic* once again provides a useful comparison: "Despite the substantial length and complexity of the trial, the jury had only deliberated for three full days when the mistrial was declared." *Id.* When the defense here moved for a mistrial on Thursday, the then-constituted jury had been deliberating for only three and a half days. That is not long given the noted complexity and length of this trial.

*Fourth*, there is no basis to believe that further deliberations might induce the jurors to reach a verdict they do not support. This jury has been conscientiously executing its duty, and there is no basis to believe that, after this short amount of time, there is a concern about the jurors violating their oaths. Moreover, while this trial has been lengthy and complex, the jury sits until no later than 4:30 p.m., has sought and received a shorter day in one instance, and has sought not to sit this past Friday. In other words, there is not yet a concern that the jury is exhausted or has been made to work extended hours. Indeed, the Court inquired only as to whether the jury would be able to start a half-hour earlier or stay a little longer past 4:30 p.m., and as yet, there has been no change to the jury's schedule.

*Fifth*, and finally, the Court has not taken any actions to determine whether the jury is genuinely deadlocked. The inquiry that the government requests in Section II.A, which would ask whether the jury has reached any unanimous verdicts on any counts or is deadlocked on all counts as to both defendants, is one of the actions that the Second Circuit has approvingly considered in analyzing whether manifest necessity supported a mistrial, but that has not yet happened here. In fact, multiple courts have polled the jury to confirm that the juries were unable to reach a verdict. *See, e.g.*, *United States v. Joyner*, 201 F.3d 61, 83 (2d Cir. 2000) (finding manifest necessity where trial judge gave *Allen* charge and polled jury before discharging it); *White v. Keane*, 969 F.2d 1381, 1382–83 (2d Cir.1992) (per curiam) (finding manifest necessity where trial judge gave *Allen* charge before receiving deadlock note and then after receiving note, polled the jury, and asked directly whether it was possible to reach a verdict); *Klein,* 582 F.2d at 189-90, 192 (finding manifest necessity where, after initial note indicating deadlock, jury was read an *Allen* charge, sent back for another day of deliberations and, trial judge asked jury whether they had reached a verdict on any count and whether, if a verdict had not been reached, it was possible for them to reach a verdict on any count). Other actions the Second Circuit has approved of under the fifth factor include giving an *Allen* charge and instructing the jury about the possibility of reaching a partial verdict. *See Razmilovic*, 507 F.3d at 139-40. The Court here has only given an *Allen*

9

charge, which was delivered only on Thursday, December 18, before the jury restarted deliberations today.

III.   Conclusion

For the reasons discussed above, the government respectfully moves the Court to neutrally inquire with the jury if it is deadlocked on all counts as to all defendants in the event the jury returns another note indicating an impasse, and if the jury is not deadlocked completely, the government respectfully moves the Court to provide the jury with a neutral instruction about its options to deliver a partial verdict.  Further, for the reasons explained above, declaring a mistrial at this point is premature—a mistrial must be manifestly necessary, and the facts and circumstances of this case do not support a mistrial.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/  Amanda Shami
Alexander A. Solomon
Robert M. Pollack
Andrew D. Reich
Amanda Shami
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (by Email and ECF)
Defense counsel (by Email and ECF)